UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PETER J. NYGÅRD *et al.*,

                    Plaintiffs,

                  v.

LOUIS M. BACON,

                    Defendant.

Civil Case No. 1:19-cv-01559

Judge Lorna G. Schofield

---

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FOR *FORUM NON CONVENIENS* <u>AND UNDER RICO'S LITIGATION ACTIVITY EXCEPTION</u>

Nancy Chung
Michael A. Levy
Christina Prusak Chianese
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

Christopher M. Egleson
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
(213) 896-6000

*Counsel for Defendant Louis M. Bacon*

July 18, 2019

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................2

     A.    The Original Dispute in the Bahamas Between Nygård and Save the
Bays.........................................................................................................2

     B.    Bacon's Harassment Action Against Nygård ............................................4

     C.    Nygård's Counter-Suit in the Bahamas for Conspiracy ............................4

     D.    Nygård's Civil RICO Action in Florida and Its FNC Dismissal ................5

     E.    Bacon and Nygård Are Involved in an Unrelated Defamation Action
in New York.............................................................................................6

     F.    This Action.............................................................................................7

     G.    This Motion............................................................................................8

ARGUMENT ......................................................................................................................9

   I.    This Court Should Dismiss Because Nygård is Bound by His Prior FNC
Dismissal.....................................................................................................9

   II.    The FNC Factors Continue to Demand Dismissal...............................................12

     A.    Nygård's Tactical Choice of Forum Gets No Deference..........................12

     B.    The Bahamas is an Adequate Alternative Forum ....................................16

     C.    The Private Interest Factors Support Dismissal.......................................17

         1.    Most Important Witnesses are in the Bahamas and Beyond the
Compulsory Process of This Court ................................................17

         2.    The Possibility of Viewing the Premises and Other Efficiency
and Convenience Considerations Support Dismissal to the
Bahamas ....................................................................................20

     D.    The Public Interest Factors Also Strongly Favor a Bahamian Forum
for This Quintessentially Bahamian Dispute ...........................................21

   III.    The RICO Complaint is Impermissibly Premised on Alleged Fraudulent
Litigation Activity.......................................................................................23

CONCLUSION..................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A.P. Moller-Maersk A/S v. Ocean Express Miami*,
  550 F. Supp. 2d 454 (S.D.N.Y. 2008) .......................................................................21

*ACLI Gov't Sec., Inc. v. Rhoades*,
  963 F.2d 530 (2d Cir. 1992) ....................................................................................9

*Albert Trading, Inc. v. Kipling Belgium N.V./S.A.*,
  2002 WL 272408 (S.D.N.Y. 2002) ..........................................................................21

*Aldana v. Del Monte Fresh Produce N.A., Inc.*,
  578 F.3d 1283 (11th Cir. 2009) ........................................................................12, 17

*Amore ex rel. Estates of Amore v. Accor, S.A.*,
  484 F. Supp. 2d 124 (D.D.C. 2007) ....................................................................10, 12

*In re Application of the Coalition to Protect Clifton Bay and Louis Bacon*,
  2014 WL 5454823 (S.D.N.Y. 2014) ..........................................................................8

*Bacon v. Nygård*,
  160 A.D. 565 (1st Dep't 2018) ................................................................................7

*Bacon v. Nygård*,
  No. 150400/2015 (N.Y. Sup. N.Y. Cnty.) ..................................................................6

*Base Metal Trading SA v. Russian Aluminum*,
  253 F. Supp. 2d 681 (S.D.N.Y. 2003) ................................................................15, 19

*Beter v. Murdoch*,
  2018 WL 3323162 (S.D.N.Y. 2018) ........................................................................14

*BMR & Assocs., LLP v. SFW Capital Partners, LLC*,
  92 F. Supp. 3d 128 (S.D.N.Y. 2015) ........................................................................23

*Bohn v. Bartels*,
  620 F. Supp. 2d 418 (S.D.N.Y. 2007) ......................................................................21

*Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC*,
  155 F.3d 603 (2d Cir. 1998) ............................................................................13, 14

*In re Commodore Int'l, Ltd*,
  242 B.R. 243 (Bankr. S.D.N.Y. 1999) ......................................................................17

*Construtora Norbeto Oderbrecht S.A. v. Gen. Elec. Co.*,
  2007 WL 3025699 (S.D.N.Y. 2007) ........................................................................15

*Contrera v. Langer*,
    290 F. Supp. 3d 269 (S.D.N.Y. 2018).................................................................................2

*Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*,
    758 F. Supp. 2d 153 (E.D.N.Y. 2010) ...............................................................................25

*DirecTV Latin Am., LLC v. Park 610, LLC*,
    691 F. Supp. 2d 405 (S.D.N.Y. 2010)...............................................................................20

*Giro-Warranty House Int'l, Inc. v. Malaysian Airline Sys. Berhad*,
    2012 WL 3839529 (N.D. Okla. 2012) ..........................................................................10, 12

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947).........................................................................................................10

*In re Herald*,
    540 F. App'x 19 (2d Cir. 2013) .......................................................................................15

*Hyundai Merchant Marine Co. v. Mitsubishi Heavy Indus., Ltd.*,
    2015 WL 7758876 (S.D.N.Y. 2015)...........................................................16, 17, 18, 19, 20

*Iragorri v. United Techs. Corp.*,
    274 F.3d 65 (2d Cir. 2001)..........................................................................................15, 21

*Kim v. Kimm*,
    884 F.3d 98 (2d Cir. 2018)...................................................................................2, 23, 24, 25

*Lan Assocs. XVIII, L.P. v. Bank of Nova Scotia*,
    1997 WL 458753 (S.D.N.Y. 1997)..................................................................................18

*LaSala v. Bank of Cyprus Public Co.*,
    510 F. Supp. 2d 246 (S.D.N.Y. 2007)..............................................................................22

*Lazare Kaplan Int'l Inc. v. KBC Bank N.V.*,
    337 F. Supp. 3d 274 (S.D.N.Y. 2018)..........................................................................22, 23

*Meijer v. Qwest Commc'ns Int'l, Inc.*,
    2010 WL 1348668 (D. Colo. 2010) ................................................................................12

*Montgomery v. Oberti*,
    945 F. Supp. 2d 1367 (S.D. Fla. 2013) ...........................................................................17

*Norex Petroleum Ltd. v. Access Indus., Inc.*,
    416 F.3d 146 (2d Cir. 2005).............................................................................................13

*Nygård v. DiPaolo*,
    2017 WL 4303825 (S.D. Fla. 2017) .......................................................................*passim*

*Nygård v. DiPaolo,*
    753 F. App'x 716 (11th Cir. 2018) .................................................................... *passim*

*Online Payment Sols. Inc. v. Svenska Handeslbanken AB,*
    638 F. Supp. 2d 375 (S.D.N.Y. 2009) ........................................................................14

*Pastewka v. Texaco, Inc.,*
    565 F.2d 851 (3d Cir. 1977) .......................................................................................10

*Peters v. UBS AG,*
    2014 WL 148631 (S.D.N.Y. 2014) ...............................................................................9

*Pollux Holding Ltd. v. Chase Manhattan Bank,*
    329 F.3d 64 (2d Cir. 2003) ...........................................................................10, 16, 17

*RJR Nabisco, Inc. v. European Cmty.,*
    136 S. Ct. 2090 (2016) ................................................................................................11

*Royal & Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc.,*
    466 F.3d 88 (2d Cir. 2006) ..........................................................................................22

*Schlesinger v. Schlesinger,*
    2007 WL 9706975 (E.D.N.Y. 2007) ..........................................................................25

*Sedima, S.P.R.L. v. Imrex Co., Inc.,*
    473 U.S. 479 (1985) .....................................................................................................11

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,*
    549 U.S. 422 (2007) .....................................................................................................21

*Snyder v. U.S. Equities Corp.,*
    2014 WL 317189 (W.D.N.Y. 2014) ............................................................................25

*Sun Tr. Bank v. Sun Int'l Hotels, Ltd.,*
    184 F. Supp. 2d 1246 (S.D. Fla. 2001) ......................................................................17

*Tel. Sys. Int'l, Inc. v. Network Telecom PLC,*
    303 F. Supp. 2d 377 (S.D.N.Y. 2003) ........................................................................19

*Vanity Fair Mills, Inc. v. T. Eaton Co.,*
    234 F.2d 633 (2d Cir. 1956) .........................................................................................2

*VictoriaTea.com, Inc. v. Cott Beverages, Canada,*
    239 F. Supp. 2d 377 (S.D.N.Y. 2003) ........................................................................14

*Wiwa v. Royal Dutch Petroleum Co.,*
    226 F.3d 88 (2d Cir. 2000) ..........................................................................................15

*Wylie v. Island Hotel Co.*,
  2018 WL 3421374 (S.D. Fla. 2018) .......................................................................17

*Yager v. Starwood Hotels & Resorts Worldwide, Inc.*,
  2013 WL 2414146 (E.D. Pa. 2013) .......................................................................17

**Statutes**

18 U.S.C. § 1956 ............................................................................................................5, 8

18 U.S.C. § 1961(1)(A) ......................................................................................................11

18 U.S.C. § 1962 ..................................................................................................................24

28 U.S.C. § 1782 ..................................................................................................................8

New York Penal Law § 215.00 ........................................................................................5, 8

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ....................................................................................................2, 8

Fed. R. Civ. P. 45(c) ..........................................................................................................19

# INTRODUCTION

This civil RICO action challenges the veracity of witness statements that are under consideration in currently pending litigation in the Bahamas, and duplicates claims that Plaintiff Peter J. Nygård has already asserted in multiple prior actions.  It should be dismissed under the doctrine of *forum non conveniens* ("FNC") and as a matter of substantive law because under binding Second Circuit precedent, a civil RICO action cannot be used to challenge allegedly fraudulent litigation activity.

Nygård resides permanently in the Bahamas and considers that island nation his home. Defendant Louis Bacon owns a property in the Bahamas next door to Nygård's, and the two have been embroiled in multiple litigations in the Bahamas for years.  This RICO action arises out of one of those litigations.  For years, Nygård organized a campaign of harassment and physical intimidation against Bacon and several other members of a Bahamian environmental organization. Eventually, Bacon and those other victims sued Nygård in the Supreme Court of the Bahamas, in an action that is referred to here as the "Harassment Action."  In support of their claims, Bacon and the other Harassment Action plaintiffs submitted sworn statements from two Bahamian witnesses, Livingston "Bobo" Bullard and Wisler "Toggie" Davilma, who attested that they had previously worked for Nygård in furtherance of his harassment campaign.

Nygård has long and vigorously disputed these statements by Bullard and Davilma.  Indeed, before filing this RICO action, Nygård had already alleged in three other litigations that the statements were false.  In the Harassment Action itself, Nygård is defending the case on the ground that those statements are false.  Nygård also brought a separate Bahamian action against Bacon and others for allegedly conspiring to procure false testimony from Bullard and Davilma (the "Conspiracy Action").  And then, in 2017, Nygård filed a civil RICO suit in Florida federal court against an investigator who worked for Bacon (the "Florida RICO Action"), once again alleging

that Bullard's and Davilma's sworn statements were false.  The Southern District of Florida dismissed that prior complaint on FNC grounds, concluding that the action should proceed, if at all, "in the Bahamas." *Nygård v. DiPaolo*, 2017 WL 4303825, at *14 (S.D. Fla. 2017).  The Eleventh Circuit affirmed.  *Nygård v. DiPaolo*, 753 F. App'x 716 (11th Cir. 2018).

That prior FNC decision—expressly finding the United States *as a whole* inconvenient as compared to the Bahamas—has preclusive effect, and so this complaint should summarily be dismissed on preclusion grounds.  Even if that were not the case, the complaint should be dismissed in favor of the Bahamas under a fresh FNC analysis.  This dispute is about the veracity of statements made by Bahamian resident witnesses about a Bahamian resident plaintiff and concerns events that principally occurred in the Bahamas.  Nygård is already challenging the veracity of those statements in various pending Bahamian proceedings.

If this Court does not dismiss on FNC grounds (which it should), it should dismiss instead under the litigation activity exception to RICO.  Under Second Circuit precedent, the complained-of conduct—alleged procurement of false witness statements—is "litigation activity" that "cannot act as a predicate offense for a civil-RICO claim." *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018).  Accordingly, the complaint alternatively should be dismissed on this Rule 12(b)(6) ground.

## BACKGROUND

### A.    The Original Dispute in the Bahamas Between Nygård and Save the Bays

Bacon is a well-respected financier, philanthropist, and environmental conservationist.  Malins Ex. 1 ¶ 3.[1]  He owns a home in the Bahamas next to Nygård's luxury compound, Nygård

---

[1] The Declaration of Julian Henry Malins Q.C. is referred to as "Malins Decl." and exhibits to that declaration are referred to as "Malins Ex."  The Court can consider affidavits when determining an FNC motion. *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 645 (2d Cir. 1956).  The Court also may take judicial notice on a motion to dismiss of filings in other courts. *Contrera v. Langer*, 290 F. Supp. 3d 269, 278 n.5 (S.D.N.Y. 2018).

Cay. *Id.* ¶¶ 3, 9. Nygård and Bacon have been embroiled in litigation in the Bahamas for a number of years, stemming centrally from Bacon's involvement in an environmental not-for-profit organization that opposes some of Nygård's activities in the Bahamas, known as Save the Bays. *Id.* ¶ 3. Save the Bays became concerned that Nygård was expanding his coastal property in the Bahamas by illegally dredging the seabed around Nygård Cay. *Id.* ¶ 9. In 2013, Save the Bays successfully took legal action in the Bahamas to enjoin Nygård from doing this. *Id.* ¶ 10.

As set forth in Bacon's complaint against Nygård in the Harassment Action in the Bahamas, Nygård did not confine his response to the courts, but instead escalated the dispute, and turned it personal, by organizing a campaign of harassment and intimidation against Bacon and other officers and directors of Save the Bays. *Id.* ¶¶ 12–45. This included orchestrating vitriolic protests against Save the Bays' leadership, as well as targeting them with physical violence and threats. *Id.* For example, Frederick Smith, the managing partner of a Bahamas law firm and a local activist who also acts as legal counsel to Save the Bays, was attacked by a group of construction workers doing illegal work for one of Nygård's attorneys who smashed his car windows when he visited a beach near Nygård Cay. *Id.* ¶¶ 2, 13–17. The car of Reverend CB Moss, another plaintiff in the Harassment Action, was firebombed. *Id.* ¶ 18. Additionally, Bacon learned that Nygård had put out a contract on Bacon's life. *Id.* ¶ 22.

In the face of this campaign, in early 2015, Bacon and his fellow activists hired an investigative firm run by a former FBI agent, John DiPaolo, to assess their security risks and develop evidence to support claims against Nygård and others who appeared to be responsible for the harassing conduct. Malins Decl. ¶ 6; Malins Ex. 3 ¶¶ 1, 5–6. DiPaolo and his colleagues succeeded in developing evidence that Nygård was the primary organizer of the campaign and the instigator of these attacks. Malins Decl. ¶ 6; Malins Ex. 3 ¶ 7.

### B.     Bacon's Harassment Action Against Nygård

In early 2016, based on the evidence that DiPaolo obtained, Bacon and other activists filed the Harassment Action in the Supreme Court of the Bahamas, asking the court there to enjoin Nygård from further harassment.  Malins Decl. ¶¶ 4–5.  In support, they filed statements by two Bahamian resident witnesses, Bullard and Davilma, explaining that Nygård hired them to carry out his harassment campaign, including, they maintain, a plot to murder Bacon and others.  Malins Decl. ¶ 6; Malins Ex. 3 ¶¶ 114–23.  In his response to the complaint, Nygård denied wrongdoing and alleged that Bacon and others "suborned perjury in respect of the false evidence of Livingston Bullard and Wisler Davilma."  Malins Decl. ¶ 7; Malins Ex. 4 ¶ 22.  Nygård also submitted an affidavit from Bahamian witness Richette Ross in which she claimed to have been approached by Bullard to provide information harmful to Nygård's reputation.  Malins Decl. ¶ 8; Malins Ex. 5.

### C.     Nygård's Counter-Suit in the Bahamas for Conspiracy

A few weeks after Bacon filed the Harassment Action, Nygård separately counter-filed his separate Conspiracy Action against Bacon and the other Harassment Action plaintiffs, also in the Supreme Court of the Bahamas.  Malins Decl. ¶ 10.  That suit asserts a claim for "conspiracy to injure" based on Nygård's allegation that Bacon and others conspired to file the Harassment Action "without any faith in the merit of the action and well knowing that the said action was founded on perjury and the subornation thereof and by malicious publication of libels associated with the quotation of affidavits known to contain perjured statements."  Malins Ex. 6; *see also* Malins Decl. ¶ 10.  That suit thus similarly challenges the veracity of the Bullard and Davilma witness statements and the circumstances under which they were procured.[2]

---

[2] There are still other pending Bahamian actions where the veracity of the same witness statements has been put at issue.  Malins Decl. ¶¶ 16–18.  Indeed, in a recent action filed this year in which Nygård is a party, his co-defendant and one of his Bahamian attorneys, Keod Smith,

### D.    Nygård's Civil RICO Action in Florida and Its FNC Dismissal

In January 2017, Nygård filed yet another suit, this time in the United States, premised on allegations that Bullard's and Davilma's statements in the Bahamas were perjured and wrongly procured by Bacon.  In this civil RICO complaint filed in the U.S. District Court for the Southern District of Florida, Nygård alleged that Bacon was paying witnesses, "including . . . Bullard and Davilma, to provide false, influenced, and derogatory statements, in connection with testimony" in violation of New York Penal Law § 215 and the federal money laundering statute, 18 U.S.C. § 1956. Chianese Ex. 1 ¶¶ 14–15.[3]  The complaint alleged that Bullard and Davilma made a number of false statements to DiPaolo on February 19, 2015, January 24, 2016, and February 4, 2016, *id.* ¶¶ 19–20, and that DiPaolo induced those false statements by promising that Bacon would pay for them, *id.* ¶¶ 17, 20, 23–24.  The complaint also alleged that Bullard had pressured Richette Ross to rescind the sworn statement she submitted on Nygård's behalf in the Harassment Action. *Id.* ¶ 25.  The complaint further alleged that other individuals, Clement Chea and Tazhmoye Lacey-Ann Cummings, were offered payment in exchange for false testimony, but did not specify any proceeding in which they were to testify.  *Id.* ¶¶ 20, 30.  While it did not name Bacon as a defendant, it identified him as the leader of the purported RICO conspiracy, mentioned his name 25 times, and alleged that he financed and directed DiPaolo's alleged actions.  *Id.* ¶¶ 14, 17, 20.

The Southern District of Florida dismissed the complaint on FNC grounds.  *Nygård*, 2017 WL 4303825, at *4 n.5.  It concluded that Nygård's and the Nygård entities' choice of forum deserved limited deference because they were foreign to the forum, but that even if they were

---

counterclaimed against Bacon based, in part, on the allegation that Bacon hired Bullard and Davilma "to fabricate a story" to use against Nygård.  *Id.*; Malins Ex. 8.

[3] The Declaration of Christina Prusak Chianese is referred to as "Chianese Decl." and exhibits to that declaration are referred to as "Chianese Ex."

entitled to substantial deference, the applicable FNC factors weighed so heavily in favor of dismissal as to overcome it. *Id.* at *7 & n.6. The Eleventh Circuit affirmed. *Nygård*, 753 F. App'x at 719. It concluded that even if the Southern District of Florida had been required to afford "substantial deference" to the plaintiffs' forum choice, it still reasonably found that the relevant factors weighed in favor of dismissal. *Id.* at 722–23. In considering the private interest factors, the Eleventh Circuit noted that much of the "alleged misconduct took place in or was directed . . . toward the Bahamas," *id.* at 724; "Bacon is currently engaged in litigation against Mr. Nygård in a Bahamian court," *id.*; the availability of compulsory process in the Bahamas "is especially important to secure the attendance of . . . Bullard and Davilma," *id.* at 725; "forcing Bahamian witnesses to travel to the United States would impose a cost that could otherwise be avoided if this dispute is litigated in the Bahamas," *id.*; allowing the RICO case "to proceed in the Bahamas" would enhance judicial economy and help avoid "inconsistent rulings," *id.* at 726–27; and viewing the premises connected to allegations of violence and property damage might prove helpful, *id.* at 726. In considering the public interest factors, it found that "the possibility of avoiding duplicative litigation" as between the pending actions in the Bahamas and a RICO action in the United States weighed in favor of dismissal, and also found that "the possibility of inconsistent rulings" from that duplicative litigation "raises international comity concerns." *Id.* at 728–29.

**E.      Bacon and Nygård Are Involved in an Unrelated Defamation Action in New York**

In January 2015, Bacon sued Nygård and his companies in New York Supreme Court for defamation, including Nygård's specific efforts to target a New York audience with lies about Bacon. *Bacon v. Nygård et al.*, No. 150400/2015 (N.Y. Sup. N.Y. Cnty. 2015). Nygård and his companies invoked the jurisdiction of that court by filing counterclaims, but after those were dismissed, and after more than a year of litigation, Nygård sought dismissal on state-law FNC

grounds.  The trial court initially dismissed, but the First Department re-instated the case.  *Bacon v. Nygård*, 160 A.D.3d  565 (1st Dep't 2018).  That FNC denial is specific to the facts and procedural posture of that case and thus has no bearing on this case.  In particular, the First Department emphasized that its case was one for *defamation*, which made it fundamentally different than the ongoing litigation between Bacon and Nygård in the Bahamas.  *Id.* at 566–67.  The First Department also emphasized that Nygård waited more than a year and until after the commencement of discovery—involving the exchange of "thousands of pages of documents" and five depositions—to move for FNC dismissal.  *Id.* at 566.

### F.    This Action

Instead of refiling his RICO claims "in the Bahamas," *Nygård*, 2017 WL 4303825, at *14, Nygård filed this case, repeating the same claims and allegations as in his Florida suit.  He centrally claims that Bullard and Davilma made a number of false statements to DiPaolo on February 19, 2015, January 24, 2016, and February 4, 2016, and that DiPaolo induced those statements with promises of payment from Bacon in order to submit them in the Harassment Action in the Bahamas, *compare* Dkt. 6 ("Compl.") ¶¶ 13–19, 21–28, *with* Chianese Ex. 1 ¶¶ 17–24; that Bullard pressured Richette Ross to rescind her testimony in the Harassment Action, *compare* Compl. ¶¶ 30–33, *with* Chianese Ex. 1 ¶¶ 25–28; and that Clement Chea was also offered payment in exchange for false testimony, *compare* Compl. ¶ 20, *with* Chianese Ex. 1 ¶ 20.  Nygård has also included allegations about offers of payments to Tazhmoye Lacey-Ann Cummings, but he has removed the allegations from the Florida RICO Action that Cummings was asked to provide false testimony.  *Compare* Compl. ¶ 29, *with* Chianese Ex. 1 ¶ 30.

The only new factual allegations are, first, a single paragraph alleging that an individual named Stephen Feralio has provided Bacon with "cooperation" and has been paid in return. Compl. ¶ 12.  Feralio is a videographer whom Nygård once hired to document Nygård's life around

the clock.  Bacon obtained discovery from Feralio for use in certain Bahamian litigations by filing an application in this Court under 28 U.S.C. § 1782, which was granted by Judge Cote.  *See In re Application of the Coalition to Protect Clifton Bay and Louis Bacon*, 2014 WL 5454823 (S.D.N.Y. 2014).  Nygård intervened in that § 1782 proceeding to prevent Feralio from giving evidence, but Judge Cote overruled Nygård's objections.  Feralio then sat for a court-ordered deposition, and Nygård did not claim before Judge Cote that Feralio gave false evidence there.  Likewise here, there is no allegation that Feralio has provided false or influenced testimony or that any predicate offense has been committed with respect to Feralio, so the factual allegations related to Feralio assert no impropriety and add nothing material to the complaint.

Second, in this complaint Nygård has newly added a paragraph referring generally to "Activity in 2018, 2019" in which Nygård alleges that his "property in the Bahamas" was "burglarized."  Compl. ¶ 34.  Again, he does not allege that Bacon did this, or otherwise allege any predicate act arising from any alleged "activity" in 2018 or 2019.

This action's RICO theories are also identical to those advanced in the Florida RICO Action.  Here, as in Florida, the purported RICO enterprise includes Bacon, Bullard, Davilma, and DiPaolo, *compare* Compl. ¶ 45, *with* Chianese Ex. 1 ¶ 11, and the predicate acts are purportedly violations of New York Penal Law § 215.00 and 18 U.S.C. § 1956 based on Bacon allegedly paying witnesses, "including Mr. Bullard and Mr. Davilma, to provide false and influenced statements, in connection with testimony," *compare* Compl. ¶¶ 46–56, *with* Chianese Ex. 1 ¶¶ 14–15. The alleged injuries likewise remain the same.  *Compare* Compl. ¶ 57, *with* Chianese Ex. 1 ¶ 44.

### G.    This Motion

With respect to this motion, Bacon filed a pre-motion letter seeking leave to file a motion to dismiss asserting the forum arguments, including those based on FNC, collateral estoppel, and international comity.  Bacon also sought leave to file a Rule 12(b)(6) motion asserting failure to

state a claim, both on the ground that this action is barred by Second Circuit precedent holding that a RICO action may not be predicated on prior litigation activity, and because Nygård has failed to allege a number of RICO elements.  At the pre-motion conference, this Court directed Bacon to file a single initial motion addressing his FNC, collateral estoppel, and litigation-activity arguments, while preserving Bacon's right to pursue the remaining forum and 12(b)(6) arguments in a subsequent motion to dismiss if that becomes necessary.  Nygård sought discovery to bolster his complaint, but the Court denied that request, and discovery is consequently stayed.  For the reasons that follow, Bacon asks that the Court dismiss this action in its entirety.

## ARGUMENT

### I.   This Court Should Dismiss Because Nygård is Bound by His Prior FNC Dismissal

This suit duplicates Nygård's prior RICO suit, which was dismissed by the Southern District of Florida in a decision upheld by the Eleventh Circuit.  As this section explains, that prior dismissal held that the Bahamas is more convenient than the United States as a whole—and thus more convenient than this Court—for litigating the claims in this action.  Nygård, having had a full and fair opportunity to litigate the issue in Florida, is bound by that decision and estopped from seeking to litigate this case here.  Moreover, as the following section explains, even if Nygård were not estopped by the prior decision against him, all of the relevant factors still favor an FNC dismissal, so this Court should dismiss the suit in favor of the Bahamas even under a fresh analysis.

Under the doctrine of non-mutual collateral estoppel, Nygård is prevented from re-litigating an identical issue of fact or law that was fairly and fully litigated in a prior proceeding—*i.e.*, the Florida RICO Action—even against a new defendant like Bacon.  *ACLI Gov't Sec., Inc. v. Rhoades*, 963 F.2d 530, 533 (2d Cir. 1992).  Courts regularly give preclusive effect to prior FNC decisions by sister courts "where the controlling facts and applicable legal rules remain unchanged."  *Peters v. UBS AG*, 2014 WL 148631, at *3–4 (S.D.N.Y. 2014) (plaintiff estopped from

re-litigating prior FNC dismissal by New York State Supreme Court), *aff'd*, 588 F. App'x 57 (2d Cir. 2014).[4]  Here, both of those requirements are satisfied, so permitting re-litigation of the FNC issue would be "intolerable."  *Pastewka*, 565 F.2d at 854.

First, there is no question that the law governing FNC in this Circuit and in the Eleventh Circuit is "substantively similar."  *See Giro-Warranty House Int'l*, 2012 WL 3839529, at *2–4 (finding FNC law in Second and Tenth Circuits similar despite "some minor differences" because both "derive their analysis from governing Supreme Court precedent" outlined in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)).  Indeed, the FNC analysis applied by the Florida district court and Eleventh Circuit includes *every* FNC factor applicable in this Court, including the degree of "deference due to the plaintiff's choice of forum;" "whether an adequate alternative forum exists;" and the "private and public interest factors" derived from *Gulf Oil*.  *Compare, e.g.*, *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 74–75 (2d Cir. 2003), *with Nygård*, 2017 WL 4303825, at *5 (citing *Wilson v. Island Seas Invest., Ltd.*, 590 F.3d 1264, 1269 (11th Cir. 2009)).

Second, Nygård "rel[ies] on identical material facts" as those he alleged in Florida.  *Pastewka*, 565 F.2d at 854.  This complaint, just like the prior one, concerns allegations that Bacon and others working at his behest procured false testimony from Bullard and Davilma and submitted it in proceedings in the Bahamas.  *See supra* p. 4.  Thus, this complaint "alleges the same facts and raises the same legal issues" as the prior Florida RICO Action.  *Amore*, 484 F. Supp. 2d at 129.

The two new factual allegations here do not impact the analysis because they are not material.  Nygård is asserting a civil RICO cause of action, and the alleged wrongdoing in such an

---

[4] *See also Pastewka v. Texaco, Inc.*, 565 F.2d 851, 854 (3d Cir. 1977) (giving preclusive effect to prior Second Circuit decision affirming FNC dismissal); *Amore ex rel. Estates of Amore v. Accor, S.A.*, 484 F. Supp. 2d 124, 130 (D.D.C. 2007) (giving preclusive effect to prior SDNY FNC dismissal); *Giro-Warranty House Int'l, Inc. v. Malaysian Airline Sys. Berhad*, 2012 WL 3839529, at *2–4 (N.D. Okla. 2012) (same).

action turns on the predicate acts.  "RICO is founded on the concept of racketeering activity," *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2096 (2016), and "'racketeering activity' consists of no more and no less than commission of a predicate act," *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 495 (1985).  While Nygård has larded the complaint with factual allegations that (a) Stephen Feralio vaguely "cooperated" with Bacon and (b) Nygård's Bahamian mansion was burglarized by an unidentified person, he does not assert that any predicate act was committed with respect to either Feralio or that Bahamian property.  *See supra* pp. 7–8.  He does not allege that Feralio has given false or influenced testimony in any proceeding.  And he neither ties Bacon to whatever happened at Nygård's property nor alleges that a Bahamian property crime would constitute a U.S. RICO predicate (nor could he have, because burglary is not a RICO predicate, *see* 18 U.S.C. § 1961(1)(A)).  Thus, the new allegations add nothing to, and are not material to, Nygård's RICO cause of action, which remains predicated on the same Bahamian acts with respect to the same Bahamian witnesses, Bullard and Davilma, as the claim Nygård asserted in Florida.

For these reasons, nothing in the new complaint changes the analysis or gives any reason why Nygård should get a second shot at litigating these already-dismissed claims in the United States.  This is especially true because the Eleventh Circuit's decision affirming the Southern District of Florida judgment was not merely a determination that a particular district was inconvenient, but rather, it was a determination that "the United States" as a whole was not "the appropriate forum."  *Nygård*, 753 F. App'x at 727; *see also, e.g.*, *id.* at 722 ("[T]he relevant forum for purposes of the federal [FNC] analysis is the *United States as a whole*." (emphasis added)); *id.* at 724 (comparing "the consequences of trying this case in the Bahamas as opposed to the *United States*" (emphasis added)).  Because the FNC judgment in the Florida RICO Action had "national scope," it was a preclusive determination that every federal jurisdiction in the United States—including

this one—is inconvenient as compared to a Bahamian forum. *See Giro-Warranty House Int'l*, 2012 WL 3839529, at *4. Nygård is bound by this "determination that the merits of the case should be adjudicated in a court *abroad*, rather than in the United States," *Amore*, 484 F. Supp. 2d at 130 (emphasis added), especially given that he expressly pressed in Florida that the federal FNC analysis "weighs evidence in *the U.S. as a whole* against the potential alternate [foreign] forum," Chianese Ex. 3 at 39 (emphasis added); *accord* Chianese Ex. 2 at 11.

Because the Florida FNC judgment was based on substantially identical law and materially identical facts, and held, against the same plaintiffs as here, that the Bahamas is preferable to every United States jurisdiction, Nygård is collaterally estopped from reasserting those same allegations in this Court, and his suit should be dismissed.

## II.    The FNC Factors Continue to Demand Dismissal

### A.    Nygård's Tactical Choice of Forum Gets No Deference

Separately, dismissal remains proper under a fresh FNC analysis because each factor of the relevant three-step analysis favors dismissal to the Bahamas. First, plaintiffs' choice of forum is due less deference because the real party in interest is foreign, and regardless, the other factors weigh so heavily in favor of dismissal that the same result is warranted even if full deference is given. Second, the Bahamas is an adequate alternative forum for the dispute, and indeed has ongoing litigation involving these same issues and parties already. Third, the private and public interest FNC factors articulated by the Supreme Court all strongly favor dismissal.

It bears noting at the outset that, even if this Court were to conclude that some factors require new analysis here as compared to the analysis in Florida, Nygård is still "bound in significant measure" by the Southern District of Florida's and Eleventh Circuit's "factual and legal conclusions" on each discrete part of the FNC analysis that has not changed. *See Aldana v. Del Monte Fresh Produce N.A., Inc.*, 578 F.3d 1283, 1289, 1291 (11th Cir. 2009); *see Meijer v. Qwest*

*Commc'ns Int'l, Inc.*, 2010 WL 1348668, at *3 (D. Colo. 2010) (finding that first court's analysis of "most of the relevant [FNC] factors . . . carr[ied] great weight in [second court's FNC] analysis"). But whether under an independent review, or a decision bound in part by the prior Florida RICO Action ruling, it is clear that *all* of the relevant FNC factors overwhelmingly favor dismissal.

As to the degree of deference owed to the plaintiffs' choice of forum, it is minimal. Minimal deference is owed to a foreign plaintiff's choice of forum, *see Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 154 (2d Cir. 2005), and Peter Nygård is a Canadian citizen and a permanent resident of the Bahamas, Malins Ex. 1 ¶ 7. Nygård has caused two corporate entities that he owns and controls to bring this action together with him, but that does not change the analysis. The first of those is Nygård International, the parent company of Nygård's business, which makes mid-market women's clothing. Nygård International is a Canadian company, Compl. ¶ 2, and so its presence as a plaintiff adds nothing to the deference analysis.

The second company joined as a plaintiff is Nygård, Inc., Nygård International's U.S. subsidiary, which is a Delaware corporation. *Id.* ¶ 3. Whatever greater deference might be afforded to that U.S. company if it had a real interest in this matter, however, does not apply, because under Second Circuit law, the deference inquiry focuses on "the real party in interest," and in this case, that is Peter Nygård personally. When the "real part[y] in interest [is] foreign . . . , there is *not* a strong presumption in favor of the plaintiffs' choice of forum," notwithstanding the presence of a domestic plaintiff controlled by the real party in interest. *Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 612 (2d Cir. 1998) (emphasis added).

The complaint here is explicit that this suit arises from a "saga between *Mr. Nygård* and Mr. Bacon." Compl. ¶ 31 (emphasis added). The complaint exclusively alleges harms and wrongs against Nygård personally. For example, Nygård complains that "Mr. Bullard and Mr. Davilma

claimed to have information about *Mr. Nygård* which would be harmful to *Mr. Nygård*." *Id.* ¶ 17 (emphasis added). He alleges that their false statements include the assertion "that *Mr. Nygård . . . paid Mr. Bullard and Mr. Davilma to burn a shop and an automobile.*" *Id.* ¶ 28 (emphasis added). He claims that Bullard's "job with Mr. Bacon was to set up *Mr. Nygård*" and that Bullard wanted Richette Ross to "walk away from the June 28 affidavit submitted in support of *Mr. Nygård*." *Id.* ¶¶ 31, 32 (emphasis added). None of the purportedly influenced testimony that is at the heart of the case here, nor any of the other alleged actions, is directed at either of the Nygård companies, and indeed it appears that those companies are not proper plaintiffs. Mr. Nygård "cannot increase [his] connection to this forum by suing in [a U.S.] party's name." *Online Payment Sols. Inc. v. Svenska Handeslbanken AB*, 638 F. Supp. 2d 375, 384 (S.D.N.Y. 2009) (collecting cases).

The complaint's conclusory allegations of harm to Nygård's businesses based on the claim that "Nygård and his businesses are closely associated in the public eye," Compl. ¶ 1, are insufficient for this Court to conclude otherwise, *see Capital Currency Exchange*, 155 F.3d at 612 (discussion of "letter of credit" issued in New York "[was] a red herring"); *VictoriaTea.com, Inc. v. Cott Beverages, Canada*, 239 F. Supp. 2d 377, 381-82 (S.D.N.Y. 2003) (holding that "nominally American plaintiff" was "not entitled to the high deference ordinarily accorded to plaintiff's venue for the purposes of [FNC] analysis" where that plaintiff did not "compris[e] one of the principal parties in interest to the underlying relationships and transactions that engendered the action").[5] It is Nygård, the Bahamian resident, who is the real plaintiff in this action.

Lesser deference is also owed for the separate reason that "the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons . . . the less deference

---

[5] In any event, the supposed "reputational harms" Nygård's businesses have allegedly suffered "are too speculative to constitute an injury to business or property." *Beter v. Murdoch*, 2018 WL 3323162, at *5 (S.D.N.Y. 2018).

the plaintiff's choice commands." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001). Here, Nygård's choice of a U.S. forum is due no deference because he filed here despite the fact that two related litigations—one of which he personally initiated as a plaintiff—are ongoing between him and Bacon in the Bahamas on this very same subject matter. *See supra* p. 4.  His decision to sue here when his own suit on the same subject is already pending in the Bahamas is transparently an effort to shop for a forum that he likes better than that Bahamian court.

Nygård's desire for a change of forum is presumably motivated by his recent lack of success in the Bahamian courts, which, among other things, has resulted in an outstanding warrant for his arrest for contempt of court.  Malins Decl. ¶ 22.  But having "pursued various remedies" in the foreign court to "unsatisfactory results" is "a tactical maneuver" that "is not protected" by deference to the plaintiff's choice of forum.  *See Base Metal Trading SA v. Russian Aluminum*, 253 F. Supp. 2d 681, 698 (S.D.N.Y. 2003); *see also Construtora Norbeto Oderbrecht S.A. v. Gen. Elec. Co.*, 2007 WL 3025699, at *8 (S.D.N.Y. 2007) (finding selection of U.S. forum "was made for forum-shopping reasons" when there was "related ongoing litigation" in foreign forum).

In short, Nygård's choice of this forum "bespeak[s] forum shopping rather than genuine convenience for the[] foreign plaintiffs, the defendants, and witnesses," and so is not entitled to deference. *In re Herald*, 540 F. App'x 19, 27 (2d Cir. 2013).  But even if his choice of forum were due substantial deference, FNC dismissal would *still* be warranted.  "The[] cases do not reflect a rigid rule of decision protecting U.S. citizen or resident plaintiffs from dismissal for [FNC]." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 102 (2d Cir. 2000); *see Nygård*, 2017 WL 4303825, at *7 n.6 ("[E]ven if Plaintiffs were entitled to substantial deference, the Court would still dismiss this case on [FNC] grounds."); *Nygård*, 753 F. App'x at 723 (affirming "[b]ecause the district court . . . made clear that additional deference would not change its analysis").  All of the FNC

factors strongly favor dismissal, for the reasons discussed below.  Among other things, it would simply be impossible to litigate this case in the United States, because the veracity of Bullard's and Davilma's testimony is *the heart* of this case, and those two indispensable witnesses are not available to testify here.  So for that reason and the others that follow, this case should be dismissed even if Nygård's choice of forum is accorded substantial deference.

### B.     The Bahamas is an Adequate Alternative Forum

The Bahamas would be an adequate forum to litigate this case.  Nygård is first of all estopped on this point, because the Florida RICO Action has resolved this point against him, *Nygård*, 2017 WL 4303825, at *6, and indeed on appeal to the Eleventh Circuit, Nygård conceded "the fact that the Bahamas may be an adequate alternative forum," Chianese Ex. 3 at 48.

But putting preclusion aside, there is no doubt that the Bahamas is adequate.  Adequacy is a low bar: "An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute."  *Pollux*, 329 F.3d at 75. Bacon is amenable to process in the Bahamas, and indeed "already is a party" in litigation with Nygård there, *see Hyundai Merchant Marine Co. v. Mitsubishi Heavy Indus., Ltd.*, 2015 WL 7758876, at *4 (S.D.N.Y. 2015), including in the Conspiracy Action that raises the same claims as here.  *See supra* p. 4.  And as Nygård's current pursuit of that action admits, the Bahamas recognizes causes of action, including conspiracy to injure by unlawful means and actionable abuse of the civil court process, that cover the subject matter of Nygård's allegations here.  Malins Decl. ¶¶ 14–15.  More broadly, any number of courts have recognized the adequacy of the Bahamian legal system.[6]  In all, the Bahamas is an adequate, available alternative forum.

---

[6] *See, e.g.*, *Wylie v. Island Hotel Co.*, 2018 WL 3421374, at *2 (S.D. Fla. 2018), *aff'd*, — F. App'x—, 2019 WL 2207639, at *3 (11th Cir. 2019); *In re Commodore Int'l, Ltd*, 242 B.R. 243, 261–64 (Bankr. S.D.N.Y. 1999); *Yager v. Starwood Hotels & Resorts Worldwide, Inc.*, 2013 WL

### C.   The Private Interest Factors Support Dismissal

After assessing the degree of deference owed to the plaintiff's choice of forum and ensuring that an alternative forum is available, a court conducting an FNC analysis next analyzes whether the so-called private interest factors support dismissal. *Pollux*, 329 F.3d at 75.  Here, these all support dismissal.[7]  First of all, Nygård is bound as to these factors by the Florida RICO Action decision: As was the case in Florida, most witnesses, including the indispensable Bullard and Davilma, are in the Bahamas; those witnesses are beyond the reach of the Court's compulsory process; it would be expensive for witnesses to travel from the Bahamas to the United States; the Bahamas is the location of the most relevant underlying incidents; and proceeding with an action anywhere in the United States risks inconsistent judgments with judgments of the courts in the ongoing Bahamian proceedings and would cause the parties to wastefully expend resources across multiple fora.  For those reasons, the courts in the Florida RICO Action found that the "the private interest factors . . . weigh heavily in favor of dismissal of this action to the Bahamas," *Nygård*, 2017 WL 4303825, at *12, *aff'd*, 753 F. App'x at 727, and that conclusion binds Nygård here as to "each of the individual private interest factors," *Aldana*, 578 F.3d at 1293.

### 1.   Most Important Witnesses are in the Bahamas and Beyond the Compulsory Process of This Court

In any event, and even if that were not the case, an independent review of the private interest factors confirms that they overwhelmingly weigh in favor of dismissal.  Access to sources of

---

2414146, at *4 (E.D. Pa. 2013); *Montgomery v. Oberti*, 945 F. Supp. 2d 1367, 1374 (S.D. Fla. 2013); *Sun Tr. Bank v. Sun Int'l Hotels, Ltd.*, 184 F. Supp. 2d 1246, 1263 (S.D. Fla. 2001).

[7] The factors include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Hyundai*, 2015 WL 7758876, at *5 (quoting *Iragorri*, 274 F.3d at 73–74).

proof—"perhaps [the] most important[] private interest concern," *Lan Assocs. XVIII, L.P. v. Bank of Nova Scotia*, 1997 WL 458753, at *5 (S.D.N.Y. 1997)— "tips the balance in favor of dismissal" where, as here, "most of the witnesses" (and all of the most important ones not otherwise party to this action) are in the foreign forum, *Hyundai*, 2015 WL 7758876, at *5.

As noted, the gravamen of Nygård's complaint is that Bullard and Davilma gave false statements that were submitted to a Bahamian court.  Compl. ¶¶ 13–28, 35–36.  Ten of the complaint's thirteen pages of factual allegations focus on these two witnesses, the statements they made, and the reasons they made them.  *See id.* at pp. 4–13.  Those two witnesses are indispensable to the proper adjudication of this dispute, but they are in the Bahamas.  Malins Decl. ¶ 6.  And all of the incidents described in their purportedly false statements occurred in the Bahamas, *see, e.g.*, Compl. ¶ 28, so all of the witnesses to those incidents are also likely to be in the Bahamas.

The other potential witnesses per the allegations in the complaint are also overwhelmingly in the Bahamas, or at least outside of the United States.  The complaint identifies Richette Ross as a "former employee of Nygård" and someone whom Bullard supposedly "accosted" to convince her to withdraw testimony she had submitted in support of Nygård's defense in the Bahamas Harassment Action.  *Id.* ¶¶ 30–33.  Ross, too, resides in the Bahamas, and her testimony at issue in the Harassment Action similarly concerns events in the Bahamas.  Malins Decl. ¶ 8; Malins Ex. 5 at 1 ("I, RICHETTE ROSS of the Western District of the Island of New Providence, one of the Islands of the Commonwealth of The Bahamas . . . ."); *id* at 2 ¶ 2.  To the extent allegations about Chea are relevant, Chea is alleged to have offered false testimony in the Cayman Islands, Compl. ¶ 20, so Chea's location weighs against litigation in the United States.

The complaint fails to provide *any* information concerning the whereabouts of Feralio, *see id.* ¶ 12, and Cummings, *see id.* ¶ 29.  In any event, their testimony is not material to the complaint

because they are discussed in only two paragraphs and no predicate act is alleged as to either.  *See id.* ¶ 12 (alleging only agreement to "indemnify Mr. Feralio in connection with his cooperation"); *id.* ¶ 29 (alleging offer of payment to Cummings in exchange for relocation without mention of testimony).  DiPaolo is "willing to travel to the Bahamas" for this litigation, *Nygård*, 753 F. App'x at 724, and Bacon is in active litigation with Nygård there already and so "would be available in [t]he Bahamas," *id.*  Because the question is where "most witnesses and documents are likely to be located," *Hyundai*, 2015 WL 7758876, at *4, and here, most of the "likely witnesses"—including the two indispensable ones—are in the Bahamas and "few [witnesses] . . . are in the United States," "[a]ccess to sources of proof . . . tips heavily in favor" of the Bahamas.  *Base Metal Trading*, 253 F. Supp. 2d at 710–12; *accord Nygård*, 753 F. App'x at 724.

In addition, where, as here, "many material witnesses are located abroad" and "several non-party witnesses cannot be compelled to testify," the "private [interest] factors weigh heavily in favor of dismissal."  *Tel. Sys. Int'l, Inc. v. Network Telecom PLC*, 303 F. Supp. 2d 377, 383 (S.D.N.Y. 2003); *accord Hyundai*, 2015 WL 7758876, at *5.  Key witnesses Bullard and Davilma are again the lynchpin.  Nygård alleges that these two "were instrumental to [Bacon's] criminal enterprise," and their attendance at trial would be "especially important."  *Nygård*, 753 F. App'x at 725.  This action could not fairly be tried without these two being available to give live testimony so the jury could assess their credibility, but they are outside this Court's compulsory power and cannot be compelled to attend trial here.  *See* Fed. R. Civ. P. 45(c); *Nygård*, 753 F. App'x at 725 ("The availability of compulsory process is especially important to secure the attendance of Messrs. Bullard and Davilma . . . .").  The same is true for Ross and Chea.  *See supra* pp. 18–19.  The "availability of compulsory process for [these] unwilling witnesses" in the Bahamas, and the

lack of it in New York, "weighs significantly in favor of [that] foreign forum." *Hyundai*, 2015 WL 7758876, at *5 (internal quotation marks omitted).

Finally, it is "common sense" that "forcing Bahamian witnesses to travel to the United States would impose a cost that could otherwise be avoided if this dispute is litigated in the Bahamas." *Nygård*, 753 F. App'x at 725; *see Hyundai*, 2015 WL 7758876, at *6 ("The expense of forcing [witnesses] to travel to New York for trial also weighs in favor of the [foreign] forum."). This too weighs in favor of dismissal.

### 2. The Possibility of Viewing the Premises and Other Efficiency and Convenience Considerations Support Dismissal to the Bahamas

Other private interest factors confirm that the Bahamas is more convenient. Because the incidents described by Bullard and Davilma in their statements occurred in the Bahamas, *see, e.g.*, Compl. ¶ 28, as the Eleventh Circuit found—and as remains true here—there is a chance "that a view of the premises" in the Bahamas "will be helpful in trying this case," *Nygård*, 753 F. App'x at 726. This also applies to the alleged 2018 or 2019 burglary in the Bahamas. *See* Compl. ¶ 34.

Additionally, multiple actions in the Bahamas involving the key issues of the veracity of Bullard's and Davilma's statements and the circumstances under which those statements were procured are already ongoing. *See supra* p. 4. If this action is not dismissed, the parties will be "forced to litigate the related issues in two different forums." *DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 426 n.6 (S.D.N.Y. 2010). That raises the specter of not only "potentially inconsistent results," *id.*, but also the parties' waste of resources litigating identical issues in separate fora. As the Supreme Court has recognized, where, as here, foreign "proceedings [were] long launched" before the U.S. suit, there is "a textbook case for immediate [FNC] dismissal," as "[j]udicial economy is disserved by continuing litigation" in the U.S. forum. *Sinochem*

*Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 435 (2007).[8]  If this action is properly

dismissed, the actions can be consolidated in the Bahamas, which favors dismissal.  *See* Malins

Decl. ¶¶ 11, 15 (citing Rules of the Supreme Court of the Bahamas, Or. 4, R. 1); *Nygård*, 753 F.

App'x at 726 (so holding).  Thus, and just as the courts in the Florida RICO Action found, the

private interest factors overwhelmingly support dismissal.

### D.    The Public Interest Factors Also Strongly Favor a Bahamian Forum for This Quintessentially Bahamian Dispute

The public interest factors similarly and uniformly support dismissal.[9]  The public interest

in judicial economy and avoiding inconsistent results alone is sufficient here for the public interest

factors to, on balance, weigh in favor of dismissal.  *See Nygård*, 753 F. App'x at 728–29 (affirming

district court's "ultimate conclusion that the public interest factors . . . favor dismissal" in Florida

RICO Action).  The issues central to this action—the veracity of Bullard's and Davilma's state-

ments and the circumstances under which those statements were procured—are also central to the

ongoing actions in the Bahamas.  *See supra* p. 4.  "[T]he possible duplication of effort by another

court hearing the same claims involving the same parties is a matter of public interest because it

likely imposes an unnecessary burden on this Court."  *Bohn*, 620 F. Supp. 2d at 433–34; *see also*

*LaSala v. Bank of Cyprus Public Co.*, 510 F. Supp. 2d 246, 267 (S.D.N.Y. 2007) (finding "public

interest strongly favors" foreign forum because resolving "issues" common to foreign proceedings

---

[8] *See also Albert Trading, Inc. v. Kipling Belgium N.V./S.A.*, 2002 WL 272408, at *3 (S.D.N.Y. 2002) ("[T]he Second Circuit has affirmed dismissal on grounds of [FNC] where, as here, [a party] has already commenced suit in the alternative (foreign) forum." (citing *Alcoa Steamship Co. v. M/V Nordic Regent*, 654 F.2d 147, 150 (2d Cir. 1980)).

[9] The public interest factors include the local interest in having localized controversies decided at home, the burden on jurors in a forum with little connection to the controversy, court congestion, the need to apply foreign law, judicial economy, and avoidance of inconsistent rulings. *Iragorri*, 274 F.3d at 74; *A.P. Moller-Maersk A/S v. Ocean Express Miami*, 550 F. Supp. 2d 454, 467 (S.D.N.Y. 2008); *Bohn v. Bartels*, 620 F. Supp. 2d 418, 433-34 (S.D.N.Y. 2007).

"would be an inefficient use of judicial resources").  In addition, with overlapping issues comes "the risk of inconsistent judgments," *LaSala*, 510 F. Supp. 2d at 267, which is a particularly pernicious risk in this case.  The question whether Bullard and Davilma submitted truthful testimony more closely touches and concerns the Bahamian court that received that testimony, and this Court should not put itself in a position to second-guess that court's own eventual determination.[10]

Additionally, this "is a quintessentially Bahamian dispute involving allegations of fraud committed in courts located in the Bahamas, based on testimony related to alleged defamation, violent assaults and death threats occurring in the Bahamas and, often times, against Bahamian citizens and residents."  *Nygård*, 2017 WL 4303825, at *12.  Even with the allegation that payments were made from New York to Bullard and Davilma in the Bahamas, Compl. ¶ 55, this is, at bottom, a Bahamian dispute fundamentally connected to the same subject matter at issue in ongoing actions in the Bahamas and ultimately arising from a dispute related to Nygård's dredging in that country.  It should therefore be heard in the Bahamas.

*Lazare Kaplan International Inc. v. KBC Bank N.V.*, 337 F. Supp. 3d 274 (S.D.N.Y. 2018), is instructive on this point.  There, the court concluded in a RICO action that the "public . . . interest factors weigh[ed] substantially in favor of" the foreign forum even when the United States had a "connection to" the facts of the case because "the substantive allegations [we]re much more closely connected to [the foreign forum] than to New York or the United States," "the brunt of the alleged misconduct took place . . . outside of the United States," and "the United States' interest in applying its own RICO laws is merely one consideration to be weighed in the totality of the [FNC] analysis."

---

[10] Bacon's reserved grounds for dismissal, *see supra* pp. 8–9 , include the doctrine of international comity abstention.  That doctrine calls for dismissal in view of ongoing, earlier-filed litigation in a foreign forum and turns on factors similar to those applicable in the FNC analysis. *See Royal & Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 94 (2d Cir. 2006) (reciting factors).

*Id.* at 303–04 (internal alterations omitted).  So too here.  Try as Nygård might to make this a U.S. case, this is fundamentally a Bahamian controversy that should be resolved there, and U.S. jurors—in Florida, New York, or any other state—have no reason to be interested in resolving it.

Finally, even if there were "large backlogs" in Bahamian courts, this Court still sits "in one of the busiest districts in the country," which weighs in favor of dismissal.  *BMR & Assocs., LLP v. SFW Capital Partners, LLC*, 92 F. Supp. 3d 128, 142 (S.D.N.Y. 2015); *cf. Nygård*, 753 F. App'x at 728 (explaining that the docket congestion factor assesses "the relative speed at which a case will be resolved").  Nygård's claims also facially implicate Bahamian law, *see* Compl. ¶ 52 (alleging that Bacon's conduct "contravenes numerous sections of the Bahamas Penal Code"), and "the public interest weighs heavily in favor of having [such] issues of foreign law decided by foreign tribunals," *BMR*, 92 F. Supp. 3d at 142.

Accordingly, the public interest factors also weigh in favor of the conclusion that the Bahamas is the appropriate forum.  This Court should thus dismiss the complaint for FNC.

## III.   The RICO Complaint is Impermissibly Premised on Alleged Fraudulent Litigation Activity

Nygård's RICO complaint must also be dismissed for failure to state a claim because it is an impermissible challenge to litigation activity.  Nygård's central grievance is that Bacon allegedly procured false witness testimony for use in ongoing litigation.  That concern can and should be addressed by a proper motion before the court overseeing that litigation.  Seeking RICO damages is an impermissible end-run around that proper procedure, so the complaint should be dismissed in its entirety on that basis.  *See Kim*, 884 F.3d at 103–05.

To state a claim for a violation of the RICO statute, 18 U.S.C. § 1962, a plaintiff must plead, among other things, a "pattern of racketeering," which requires a plaintiff to adequately allege at least two "predicate acts" of criminal activity in a ten-year period.  884 F.3d at 103.  In

*Kim*, the Second Circuit held that "allegations of frivolous, fraudulent, or baseless litigation activities—without more—cannot constitute a RICO predicate act." *Id.* at 104.  Accordingly, it affirmed the dismissal of a RICO complaint where the RICO plaintiff alleged that the RICO defendants had committed predicate acts against him in the course of an earlier lawsuit by preparing, signing, and filing declarations that they knew "contained fraudulent representations." *Id.* at 103.

The Second Circuit adopted this litigation activity exception to civil RICO for very good reasons.  If litigation activity counted as RICO predicates, potentially every unsuccessful lawsuit could give rise to a retaliatory RICO action, inundating federal district courts with complicated RICO proceedings. *Id.* at 104.  Relatedly, permitting RICO claims arising from litigation activity would erode estoppel principles, calling into question the documents presented in the underlying litigation and the decisions relying on them. *Id.*  Moreover, if litigation activity could be weaponized in the form of civil RICO, litigants and their lawyers would be chilled, frustrating "the well-established public policy goal of maintaining open access to the courts." *Id.*

All of these policy rationales underlying the rule from *Kim* would be advanced by dismissal here.  Most importantly, Nygård would properly be forbidden from retaliating for the ongoing litigation in the Bahamas by seeking treble damages based on the notion that the litigation conduct in that foreign forum was improper.  Moreover, he would be barred from relitigating issues that *he* put at issue in that Bahamian litigation, thereby avoiding interference in matters that more closely touch and concern the Bahamian courts.

It is no surprise, then, that Nygård's RICO allegations are on all fours with those deemed insufficient to constitute RICO predicates in *Kim*.  The crux of his allegations is that Bacon "offer[ed] to pay, agree[d] to pay, and pa[id] witnesses, as well as influenc[ed] witnesses, including

Mr. Bullard and Mr. Davilma, *to provide false and influenced statements, in connection with testimony* or prospective testimony."  Compl. ¶ 56 (emphasis added).  Thus, as in *Kim*, Nygård bases his suit on allegedly "fraudulent representations intended to persuade [a] court"—e.g., the allegedly false statements of Bullard and Davilma that were submitted in the Bahamas—"to find in favor of" Bacon.  *Kim*, 884 F.3d at 103.  That is exactly the sort of "fraudulent . . . litigation activit[y]" that "cannot constitute a RICO predicate act."  *Id.* at 104.  To the extent Nygård genuinely wants redress for "suborned perjury," he "should direct [his] claims to the [Bahamian] courts where these acts are allegedly occurring and where the underlying litigation is still pending."  *Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 173–74 (E.D.N.Y. 2010); *accord Snyder v. U.S. Equities Corp.*, 2014 WL 317189, at *8 (W.D.N.Y. 2014) ("[T]he gravamen of the allegations is . . . that the defendants pursued fraudulent litigation, using fraudulent affidavits and filings . . . .  [T]he reasons articulated by other courts, as to why litigation activities should not be actionable under the Civil RICO statute, are equally applicable here."); *Schlesinger v. Schlesinger*, 2007 WL 9706975, at *11 (E.D.N.Y. 2007) ("[T]he RICO predicate acts alleged by the Plaintiff involve actions taken by various parties in litigation and proceedings, some of which are currently pending between the same parties, and are issues at the heart of this lengthy litigation between the parties.  The predicate acts here are not independent of the other disputes between the parties.").  The complaint should be dismissed in its entirety on this basis.

## CONCLUSION

For these reasons, Bacon respectfully submits that the Court should dismiss this action.

Dated: July 18, 2019
     New York, New York

                          Respectfully submitted,


                          /s/  Christopher M. Egleson
                          Nancy Chung
                          Michael A. Levy
                          Christina Prusak Chianese
                          SIDLEY AUSTIN LLP
                          787 Seventh Avenue
                          New York, NY 10019
                          Tel: (212) 839-5300
                          Fax: (212) 839-5599
                          nchung@sidley.com
                          mlevy@sidley.com
                          cchianese@sidley.com

                          Christopher M. Egleson
                          SIDLEY AUSTIN LLP
                          555 West Fifth Street
                          Los Angeles, CA 90013
                          Tel: (213) 896-6000
                          Fax: (213) 896-6600
                          cegleson@sidley.com

                          *Counsel for Defendant Louis M. Bacon*