UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PETER J. NYGÅRD,

               Plaintiff,

        v.

LOUIS M. BACON, *et al.*,

               Defendants.

Civil Case No. 1:19-cv-01559

Judge Lorna G. Schofield
Magistrate Judge Kevin N. Fox

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT LOUIS BACON'S MOTION TO DISMISS UNDER RULE 12(B)(6)

Nancy Chung
Michael A. Levy
Christina Prusak Chianese
David S. Kanter
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

Christopher M. Egleson
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
(213) 896-6000

*Counsel for Defendant Louis M. Bacon*

September 10, 2020

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...............................................................................................1

BACKGROUND ..................................................................................................................2

ARGUMENT .......................................................................................................................7

I.     The Complaint Fails to State a RICO Claim (Count I).............................................7

    A.    The Complaint Fails to Plead RICO Standing................................................7

    B.    The Complaint Fails to Plead the Existence of a RICO Enterprise ...............14

    C.    The Complaint Fails to Plead Predicate Acts that Have Harmed Nygård ....................17

       1.    Nygård is Not Alleged to Be the Proximate Victim of Most of His Alleged Predicate Acts, So They Do Not Support His RICO Claim ......................................17

       2.    The Complaint Fails to Plead Bribery .........................................18

       3.    The Complaint Fails to Plead Witness Tampering and Retaliation..........................20

       4.    The Complaint Fails to Plead Money Laundering.......................................21

       5.    The Complaint Fails to Plead Production and Transportation of Obscene Matters for Sale or Distribution ................................................23

       6.    The Complaint Fails to Plead Fraud .......................................23

       7.    The Complaint Fails to Plead a Travel Act Predicate Act .......................................24

    D.    The Complaint Fails to Plead a Pattern of Racketeering Activity ................................25

II.    The Complaint Does Not Plead a Cognizable Claim of RICO Conspiracy (Count II) ................................................................................................................27

III.    The Complaint's Other Claims under Criminal Statutes Must be Dismissed (Counts IV, V and VI) ........................................................................................27

IV.    The Complaint Fails to Plead Tortious Interference with Prospective Economic Advantage (Count III)..........................................................................................28

V.    The Complaint Fails to Plead Abuse of Process (Count VII)...........................................29

CONCLUSION...................................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006) .................................................................................................... 10

*Armada (Singapore) Pte Ltd. v. Amcol Int'l Corp.*,
    885 F.3d 1090 (7th Cir. 2018) .................................................................................... 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................ 17, 22, 24

*Bangladesh Bank v. Rizal Com. Banking Corp.*,
    2020 WL 1322275 (S.D.N.Y. 2020) ......................................................................... 15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................... 27

*Bernstein v. Misk*,
    948 F. Supp. 228 (E.D.N.Y. 1997) ........................................................................... 24

*Bologna v. City & County of San Francisco*,
    2009 WL 2474705 (N.D. Cal. 2009) ........................................................................ 17

*Boyle v. United States*,
    556 U.S. 938 (2009) ................................................................................................... 14

*Brown Media Corp. v. K & L Gates, LLP*,
    586 B.R. 508 (E.D.N.Y. 2018) ................................................................................. 28

*Carvel Corp. v. Noonan*,
    3 N.Y.3d 182 (2004) .................................................................................................. 28

*Cedar Swamp Hldgs., Inc. v. Zaman*,
    487 F. Supp. 2d 444 (S.D.N.Y. 2007) ...................................................................... 16

*Chandradat v. Navillus Tile*,
    2004 WL 2186562 (S.D.N.Y. 2004) ......................................................................... 17

*Cohen v. S.A.C. Trading Corp.*,
    711 F.3d 353 (2d Cir. 2013) ...................................................................................... 23

*Connolly v. Wood-Smith*,
    2014 WL 1257909 (S.D.N.Y. 2014) ......................................................................... 28

*Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC*,
    2012 WL 1231775 (S.D.N.Y. 2012) ........................................................................15

*Conte v. Newsday, Inc.*,
    703 F. Supp. 2d 126 (E.D.N.Y. 2010) ...................................................................16

*Ctr. for Immigration Studies v. Cohen*,
    410 F. Supp. 3d 183 (D.D.C. 2019) .........................................................................9

*Curiano v. Suozzi*,
    63 N.Y.2d 113 (1984) ...........................................................................................29

*D. Penguin Bros. Ltd. v. City Nat'l Bank*,
    587 F. App'x 663 (2d Cir. 2014) ..........................................................................16

*D'Addario v. D'Addario*,
    901 F.3d 80 (2d Cir. 2018).....................................................................................16

*Dandong Old N.-E. Agric. & Animal Husbandry Co. v. Hu*,
    2017 WL 3328239 (S.D.N.Y. 2017).......................................................................10

*Del. Motel Assocs., Inc. v. Capital Crossing Servicing Co.*,
    2018 WL 4829598 (N.D. Ill. 2018) ........................................................................16

*Discon, Inc. v. NYNEX Corp.*,
    93 F.3d 1055 (2d Cir. 1996)...................................................................................27

*Doe v. Trump Corp.*,
    385 F. Supp. 3d 265 (S.D.N.Y. 2019)...............................................................10, 17

*E. Savings Bank, FSB v. Papageorge*,
    31 F. Supp. 3d 1 (D.D.C. 2014) ..................................................................18, 19, 20

*Elsevier Inc. v. Pierre Grossmann, IBIS Corp.*,
    2017 WL 5135992 (S.D.N.Y. 2017).......................................................................10

*Empire Merchs., LLC v. Reliable Churchill LLLP*,
    902 F.3d 132 (2d Cir. 2018)..............................................................................10, 11

*FindTheBest.com, Inc. v. Lumen View Tech. LLC*,
    20 F. Supp. 3d 451 (S.D.N.Y. 2014)......................................................................24

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2004)...................................................................15, 23, 26, 27

*First Nationwide Bank v. Gelt Funding, Corp.*,
    820 F. Supp. 89 (S.D.N.Y. 1993) ..........................................................................16

*Fuji Photo Film U.S.A., Inc. v. McNulty*,
   640 F. Supp. 2d 300 (S.D.N.Y. 2009)................................................................19

*G.K.A. Beverage Corp. v. Honickman*,
   55 F.3d 762 (2d Cir. 1995)................................................................29

*Grace Int'l Assembly of God v. Festa*,
   797 F. App'x 603 (2d Cir. 2019) ................................................................26

*Gross v. Waywell*,
   628 F. Supp. 2d 475 (S.D.N.Y. 2009)................................................................26

*Hadami, S.A. v. Xerox Corp.*,
   272 F. Supp. 3d 587 (S.D.N.Y. 2017)................................................................29

*Halvorssen v. Simpson*,
   2019 WL 4023561 (E.D.N.Y. 2019)................................................................11

*Hemi Grp., LLC v. City of New York*,
   559 U.S. 1 (2010)................................................................10

*Hoatson v. New York Archdiocese*,
   2007 WL 431098 (S.D.N.Y. 2007)................................................................15

*Holmes v. Sec. Inv'r Prot. Corp.*,
   503 U.S. 258 (1992)................................................................10

*Jus Punjabi, LLC*,
   2015 WL 2400182 (S.D.N.Y. 2015)................................................................21, 22

*Kelly v. United States*,
   140 S. Ct. 1565 (2020)................................................................24

*Kim v. Kimm*,
   884 F.3d 98 (2d Cir. 2018)................................................................13, 14

*Kimm v. Lee*,
   2005 WL 89386 (S.D.N.Y. 2005)................................................................9, 24

*Lynch v. Amoruso*,
   232 F. Supp. 3d 460 (S.D.N.Y. 2017)................................................................11

*Mansmann v. Smith*,
   1997 WL 145009 (E.D. Pa. 1997)................................................................24

*Manson v. Stacescu*,
   11 F.3d 1127 (2d Cir. 1993)................................................................8

*In re Merrill Lynch Ltd. P'ships Litig.*,
    154 F.3d 56 (2d Cir. 1998)...................................................................................13

*Miller v. California*,
    413 U.S. 15 (1973)..............................................................................................23

*Morea v. Saywitz*,
    2010 WL 475302 (E.D.N.Y. 2010).....................................................................30

*Nasik Breeding & Research Farm Ltd. v. Merck & Co.*,
    165 F. Supp. 2d 514 (S.D.N.Y. 2001).................................................................27

*Nichols v. Mahoney*,
    608 F. Supp. 2d 526 (S.D.N.Y. 2009).................................................................17

*Nunes v. United States*,
    630 F. Supp. 1048 (D. Haw. 1986).....................................................................23

*Nygård v. DiPaolo*,
    2017 WL 4303825 (S.D. Fla. 2017) .....................................................................4

*Nygård v. DiPaolo*,
    753 F. App'x 716 (11th Cir. 2018) .......................................................................2

*O'Brien v. Alexander*,
    898 F. Supp. 162 (S.D.N.Y. 1995) .....................................................................29

*Oak Beverages, Inc. v. Tomra of Mass., L.L.C.*,
    96 F. Supp. 2d 336 (S.D.N.Y. 2000)...................................................................21

*Park S. Assocs. v. Fischbein*,
    626 F. Supp. 1108 (S.D.N.Y. 1986)...............................................................19, 20

*Pasamba v. HCCA Int'l, Inc.*,
    2008 WL 2562928 (D. Ariz. 2008).....................................................................17

*People v. Bac Tran*,
    80 N.Y.2d 170 (1992) ..............................................................................18, 19, 20

*People v. Kramer*,
    132 A.D.2d 708 (2d Dep't 1987) ........................................................................20

*People v. Wolf*,
    98 N.Y.2d 105 (2002) .........................................................................................19

*Peterson v. Boeing Co.*,
    2015 WL 12090213 (D. Ariz. 2015)...................................................................17

*Rajaratnam v. Motley Rice, LLC,*
  2020 WL 1476171 (E.D.N.Y. 2020)......................................................................9, 13, 14

*Reich v. Lopez,*
  858 F.3d 55 (2d Cir. 2017)....................................................................................25

*Ris v. Bedell,*
  699 F. Supp. 429 (S.D.N.Y. 1988) ........................................................................16

*RJR Nabisco, Inc. v. European Community,*
  136 S. Ct. 2090 (2016)..........................................................................................10

*Ryder v. Platon,*
  2012 WL 2317772 (E.D.N.Y. 2012)......................................................................28

*Sheehy v. Brown,*
  335 F. App'x 102 (2d Cir. 2009) ...........................................................................28

*Tooker v. Guerrera,*
  2017 WL 3475994 (E.D.N.Y. 2017).................................................................19, 20

*Tribune Co. v. Purcigliotti,*
  869 F. Supp. 1076 (S.D.N.Y. 1994)........................................................................7

*Tsipouras v. W&M Props., Inc.,*
  9 F. Supp. 2d 365 (S.D.N.Y. 1998) .......................................................................11

*Turner v. N.J. State Police,*
  2017 WL 190917 (D.N.J. 2017) ............................................................................20

*Tymoshenko v. Firtash,*
  2015 WL 5505841 (S.D.N.Y. 2015)......................................................................21

*United States v. Aleynikov,*
  676 F.3d 71 (2d Cir. 2012)....................................................................................23

*United States v. Alfisi,*
  308 F.3d 144 (2d Cir. 2002).............................................................................19, 20

*United States v. Friedman,*
  506 F.2d 511 (8th Cir. 1974) ................................................................................23

*United States v. Kennings,*
  861 F.2d 381 (3d Cir. 1988)..................................................................................18

*United States v. Long Cove Seafood, Inc.,*
  582 F.2d 159 (2d Cir. 1978)..................................................................................23

*United States v. Martinez*,
862 F.3d 223 (2d Cir. 2017)...........................................................................21

*United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*,
793 F. Supp. 1114 (E.D.N.Y. 1992) ...............................................................21

*United States v. Sabhnani*,
599 F.3d 215 (2d Cir. 2010)...........................................................................17

*United States v. Turkette*,
452 U.S. 576 (1981).......................................................................................14

*United States v. Vargas-Cordon*,
733 F.3d 366 (2d Cir. 2013)...........................................................................17

*United States v. Young*,
916 F.3d 368 (4th Cir. 2019) ..........................................................................21

*Weldon v. Dyer*,
2013 WL 2244527 (E.D. Cal. 2013)...............................................................28

*Zigman v. Giacobbe*,
944 F. Supp. 147 (E.D.N.Y. 1996) .................................................................19

**Statutes**

8 U.S.C. § 1324...............................................................................6, 7, 17, 28

8 U.S.C. § 1324a...................................................................................6, 17

18 U.S.C. § 201................................................................................18, 19

18 U.S.C. § 287.................................................................................7, 28

18 U.S.C. § 1341.....................................................................................6

18 U.S.C. § 1343.....................................................................................6

18 U.S.C. § 1351.....................................................................................6

18 U.S.C. § 1465..............................................................................6, 23

18 U.S.C. § 1512(a)(2)......................................................................6, 20

18 U.S.C. § 1513..............................................................................6, 20

18 U.S.C. § 1515(a)(1)...........................................................................20

18 U.S.C. § 1581.....................................................................................6

18 U.S.C. § 1589 ...........................................................................................................6

18 U.S.C. § 1590 ...........................................................................................................6

18 U.S.C. § 1952 ..........................................................................................6, 7, 24, 25

18 U.S.C. § 1956 ..............................................................................................6, 21, 22

18 U.S.C. § 1957 ...................................................................................................6, 21

18 U.S.C. § 1961(1)(A) .........................................................................................18, 21

18 U.S.C. § 1962 ...........................................................................................................6

18 U.S.C. § 1964(c) .......................................................................................................9

18 U.S.C. § 2314 ....................................................................................................6, 23

Cal. Penal Code § 137 .................................................................................................18

Colo. Rev. Stat. Ann. § 18-8-703(1) ..........................................................................18

N.Y. Penal Law § 180.03 ............................................................................................19

N.Y. Penal Law § 215.00 ......................................................................................18, 19

Tex. Penal Code Ann. § 36.05(a) ...............................................................................18

**Other Authorities**

CPLR 215(3) ................................................................................................................29

Fed. R. Civ. P. 9(b) .....................................................................................................23

Sec'y of State, Letter of Transmittal, Treaty Doc. 108-16, Jan. 22, 2004 ...................22

United Nations Convention Against Transnational Organized Crime ..........................22

## PRELIMINARY STATEMENT

For Plaintiff Peter Nygård, 2020 has been a year of reckoning.  In the early months of the year, *The New York Times* ran an exposé reporting on decades of his sexual misconduct, including allegations that he is a rapist and a pedophile.  More than 45 women commenced two lawsuits, including a putative federal class action pending in this District, claiming damages for sexual abuse.  Federal and municipal law enforcement agents raided the California and New York offices of his fashion business.  Nygård announced that he would step down as the CEO of his fashion empire, and his affiliated companies were placed under the control of an independent receiver.  His own sons sued him for having a sex worker rape them when they were minors.

In this action, Nygård blames Defendant Louis Bacon for all of that.  He claims Defendant paid people to tell lies about Nygård to the media, to law enforcement, and in litigation, in what the operative complaint, the First Amended Complaint ("FAC"), describes as a "conspiracy to defame" him.  Nygård never says exactly what lies Defendant paid for.  He never even says what about the lies is false—though he surely hopes to convey the impression that he denies all allegations against him, and has never done anything improper.  In any event, he claims that Defendant is responsible for what has befallen him and brings this action under the Racketeer Influenced and Corrupt Organizations Act ("RICO").

The complaint, which principally alleges that Defendant tried to procure (unspecified) false statements for use against Nygård in various contexts, does not succeed, however, in stating a RICO claim.  His claims of injury are not cognizable as a matter of RICO law because Nygård lacks standing to personally claim damages resulting from his companies' loss of sales, harm to reputation is not recoverable under RICO (especially by a foreign defendant who cannot allege a domestic injury), and Nygård is barred from claiming damages arising from other litigation by the Second Circuit's rule prohibiting a RICO claim based on allegations of litigation misconduct.

1

Nygård is also miles away from meeting the strict requirements for pleading a RICO enterprise. Moreover, even though his blunderbuss allegations name more than 20 predicates, he fails to successfully articulate a single one where the non-conclusory facts alleged meet each required element and show domestic injury to Nygård himself. And the episodes that he alleges do not constitute a RICO-qualifying pattern and instead are merely disparate, dissimilar events that do not tie together into a RICO scheme. For all of these reasons, his RICO claims fail.

His miscellaneous federal and state law causes of action also fail, for their own reasons. None of the criminal statutes that he invokes creates a private cause of action, so those claims do not legally exist. His claim for tortious interference with the business of his companies fails because, among other reasons, he lacks standing to pursue those personally. And his claim for abuse of process misunderstands the law and fails because, among other reasons, Nygård does not even try to identify formally issued legal process relevant to the claim, or name how it was abused.

For these reasons, as further laid out below, this Court should dismiss the FAC.

## BACKGROUND

The theory of the operative complaint in this action is Plaintiff Peter Nygård's claim that the parties got into a "property owner dispute in the Bahamas" ten years ago, and that since then, Defendant has attempted to "destroy[]" Nygård and "businesses associated with" him by procuring false statements about him for use in the media and lawsuits. FAC p. 6 ¶ ii. The complaint describes this as a "conspiracy to defame Peter Nygård." *Id.* ¶ 559.[1]

---

[1] As Nygård admits, this action arises from events in the Bahamas. FAC ¶ p. 6 ii. Nygård previously filed a RICO action against an investigator alleged to have done work for Defendant, but as the Eleventh Circuit held, that action was properly dismissed on *forum non conveniens* grounds. *Nygård v. DiPaolo*, 753 F. App'x 716 (11th Cir. 2018). His original complaint in this action merely parroted his allegations in Florida, and was plainly subject to dismissal as a matter of collateral estoppel. His amended complaint adds a number of U.S. facts, but for the reasons set forth here, they are makeweights designed to ground the case domestically but which do not support any legal claim. Stripped of those empty additions, the case remains rooted in the Bahamas, and Defendant intends shortly to file a motion to dismiss on *forum non conveniens* grounds.

The complaint proceeds by describing a series of events that have befallen Nygård in the last ten years, some of which are alleged to give rise to Nygård's claims here. First, in 2010, Nygård claims that Defendant hired an attorney who in turn "used [a] private investigator" to pressure a woman to file suit against Nygård. *Id.* ¶¶ 542-47. The complaint also alleges that around this time, Defendant "facilitated" a 2010 exposé on Nygård by the Canadian Broadcasting Company ("CBC") that was based on "inaccurate and false information" about Nygård "from witnesses who … provided false statements." *Id.* ¶ 560. And it then alleges that Defendant was behind a campaign against Nygård in 2014 that resulted in "private videos and correspondence" being leaked to a gossip website, *id.* ¶ 605, and in articles that were later taken down following legal action against the publisher, *id.* ¶ 606.

The complaint next alleges that Defendant filed a defamation action against Nygård in 2015, and that, "[i]n prepar[ing]" to file the action, Defendant's "agents and representatives procured false statements." *Id.* ¶ 608. The complaint does not specify what "false statements" were procured or from whom. The paragraphs that follow allege that a witness named Stephen Feralio was "induced" to "reveal[] confidential information" relating to Nygård and his businesses "to assist" Defendant in the defamation case. *Id.* ¶ 609. There is no allegation that Feralio gave false, influenced testimony. *Id.*

Next, the complaint sets forth allegations regarding two Bahamian witnesses named Livingston Bullard and Wisler Davilma. In 2016, Defendant and a number of others filed an action in the Supreme Court of the Bahamas against Nygård, claiming that Nygård was responsible for hiring local operatives to physically intimidate and harass them. *Id.* ¶¶ 638-40. Bullard and Davilma were two such operatives and both gave evidence against Nygård on behalf of Defendant and the other plaintiffs in that action. In sum, the complaint alleges that John DiPaolo and other

investigators working on Defendant's behalf met with Bullard and Davilma in the Bahamas, Florida, and the Dominican Republic and paid them to give evidence against Nygård. *Id.* ¶¶ 621, 633-35. Nygård alleges that that testimony was false. *Id.* ¶ 640. These allegations are substantially similar to allegations that Nygård advanced in a RICO action that he commenced in Florida in 2017 against DiPaolo; that action was dismissed on *forum non conveniens* grounds. *Compare id.* ¶¶ 621-41, *with Nygård v. DiPaolo*, 2017 WL 4303825, at *1-4 (S.D. Fla. 2017), *aff'd* 753 F. App'x 716 (11th Cir. 2018).

The complaint then goes on to allege that certain unnamed "agents" working on Defendant's behalf "coerced" two of Nygård's former associates into a "private witness protection program," FAC ¶¶ 646, 648, 655-56, 712, 715, 721, 723, and that members of their security details then forced them "to sign false statements against" Nygård, *id.* ¶¶ 658, 725, 733-36. The complaint also identifies a third woman as being in the "witness protection program." *Id.* ¶¶ 699-704. The complaint contends that in 2013 or 2014, approximately two or three years before these three women were allegedly contacted by Defendant's agents for participation in this "program," all three attempted to blackmail Nygård. *Id.* ¶¶ 643-45, 684, 687, 708, 712.

The complaint then alleges that, starting in 2015 or 2016, a group of "investigators" in California began to "harass[] numerous people" associated with Nygård "in an effort" to "disrupt [Nygård]'s business relations." *Id.* ¶¶ 756-57. Without identifying any individual employee, the complaint claims generally that "these investigators induced employees to breach" their "non-disclosure agreements." *Id.* ¶¶ 773. The complaint names three women who were harassed about their personal relationships with Nygård and alleges that one "protested and denied" any suggestion of misconduct by Nygård. *Id.* ¶¶ 758-72.

Next, Nygård briefly alleges that, in 2015 and 2016, Defendant and his agents presented the Federal Bureau of Investigation ("FBI") and Department of Homeland Security ("DHS") with "fabricated evidence" and "false information" in "an effort to convince them to open up an investigation" into Nygård.  *Id*. ¶¶ 774, 777, 779.  He alleges that neither agency found "any merit to the claim," however, and that these agencies "did not pursue" criminal charges.  *Id*. ¶¶ 776, 778.

Nygård does not allege any relevant conduct in 2017.  He next alleges, on information and belief, that "in the fall of 2018," Nygård's property in the Bahamas "was burglarized" while under seizure pursuant to a Bahamian Court order.  *Id*. ¶ 781.  The complaint asserts on information and belief that during the burglary, Nygård's "contact list" was stolen, and it claims that shortly thereafter, "investigators directly or indirectly hired by" Defendant began contacting women associated with Nygård "looking for information about alleged criminal misconduct by Nygård."  *Id*.  According to the complaint, these women did not cooperate with Defendant's investigators, but felt "threatened" and "harassed."  *Id*. ¶¶ 782-87.

The complaint then alleges that in 2019 reporters from *The New York Times* traveled to the Bahamas to speak with witnesses "who were influenced by or on behalf of" Defendant to provide false information about Nygård.  *Id*. ¶¶ 791-96.  It alleges that *The New York Times* published a resulting exposé on Nygård on the evening of Saturday, February 22, 2020.  *Id.* ¶ 830.

The complaint also claims that Defendant "influenced the filing" of a Jane Doe lawsuit against Nygård in California on January 24, 2020, which alleged "sexual battery of a minor and other related claims."  *Id.* ¶ 823.  It further alleges that Defendant "influenced the filing" of a Jane Doe class action lawsuit against Nygård in this District on February 13, 2020 based on similar

claims.  *Id.* ¶ 824.[2]  The complaint then alleges that "[b]ecause of Defendant's conduct," "federal agents raided the California and New York offices" of "the Nygård Companies" on February 25, 2020.  *Id.* ¶ 825.

As a result of these events, the complaint alleges, "[Nygård] and businesses associated with [Nygård]" have spent significant amounts in legal fees, *id.* ¶ 924(1), and public relations fees to "combat damages," *id.* ¶ 924(2).  Further, it alleges that "businesses associated with [Nygård]" lost their "largest client," the Dillard's store chain.  *Id.* ¶ 924(6).  This caused the businesses to default on their line of credit, forcing them into bankruptcy proceedings in Canada in which the court removed Nygård from control and appointed a receiver.  *Id.* ¶ 924(4).

Based on these allegations, the complaint purports to assert seven different claims.  First, it alleges RICO claims, 18 U.S.C. §§ 1962(c) and (d) (Counts I and II).  *Id.* ¶¶ 847-936.  It alleges violations of over twenty different laws as the predicate RICO offenses, including violations of state and federal laws prohibiting witness bribery and commercial bribery; an amorphous claim of "coercion/extortion" under New York law; money laundering under 18 U.S.C. §§ 1956 and 1957; witness tampering under 18 U.S.C. §§ 1512(a)(2) and 1513; the production and transportation of obscene matters for distribution under 18 U.S.C. § 1465; peonage, forced labor, and trafficking in support of the same under 18 U.S.C. §§ 1581, 1589, and 1590, respectively; the harboring and unlawful employment of aliens under 8 U.S.C. §§ 1324 and 1324a; mail and wire fraud under 18 U.S.C. §§ 1341 and 1343; fraud in foreign labor contracting under 18 U.S.C. § 1351; transportation of stolen or fraudulent goods under 18 U.S.C. § 2314; and violations of the Travel Act, 18 U.S.C.

---

[2] In a related case also filed in this District, two of Nygård's sons have also sued him in connection with sex trafficking violations arising from when they were minors.  *See Doe v. Nygård*, Case No. 20-06501 (S.D.N.Y. 2020).

§ 1952. *Id.* The complaint also purports to state private claims under several criminal statutes: 8 U.S.C. § 1324 (Count VI), *id*. ¶ 961, and 18 U.S.C. § 287 (Counts IV and V), *id*. ¶¶ 948-58.

In addition, the complaint purports to assert state law claims for tortious interference with prospective economic advantage based on alleged interference in relationships held by "businesses associated with" Nygård (Count III), *id*. ¶¶ 937-47; the filing of a false report and aiding and abetting the same under New York, California, Colorado, and Texas law (Counts IV and V), *id*. ¶¶ 948-58; and abuse of process based on the alleged "filing of … false reports" and "misus[ing] legal process" in connection with lawsuits "that were filed against Plaintiff" (Count VII), *id*. ¶¶ 958, 966, 968. All of Nygård's causes of action fail to state a claim and should be dismissed for the reasons set forth below.

## ARGUMENT

### I.     The Complaint Fails to State a RICO Claim (Count I)

#### A.     The Complaint Fails to Plead RICO Standing

A civil RICO cause of action must satisfy "demanding pleading requirements." *Tribune Co. v. Purcigliotti*, 869 F. Supp. 1076, 1086 (S.D.N.Y. 1994). These include pleading RICO standing arising from a qualifying domestic injury, which must be proximately caused by the alleged wrongdoing; an enterprise; predicate criminal acts; and a pattern among those predicate acts. *Id.* The complaint fails on each element, and should be dismissed.

To begin, Nygård fails to allege RICO standing because he cannot articulate a cognizable RICO injury. The injuries that he asserts fall into three categories: harm to the business activities of companies "associated with" him, harm to his reputation resulting in public relations fees, and legal fees related to criminal proceedings and litigation. Under scrutiny, these fall apart by pieces: None can sustain a RICO claim, for the cascade of reasons laid out below.

    1.    **Business Injuries.**  As to the business injuries, those are foreclosed by Second Circuit precedent forbidding a corporate owner from pursuing a RICO claim for injury to the company.

    In his injury paragraph, Nygård alleges a claim of injury to unidentified businesses "associated with" him.  FAC ¶ 924(3)-(8).  According to the complaint, a Canadian lender to these businesses terminated a credit line in 2016 after reading about allegations made against Nygård in the "Bahamas Case."  *Id.* ¶ 924(3).  The businesses obtained a new line of credit from another Canadian lender, but lost that in late 2019 (this loss is not attributed to Defendant).  Nygård Inc. then obtained a new line of credit on January 3, 2020.  *Id.* ¶ 924(4).  After Nygård was personally sued for sexual misconduct in 2020, however, the Nygård companies' biggest client, the retailer Dillard's, stopped selling Nygård clothing (as did an unidentified clothing store in Kentville, Nova Scotia).  *Id.* ¶ 924(4)-(7).  The loss of the Dillard's relationship coupled with the sexual misconduct suit led the lenders to "determine[]" there was a default under the new 2020 line of credit and to force the companies into bankruptcy.  *Id.* ¶ 924(4).  Nygård seeks damages for the companies' loss of their Dillard's contract and for their loss of credit and eventual bankruptcy.

    These claims are directly barred by the Second Circuit's rule that a shareholder may not recover under RICO for harms to the company.  As the court held in *Manson v. Stacescu*, 11 F.3d 1127 (2d Cir. 1993), a "shareholder generally does not have standing to bring an individual action under RICO to redress injuries to the corporation in which he owns stock," and this is "true even when the plaintiff is the sole shareholder," *id.* at 1131.  Here, the claims of injury—the loss of a line of credit, loss of a major corporate relationship, and the bankruptcy of the companies—are all harms to the company, not Nygård personally, and Nygård cannot sue for them.

And while this would be true even if Nygård claimed to be the direct owner of the affected companies, his claims are even more deficient because he alleges that these harms only accrued to companies "associated with" (but not owned by) him. *See* FAC ¶ 924. The complaint's allegations about harm to the business entities should have been dropped from the complaint when the corporate plaintiffs that had previously joined this action voluntarily dropped their claims against Defendant after they were placed under the control of an independent receiver, *see* So Ordered Notice of Voluntary Dismissal, Dkt. 74; they cannot support a claim by Nygård personally.

**2.    Reputational Harm and Public Relations Expenses.** The second category of claimed injury, for harm to reputation and related spending on public relations, is not viable because RICO does not provide recovery for damage to reputation, it is not a domestic injury, it fails to allege proximate cause, and it fails to distinguish between harm suffered by Plaintiff himself and by non-plaintiff companies. RICO provides that an individual plaintiff may recover for harm to "business or property," 18 U.S.C. § 1964(c), but does not provide a remedy for harm to reputation. Courts therefore "routinely and soundly reject … attempts" to "spin an alleged scheme to harm a plaintiff's [] reputation into a RICO claim." *Rajaratnam v. Motley Rice, LLC*, 2020 WL 1476171, at *17 (E.D.N.Y. 2020) (collecting cases); *see also, e.g.*, *Kimm v. Lee*, 2005 WL 89386, at *4 (S.D.N.Y. 2005), *aff'd sub nom. Kimm v. Chang Hoon Lee & Champ, Inc.*, 196 F. App'x 14 (2d Cir. 2006) (same); *Ctr. for Immigration Studies v. Cohen*, 410 F. Supp. 3d 183, 191 (D.D.C. 2019) (dismissing where plaintiff "clearly tried to shoehorn a defamation claim into the RICO framework"). Defendant is not aware of any RICO decision allowing recovery for a party's expenditures on public-relations work.

Separately, this claim is barred because Nygård is a Canadian resident. RICO "does not allow recovery for foreign injuries," and instead "requires a civil RICO plaintiff to allege and prove

a domestic injury to business or property." *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090, 2111 (2016). A RICO plaintiff claiming an intangible injury "experiences or sustains [that injury] at its residence," so a foreign plaintiff asserting such an injury lacks a "domestic" injury under *RJR Nabisco*. *Armada (Singapore) Pte Ltd. v. Amcol Int'l Corp.*, 885 F.3d 1090, 1094 (7th Cir. 2018); *see also, e.g.*, *Elsevier Inc. v. Pierre Grossmann, IBIS Corp.*, 2017 WL 5135992, at *4 (S.D.N.Y. 2017) (similar); *Dandong Old N.-E. Agric. & Animal Husbandry Co. v. Hu*, 2017 WL 3328239, at *13 (S.D.N.Y. 2017) (similar). The alleged injury to Nygård's reputation happened where he resides in Canada, so he has not alleged a domestic injury.

Nygård's claim for public relations expenses also fails RICO's rigorous proximate cause requirement. RICO only allows recovery for a "direct" injury, *Doe v. Trump Corp.*, 385 F. Supp. 3d 265, 275 (S.D.N.Y. 2019)—a link between the alleged conduct and the injury that is "too remote," "purely contingent," or "indirect" will not do, *Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 141 (2d Cir. 2018). In *Empire Merchants*, the plaintiff liquor seller asserted claims against a competitor that had avoided New York taxes by smuggling liquor, allowing it to sell at lower prices. The Court held that the competitive harm was impermissibly indirect, because the cause of the harm was "a set of actions [ (not buying Empire liquor) ] entirely distinct from the alleged RICO violation [ (smuggling liquor into New York) ]." *Id.* at 142 (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458 (2006)) (alterations in *Empire Merchants*).[3]

The injury here is indirect in the same way. The "alleged RICO violation" Nygård identifies that could come the closest to affecting his reputation is his claim that Defendant procured false witness statements for public use in litigation and the media. *See, e.g.*, FAC ¶ 924(2). But

---

[3] As *Empire Merchants* detailed, the Supreme Court has repeatedly struck down RICO claims for failure to allege the requisite proximate cause, and those cases all demand dismissal here for the same reason. *See, e.g.*, *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 11-12 (2010) (plurality opinion); *Anza*, 547 U.S. at 458-60; *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 271 (1992).

Nygård's alleged injury is multiple steps removed from those alleged false statements, and contin-gent on other events.  For those statements to have affected Nygård's reputation, first a third party would have had to initiate a litigation or publish a media article, and then other third parties would have had to become aware of, and then credit, those alleged (though unspecified) false statements.  Then, before they cost Nygård any money, Nygård would have had to spend that money on public relations fees in an attempt to remedy the injury.  His claimed injury is thus even more remote than the harm that was dismissed in *Halvorssen v. Simpson,* 2019 WL 4023561 (E.D.N.Y. 2019), *aff'd,* 807 F. App'x 26 (2d Cir. 2020), where a plaintiff who complained that the defendant's smear campaign cost him business failed to plead proximate cause because a third party's decision not to do business with the plaintiff interrupted the causal chain, *id.* at *6 n.6.  Many of the other putative RICO predicates, such as money laundering, *see* FAC ¶¶ 856-57, 891-95, 913-918, transporting stolen goods, *see id.* ¶¶ 896-97, peonage, *see id.* ¶¶ 883-84, and bribery, *see id.* ¶¶ 854-55, 864-65, 902-03, are not even plausibly directed at Nygård himself, *see infra* Section I.C.1, and so are even more remote and cannot support a claim by him, *see Tsipouras v. W&M Props., Inc.*, 9 F. Supp. 2d 365, 367 (S.D.N.Y. 1998) ("Where as here, a plaintiff alleges that he has been harmed by the defendant's acts towards another, the claim is too remote and plaintiff cannot recover."); *Lynch v. Amoruso*, 232 F. Supp. 3d 460, 470 (S.D.N.Y. 2017) (same).  Nygård's claimed injury is remote, contingent, and indirect, *see Empire Merchs.*, 902 F.3d at 141, and cannot support RICO standing.

**3. Legal Fees.**  Finally, and for similar reasons, Nygård's claim to recover legal fees re-lated to unspecified litigations and alleged criminal proceedings is also not a cognizable injury and is not properly pled.

The complaint is first of all too vague about what litigations or criminal proceedings are at issue, what is false in them, and what legal fees Nygård has had to pay related to them.  As for the

criminal proceedings, Nygård alleges only and briefly that Defendant made criminal referrals to the FBI and DHS in 2015 and 2016.  *See* FAC ¶¶ 774-78.  He then alleges that "[u]pon information and belief, Defendant and/or his agents provided the authorities with false information, including through in-person interviews and through the mail."  *Id.* ¶ 779.  Nygård nowhere alleges that these referrals ripened into proceedings against him or that he incurred legal fees related to those alleged investigations.  To the contrary, Nygård alleges that neither the FBI nor DHS found "any merit to the claim[s]."  *Id.* ¶¶ 776, 778.  His vague, conclusory, information-and-belief allegation that Defendant or his purported agent made a false statement to authorities is woefully insufficient, not least because Nygård never even specifies the false statement itself.  So it cannot ground a claim for recovery of legal fees related to such an investigation.

As for Nygård's claim for legal fees paid in connection with civil litigation, that too is foreclosed by Circuit precedent.  The gravamen of Nygård's complaint is his suggestion that Defendant procured (unspecified) false testimony from witnesses for eventual use in civil litigation against Nygård.  But again, Nygård's threadbare allegation that he has been forced to pay civil litigation attorney fees leaves it unknown what litigations Nygård actually levies a legal complaint about or seeks to recover for.

His multiple litigations in the Bahamas, such as the suit in which Bullard and Davilma are alleged to have made false statements, are candidates, but they fail the domestic injury requirement because those foreign proceedings can only have injured Nygård outside of Canada, if at all, in the Bahamas, and so is not compensable under RICO's domestic injury requirement (discussed above).  That leaves two identified litigations in the United States: a lawsuit filed on January 24, 2020 by a Jane Doe plaintiff against Nygård in the Superior Court of the State of California, County of Los Angeles, Case No. 20STCV03216, which included allegations of "sexual battery of a minor

and other related claims," FAC ¶ 823; and a putative class action lawsuit filed in this District on

February 13, 2020 by multiple Jane Doe plaintiffs against Nygård and various Nygård companies,

Case No. 20-01288, which includes allegations of violations of the Trafficking Victims Protection

Act, FAC ¶ 824.[4]   As to those two U.S. suits, however, Nygård factually does not allege that

Defendant procured any false witness statement in either.   His allegations claim that Defendant

"influenced" the filing of these actions but omit any claim that Defendant procured any false state-

ment in connection with them.  *See* FAC ¶¶ 823-24.

More broadly, since none of the alleged predicate acts draw a direct link to these or any

other specified proceedings, and because those not having to do with false statements do not even

plausibly target Nygård directly, Nygård has failed to allege proximate cause for the same reasons

as for the public relations fees discussed above.   Indeed, these lawsuits, which were filed by inde-

pendent third parties, and which include plaintiffs who are not alleged to have any connection to

Defendant or the allegations of false statements at issue here, are the quintessential case of inter-

vening factors preventing a RICO finding of proximate cause.

In any event, any claim that Defendant procured a false statement in the California case

and the New York class action (or in any other action) is again barred by Circuit precedent.   In

*Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018), the Second Circuit held that "allegations of frivo-

lous, fraudulent, or baseless litigation activities—without more—cannot constitute a RICO predi-

cate act."   Otherwise every unsuccessful lawsuit could give rise to a retaliatory RICO action.  *Id*.

Addressing similar claims, a court in the Eastern District dismissed under this rule in *Rajaratnam*.

There, the RICO plaintiff complained about alleged litigation misconduct in a pending action in

---

[4] Nygård's claim for fees related to Bianca McKinney's 2011 lawsuit in California, *see* FAC ¶ 547, is barred by RICO's four-year statute of limitations, *see In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 58 (2d Cir. 1998). The same is true for all claims of injury arising from the CBC's reporting in April 2010, FAC ¶ 560, and the civil suit filed by Defendant in January 2015, *id.* ¶¶ 607-08.

the District of New Jersey.  The court held that a "civil RICO action in a neighboring federal district is not the appropriate mechanism to seek redress for false statements made in court filings by a litigation adversary," noting that the litigation forum had the power to address litigation misconduct if it observed any.  *Rajaratnam*, 2020 WL 1476171, at *16.  The same logic applies here:  Even if Nygård had alleged the filing of a false statement in California or New York (and he has not), that would be for those courts to address.  Certainly any such claim is premature because those cases have not been resolved, so the truth or falsity of any testimony has not been tested and adjudicated.  But in any event, because Nygård bases his RICO claim on allegedly "fraudulent representations intended to persuade [a] court," his allegations "cannot constitute a RICO predicate act," he can claim no injury arising from them, and his RICO claim for litigation expenses should be dismissed.  *See Kim*, 884 F.3d at 104.

### B.     The Complaint Fails to Plead the Existence of a RICO Enterprise

Separately, Nygård fails to allege a RICO enterprise.  *Contra* FAC ¶¶ 908-09.  Where, as here, a plaintiff identifies an "association in fact" rather than a going concern as the enterprise, the Supreme Court and Second Circuit have laid out demanding requirements.  The plaintiff must show "an ongoing organization, formal or informal," in which the "various associates function as a continuing unit."  *Boyle v. United States*, 556 U.S. 938, 945 (2009) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).  The enterprise must have "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  *Id.* at 946.  And it must exist "separate and apart from the pattern of activity in which it engages."  *Turkette*, 452 U.S. at 583.

In the two paragraphs Nygård devotes to describing the purported enterprise, he conclusorily asserts that a collection of individuals "banded together to obtain false and influenced statements and affidavits," FAC ¶ 908, and that, in February 2015, Bullard and DiPaolo referred to a

"'team,'" *id.* ¶ 909.  Those allegations fail to demonstrate the common purpose, relationships, and longevity that *Boyle* requires.  And they violate *Turkette*'s requirement of an enterprise that is "separate and apart" from its pattern of activity, by defining the enterprise purely by its purported effort to "obtain false and influenced statements and affidavits."  FAC ¶ 908.  A RICO complaint is insufficient if the plaintiff, as here, has "grouped together" the members of the enterprise "for the sole reason that they all allegedly had a hand" in the scheme.  *See Hoatson v. New York Arch-diocese*, 2007 WL 431098, at *3 (S.D.N.Y. 2007), *aff'd*, 280 F. App'x 88 (2d Cir. 2008); *see also Bangladesh Bank v. Rizal Com. Banking Corp.*, 2020 WL 1322275, at *8 (S.D.N.Y. 2020) (de-scribing "explicit directive that allegations of illegal conduct separate from the racketeering acts are a requirement in this Circuit" (internal quotation marks omitted)).

Separately, to show the required "relationship" between the enterprise members, Nygård must allege facts showing that its "members functioned as a unit."  *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004).  The complaint here simply lists unconnected individuals without showing any relationship among them.  FAC ¶ 908.  That "conclusory naming of a string of entities does not adequately allege an enterprise."  *First Capital*, 385 F.3d at 175. The addition of a conclusory allegation that those individuals "banded together," FAC ¶ 908, adds no weight to the allegations, *see, e.g.*, *Bangladesh Bank*, 2020 WL 1322275, at *8 (enterprise requires structure, otherwise "any two thieves in cahoots" would suffice); *Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC*, 2012 WL 1231775, at *6 (S.D.N.Y. 2012) ("[F]ailure to plead with any specificity as to … the mechanics of the alleged ongoing working relationship among defendants is fatal.").

Indeed, the complaint fails even to plead a common purpose, for "damaging Plaintiff in his business and property," FAC ¶ 908, is a purpose attributed only to Defendant himself.  By failing

15

to suggest a plausible reason why other enterprise members "would share th[at] goal" (which allegedly arose from Nygård's private property dispute with Defendant), Nygård fails to "allege a plausible common purpose." *D. Penguin Bros. Ltd. v. City Nat'l Bank*, 587 F. App'x 663, 668 (2d Cir. 2014). To the contrary, Nygård alleges the opposite of a common purpose by claiming that other participants were paid for their acts. *See, e.g.*, FAC ¶¶ 56, 74-77, 230, 239, 387, 406, 422, 445, 454. That "self-interested financial motivation" defeats common purpose and so is fatal to the enterprise element as well. *See Del. Motel Assocs., Inc. v. Capital Crossing Servicing Co.*, 2018 WL 4829598, at *4 (N.D. Ill. 2018); *accord Ris v. Bedell,* 699 F. Supp. 429, 440 (S.D.N.Y. 1988).

In all, what Nygård alleges is not the kind of enterprise that RICO targets, but just an alleged assortment of bad acts in a personal dispute between Nygård and Defendant. He does not allege that the putative participants "knew of" or were "aware of" one another's activities or were "acting in coordination." *See D'Addario v. D'Addario*, 901 F.3d 80, 101-02 (2d Cir. 2018); *Cedar Swamp Hldgs., Inc. v. Zaman*, 487 F. Supp. 2d 444, 450 (S.D.N.Y. 2007). The allegation that they were all working at Defendant's direction "does not support an inference that they all agreed to join forces with each other to pursue a [common] goal." *D'Addario*, 901 F.3d at 101-02; *see also Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 135 (E.D.N.Y. 2010) (allegation that entities "engaged in a series of independent frauds that somehow benefitted" one central figure was insufficient to plead enterprise); *First Nationwide Bank v. Gelt Funding, Corp.*, 820 F. Supp. 89, 98 (S.D.N.Y. 1993) (no enterprise where each individual committed a "similar but independent fraud with the aid of" one central person and each individual "acted on a particular occasion to benefit himself or herself and not to assist any other [individual]"), *aff'd*, 27 F.3d 763 (2d Cir. 1994). For each of these reasons, the complaint fails to allege a RICO enterprise.

### C.      The Complaint Fails to Plead Predicate Acts that Have Harmed Nygård

#### 1.      Nygård is Not Alleged to Be the Proximate Victim of Most of His Alleged Predicate Acts, So They Do Not Support His RICO Claim

A plaintiff asserting a RICO cause of action must adequately allege that he was proximately injured by conduct that constitutes a RICO predicate act. *Trump Corp.*, 385 F. Supp. 3d at 275. Here, as Nygård himself alleges, this case is about alleged false statements made about Nygård. FAC ¶ 559 (alleging a scheme to "defame Peter Nygård"). The asserted predicate acts that do not deal with a false statement do not target Nygård, so Nygård cannot rely on them to support his RICO claim. These include at least his claims for peonage, forced labor, harboring aliens, unlawful employment of aliens, and fraud in foreign labor contracting—none of these is alleged to have harmed Nygård directly and consequently they are irrelevant. *See, e.g.*, *Chandradat v. Navillus Tile*, 2004 WL 2186562, at *6 (S.D.N.Y. 2004) (dismissing RICO claim based on alleged violations of § 1324). These predicates are all also insufficiently alleged,[5] but this Court need not consider them in detail at all because they do not target Nygård.

---

[5] These predicates are insufficiently alleged for at least the following reasons:

- *Peonage, forced labor*: The claim that Defendant "coerced" or "threatened" anyone is (a) conclusory, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and (b) contradicted by the allegations that those same individuals acted "willfully and knowingly," *compare* FAC ¶ 168, *with id.* ¶ 695.

- *Peonage*: Nygård fails to identify a "debt" which anyone was forced "to work in order to satisfy." *See United States v. Sabhnani*, 599 F.3d 215, 241 (2d Cir. 2010).

- *Peonage, forced labor, forced labor trafficking, foreign labor fraud*: Providing allegedly false statements, FAC ¶ 886, is not providing "labor or services" or "employment," *see Peterson v. Boeing Co.*, 2015 WL 12090213, at *7 (D. Ariz. 2015); *Pasamba v. HCCA Int'l, Inc.*, 2008 WL 2562928, at *6 (D. Ariz. 2008).

- *Harboring aliens*: The required allegation of a "financial gain" motive is (a) conclusory and (b) contradicted by the allegation that Defendant's purpose was to harm Nygård. *See* FAC p. 6 ¶ ii; *id.* ¶ 908; *Bologna v. City & County of San Francisco*, 2009 WL 2474705, at *7 (N.D. Cal. 2009). The complaint also lacks any allegation of efforts to prevent detection by law enforcement. *See United States v. Vargas-Cordon*, 733 F.3d 366, 382 (2d Cir. 2013).

- *Unlawful employment of aliens*: The relevant provision, 8 U.S.C. § 1324a, *see* FAC ¶¶ 900-01, "is not a RICO predicate act," *Nichols v. Mahoney*, 608 F. Supp. 2d 526, 534 (S.D.N.Y. 2009).

2.      **The Complaint Fails to Plead Bribery**

The complaint fails to state a predicate act of witness bribery under federal or state law.

*See* FAC ¶ 854-55.   To plead a witness bribery predicate act, Nygård must identify a person who

is a "witness" or "about to be called as a witness" in an "action or proceeding."  N.Y. Penal Law

Section 215.00; *see* Colo. Rev. Stat. Ann. § 18-8-703(1); Tex. Penal Code Ann. § 36.05(a); Cal.

Penal Code § 137(a); 18 U.S.C. § 201(b)(3).   For federal witness bribery, the action or proceeding

must be federal.   *See United States v. Kennings*, 861 F.2d 381, 387 n.12 (3d Cir. 1988).   In addition,

Nygård must plead facts that link the alleged bribe to an intent to "influence[]" testimony.  N.Y.

Penal Law § 215.00; *see* Colo. Rev. Stat. Ann. § 18-8-703(1)(a); Tex. Penal Code Ann. § 36.05(a);

Cal. Penal Code § 137(a).   Where New York or California law applies, a plaintiff must also plead

facts to suggest an "agreement or understanding" that the witness's testimony will be influ-

enced.  N.Y. Penal Law § 215.00; Cal. Penal Code § 137(a); *People v. Bac Tran*, 80 N.Y.2d 170,

176 (1992).   And for federal witness bribery, a plaintiff needs to "explain what testimony was

obtained, what item of value was exchanged, or what promises were made."  *E. Savings Bank, FSB

v. Papageorge*, 31 F. Supp. 3d 1, 15 (D.D.C. 2014).[6]   Because the FAC inadequately pleads at

least one of these elements for each alleged instance of bribery, it fails to state a witness bribery

predicate act.

The allegations of payment for false statements to media outlets are not bribery because

every statute at issue requires an intent to influence some form of official proceeding.   And most

of the other bribery allegations are conclusory.  *See, e.g.*, FAC ¶ 632 (Clement Chea); *id.* ¶ 221

---

[6] To the extent Nygård intends to assert a separate predicate act under California Penal Code § 137(b), *see* FAC ¶ 854 (citing Cal. Penal Code § 137(b)), that attempt fails because Section 137(b) is neither a state law witness bribery provision nor describes any other state law crime listed as a predicate in the RICO statute.  *See* 18 U.S.C. § 1961(1)(A).

(Jestan Sands); *id.* ¶ 225 ("Other Unnamed Individuals").[7]   The complaint fails to plead non-con-clusory facts showing (1) that any of these individuals would be a witness, *see Tooker v. Guerrera*, 2017 WL 3475994, at *12 (E.D.N.Y. 2017); 18 U.S.C. § 201(b)(3) ("as a witness"); *id.* § 201(b)(4) ("as a witness"); (2) that there was any "agreement or understanding" that their testimony would be influenced, *see Bac Tran*, 80 N.Y.2d at 176; *United States v. Alfisi*, 308 F.3d 144, 149 (2d Cir. 2002); or (3) "what testimony was obtained, what item of value was exchanged, or what promises were made." *E. Savings Bank*, 31 F. Supp. 3d at 15.

The rest of the bribery-related allegations are insufficient as well.   Most broadly, none of the allegations concretely tie any alleged testimony to any claim of specific harm to Nygård's business or property.   The identified incidents further fail to state a qualifying claim of bribery for a variety of reasons:

- *McKinney*: The allegations related to Bianca McKinney are from 2010, predate RICO's four-year limitations period, and so cannot supply the required injury.   The vague claims regarding McKinney anyway fail to allege either (a) "any benefit" that was offered to her, *see, e.g.*, N.Y. Penal Law § 215.00; *Park S. Assocs. v. Fischbein*, 626 F. Supp. 1108, 1113 (S.D.N.Y. 1986); *E. Savings Bank*, 31 F. Supp. 3d at 15, or (b) that she agreed to alter any testimony, *see Bac Tran*, 80 N.Y.2d at 176; *Alfisi*, 308 F.3d at 149.

- *Bullard & Davilma*: These Bahamian witnesses are alleged to have submitted evidence in a Bahamian court.   Because this purported predicate did not produce a domestic injury, it

---

[7] The same is true for commercial bribery.   The complaint offers no "facts regarding how much was paid, when it was paid, or how it was delivered."   *See Fuji Photo Film U.S.A., Inc. v. McNulty*, 640 F. Supp. 2d 300, 318 (S.D.N.Y. 2009); *Zigman v. Giacobbe*, 944 F. Supp. 147, 156 (E.D.N.Y. 1996).   The allegation that Defendant and his associates paid "over $1,000 to Stephen Feralio," FAC ¶ 903, merely parrots an element of N.Y. Penal Law § 180.03 and is not sufficiently specific, *see Fuji Photo*, 640 F. Supp. 2d at 318.   The complaint also impermissibly fails to plead "*concrete* economic loss," *People v. Wolf*, 98 N.Y.2d 105, 110 (2002) (emphasis added), and improperly seeks recovery only for intangible reputational harms, *see* FAC ¶ 903.

cannot ground Nygård's RICO claim.  Further, (a) no facts are pled to suggest that Bullard

and Davilma were "told they had to testify in a certain way" to receive payment, *see People*

*v. Kramer*, 132 A.D.2d 708, 710 (2d Dep't 1987), and (b) there is no explanation of "what

testimony was obtained," *E. Savings Bank*, 31 F. Supp. 3d at 15.

- *Ross*: The claim that Richette Ross was offered money to "walk away from" an affidavit

  in an unspecified "action by Louis Bacon," FAC ¶¶ 739, 741-42, (a) is vague, (b) does not

  allege that Ross changed her testimony, (c) does not identify a domestic proceeding or

  domestic injury, particularly given that Ross is in the Bahamas, and (d) does not state facts

  showing how the testimony harmed Nygård's business or property.

- *Cleare, Cummings & Storr*: The complaint's allegations are vague and conclusory as to

  these persons, and (a) fail to factually identify any testimony by any of these witness, in-

  cluding how it was false and in what action it was offered, *see Tooker*, 2017 WL 3475994,

  at *12, (b) offer no facts showing an offer to induce them to lie, *see, e.g.*, *id.* ¶¶ 659, 679,

  726; *see Park S. Assocs.*, 626 F. Supp. at 1113; *E. Savings Bank*, 31 F. Supp. 3d at 15, and

  (c) fail to allege an agreement that they would alter their testimony, *see Bac Tran*, 80

  N.Y.2d at 176; *Alfisi*, 308 F.3d at 149.

### 3.    The Complaint Fails to Plead Witness Tampering and Retaliation

The complaint similarly fails to plead witness tampering and retaliation, 18 U.S.C. §§

1512(a)(2) & 1513.  Both specifically require "bodily injury" or "property damage," or the threat

of it.  18 U.S.C. § 1512(a)(2); *id.* § 1513(b).  The conclusory allegations that potential witnesses

were "threatened," *see, e.g.*, FAC ¶¶ 157, 168, 175, 221, 224-25, are not sufficient, *Turner v. N.J.*

*State Police*, 2017 WL 190917, at *32 (D.N.J. 2017).  Further, the statute only covers federal court

proceedings, *see* 18 U.S.C. § 1515(a)(1), so only the pending S.D.N.Y. action is relevant, and no

threat of injury is specified as to any identified witness in that action, *see United States v. Martinez*, 862 F.3d 223, 237 (2d Cir. 2017) (requiring "a 'nexus' between the defendant's conduct and the … official proceeding"), *vacated in part on other grounds by* 139 S. Ct. 2772 (2019); *United States v. Young*, 916 F.3d 368, 387 (4th Cir. 2019) (requiring that the defendant's "conduct connected to a *specific* official proceeding" (emphasis added)).[8]

### 4.    The Complaint Fails to Plead Money Laundering

The complaint fails to allege the elements of domestic and international money laundering under 18 U.S.C. § 1956(a)(1), *see* FAC ¶¶ 891-93, and 18 U.S.C. § 1956(a)(2)(A), *see* FAC ¶¶ 913-18.[9]  As to domestic money laundering, the transferred funds must be "proceeds" of "specified unlawful activity," 18 U.S.C. § 1956(a)(1), but the complaint alleges no non-conclusory facts, *see* FAC ¶ 892, showing such unlawful activity or that the funds involved were proceeds of crime, *see Tymoshenko v. Firtash*, 2015 WL 5505841, at *6 (S.D.N.Y. 2015) (no factual allegations of "'specified unlawful activity' that ... generated proceeds"); *Jus Punjabi, LLC*, 2015 WL 2400182, at *8 (S.D.N.Y. 2015), *aff'd*, 640 F. App'x 56 (2d Cir. 2016) ("[B]are, conclusory statements" cannot be "the basis of [a] money laundering claim.").[10]  It further fails to identify the required specific "financial transactions" at issue, *see Tymoshenko*, 2015 WL 5505841, at *6 (analyzing

---

[8] The complaint asserts a predicate it calls "coercion/extortion under New York law."  FAC ¶¶ 904-05.  But coercion is not an actionable RICO predicate act.  *See* 18 U.S.C. § 1961(1)(A); *see, e.g.*, *Oak Beverages, Inc. v. Tomra of Mass., L.L.C.*, 96 F. Supp. 2d 336, 347-48 (S.D.N.Y. 2000); *United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 793 F. Supp. 1114, 1132 (E.D.N.Y. 1992).  There is also no extortion predicate act because "it is of the essence of extortion—not only in New York law but … in the law generally—that one compel another to surrender *property*."  *United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 793 F. Supp. 1114, 1132 (E.D.N.Y. 1992).  The complaint lacks any allegation regarding the surrender of property.  *See* FAC ¶ 905.

[9] The complaint misidentifies the federal money laundering section as "§ 1596."  *See* FAC ¶¶ 891-93.

[10] For the same reason that the complaint fails to plead domestic money laundering under 18 U.S.C. § 1956, it fails to plead an illegal monetary transaction under 18 U.S.C. § 1957.  Section 1957 prohibits transactions in "criminally derived property … derived from specified unlawful activity."  18 U.S.C. § 1957.  As explained above, whatever the alleged *purpose* of any supposed payment, the complaint alleges nothing to suggest that any payment was funded with the proceeds of crime.

specific transactions), and fails to allege facts showing the required improper purpose for any transfer: Its boilerplate allegations "are no more than 'unadorned, the-defendant-unlawfully-harmed-me-accusation[s],' and are insufficient to state a claim" of money laundering.  *See Jus Punjabi*, 2015 WL 2400182, at *8 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

As for international money laundering, the statue requires a foreign transaction intended to "promote the carrying on of specified unlawful activity [("SUA")]."  18 U.S.C. § 1956(a)(2)(A).[11] The one alleged cross-border transaction is a February 2015 payment allegedly made to Bullard in the Bahamas, allegedly to bribe him in violation of Bahamian law.  FAC ¶¶ 626, 918.[12]  That transaction is first of all irrelevant because it affected the Bahamas, so Nygård cannot claim a domestic injury arising from it and it therefore cannot be the basis of his RICO claim of injury.

It also is not money laundering because there is no SUA.  Nygård claims that bribing a Bahamian witness is a SUA under § 1956(c)(7)(B)(vi) because it is an offense requiring extradition from (or domestic prosecution in) the United States under the United Nations Convention Against Transnational Organized Crime ("UNCATOC").  FAC ¶ 917.  But UNCATOC "does not provide a substitute international legal basis for extradition" from the United States (or mandate domestic prosecution here).  Sec'y of State, Letter of Transmittal, Treaty Doc. 108-16 at XI, Jan. 22, 2004 (UNCATOC does not require domestic prosecution in United States; extradition governed by U.S. law and bilateral treaties, not UNCATOC).[13]  So offenses under UNCATOC are not SUAs.

---

[11] International money laundering can also be committed in other ways, but the complaint only alleges a violation of the "promotion" prong.  *See* FAC ¶¶ 914, 918.

[12] As to Richette Ross, the complaint parrots the statutory language in alleging that a payment was made to one other person "from a place within the United States" while she was "outside the United States," but the complaint does not offer any support for that conclusion, *see* FAC ¶ 918, and alleging a statutory element *in haec verba* without more is insufficient, *see Iqbal*, 556 U.S. at 678.  The conclusion that that payment originated in the United States is also contradicted by the complaint's factual allegations that the payment was made by a resident of the Bahamas.  *See*, *e.g.*, FAC ¶¶ 71, 72.

[13] Available at https://www.congress.gov/108/cdoc/tdoc16/CDOC-108tdoc16.pdf.

### 5.   The Complaint Fails to Plead Production and Transportation of Obscene Matters for Sale or Distribution

The complaint also fails to state a pornography predicate act under 18 U.S.C. § 1465.  *Contra* FAC ¶ 876.  First, Nygård does not assert any claim of harm to his business or property arising from this predicate.  *See* FAC ¶ 924.  Second, Defendant is not accused of being in the business of distributing pornography featuring Nygård—the materials allegedly contain "stories about" Nygård "engaging in deviant sexual acts" and "verbal abuse of employees," FAC ¶¶ 605, 876; they are not the "hard-core pornography" that the statute covers, *United States v. Friedman*, 506 F.2d 511, 516 (8th Cir. 1974); *Miller v. California*, 413 U.S. 15, 27 (1973).

### 6.   The Complaint Fails to Plead Fraud

To state predicate acts sounding in fraud, a RICO plaintiff must "state with particularity the circumstances constituting fraud or mistake" as required by Federal Rule 9(b).  *First Capital*, 385 F.3d at 178.  None of the complaint's alleged predicates sounding in fraud satisfy this standard, and that dooms each.  *See, e.g.*, FAC ¶¶ 645-47, 712-14, 858 (fraud in foreign labor contracting); *id.* ¶ 897 (interstate transportation of stolen goods or goods taken by fraud); *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013) ("Claims that sound in fraud are subject to the heightened pleading standards of Fed.R.Civ.P. 9(b), which requires that averments of fraud be 'state[d] with particularity.'").[14]

---

[14] The complaint's foreign labor fraud predicate also fails because it contradicts the assertion that there were any misrepresentations by alleging that the individual was given what she was promised.  *See, e.g.*, FAC ¶¶ 687-94 (alleging offer); *id.* ¶¶ 702-04 (alleging payments and benefits).  The complaint's interstate transportation of stolen goods or goods taken by fraud counts also fail because any "stolen" items complained of are intangible personal video files, *id.* ¶¶ 197, 605, 897, which do not constitute "goods" under § 2314, *see United States v. Aleynikov*, 676 F.3d 71, 77-79 (2d Cir. 2012) (theft and electronic transportation of computer code involved "purely intangible property embodied in a purely intangible format" and so was "beyond the scope of" § 2314).  There also is no allegation that any of the video files were taken from Nygård such that they are now in Defendant's *exclusive* possession.  *See United States v. Long Cove Seafood, Inc.*, 582 F.2d 159, 163 (2d Cir. 1978) ("stolen" in § 2314 means "intent to deprive the owner of the rights and benefits of ownership"); *Nunes v. United States*, 630 F. Supp. 1048, 1050 (D. Haw. 1986) (§ 2314 requires "some prior *physical* taking of the subject goods" (emphasis added)).

In addition, as to mail and wire fraud, the relevant statutes "bar only schemes for obtaining property." *Kelly v. United States*, 140 S. Ct. 1565, 1574 (2020). Nygård alleges no such scheme. As the complaint repeatedly states, the alleged "scheme [was] to damage Plaintiff's business and property" by harming his *reputation*, not to obtain anything from him. *See, e.g.*, FAC ¶¶ 509, 513, 546, 605, 606, 815, 869, 870, 905, 923, 924(8), 927, 928, 945, 969. As another judge in this District explained in dismissing a similar RICO suit, such a scheme is not a scheme to defraud. *Lee*, 2005 WL 89386, at *4 ("[Plaintiff] has merely alleged that the false information was transmitted via the wires and mails to harm his business and reputation. It is plain that '[i]ntent to injure is not the equivalent of intent to defraud.'") (quoting *Kredietbank, N.V. v. Joyce Morris, Inc.*, 1986 WL 5926, at *4 (D.N.J. 1986); *see also Mansmann v. Smith*, 1997 WL 145009, at *5 (E.D. Pa. 1997) (dismissing mail and wire fraud-based RICO claim because "[t]he use of mail and wire services to implement torts does not make them into mail and wire fraud").

### 7.   The Complaint Fails to Plead a Travel Act Predicate Act

Finally, the complaint fails to state a predicate act under the Travel Act, 18 U.S.C. § 1952, *see* FAC ¶¶ 889-90,[15] because as discussed above in this section, it does not plead any underlying "unlawful activity" which is defined to include bribery, money laundering, and extortion, *see* 18 U.S.C. § 1952(b); *FindTheBest.com, Inc. v. Lumen View Tech. LLC*, 20 F. Supp. 3d 451, 460 (S.D.N.Y. 2014) (dismissing Travel Act claim where complaint failed to adequately allege underlying crimes specified in the statute). Otherwise, the allegations as to the Travel Act violation are wholly conclusory, *see* FAC ¶ 890, and must be dismissed, *see Iqbal*, 556 U.S. at 678; *Bernstein*

---

[15] Although the complaint cites 18 U.S.C. "§ 1592" instead of § 1952, *see* FAC ¶ 889-90, the statutory language it cites comes from the latter.

*v. Misk*, 948 F. Supp. 228, 236 n.2 (E.D.N.Y. 1997) (rejecting Travel Act predicate acts that are "vague").

### D.    The Complaint Fails to Plead a Pattern of Racketeering Activity

Finally, the complaint fails to plead a pattern of related and continuing criminal activity. The alleged predicates are not "related to each other" and do not "amount to" or "pose a threat of continued criminal activity." *See Reich v. Lopez,* 858 F.3d 55, 60 (2d Cir. 2017).  To constitute a RICO pattern, the predicate acts must "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise [be] interrelated by distinguishing characteristics and [] not isolated events." *Id*. at 61.  Here, the disparate events alleged in the purported scheme have no common thread.

Looking just at the concrete acts that Nygård alleges that are arguably within RICO's four-year limitations period, the complaint boils down to two.  The first of these is the alleged submission of false statements by Bullard and Davilma in a Bahamian litigation.  FAC ¶¶ 621-41.  In that case, Defendant and other plaintiffs accused Nygård of paying local Bahamian operatives (including those two witnesses) to physically harass and intimidate them.  The two witnesses cooperated with the Bahamian plaintiffs and submitted supporting statements detailing their involvement in the harassment campaign; Nygård's claim here is that their evidence accusing him of wrongdoing is false. *See id.* ¶ 640.  The second is Nygård's claim that Defendant helped to procure statements by women who say that they were the victims of his sexual abuse over the course of decades, in support of a complaint currently pending before Judge Ramos in this District and a complaint in California.  Nygård denies those women's accounts of his sexual misconduct and claims that they are lying. *See id.* ¶¶ 823-24.

Those claims of false statements, relating to lawsuits filed five years apart, are different acts relating to entirely different litigations on different subjects and allegedly involving different

actors with no relation to one another. The only thing linking them together is Nygård's claim that some people who accuse him of bad acts in their testimony are lying, but that does not create a RICO pattern.

While there are other facts alleged in the complaint, they do not support claims of wrong-doing, so they do not contribute to any alleged pattern of wrongdoing. For example, there are vague allegations that Defendant made criminal referrals to the FBI and DHS, *see id.* ¶¶ 774-79, but no actionable predicate act is tied to those allegations. There is the claim that two women made false statements, *see, e.g.*, *id.* ¶¶ 659, 726, but Nygård does not allege what those statements are, what is false about them, to whom or what body they were made or submitted, or how those statements harmed or otherwise affected him. There is also the claim that false statements were made by some sources to *The New York Times*, *see, e.g.*, *id.* ¶ 796, but speech to a reporter, even if false, is not a criminal act. So again, the allegations related to *The New York Times* cannot suggest a pattern of criminal wrongdoing. Indeed, the complaint fails to state a single predicate act, *see supra* Part I.C, and, even if it did, any such predicate acts are not linked by common purposes, results, participants, victims, or methods of commission.

And even if the events described in the complaint were "related," they do not amount to the continuity that RICO requires. A scheme that, "[a]t bottom," has a "limited goal" of harming just a single victim or even a "few victims" does not satisfy the requirement of closed-ended con-tinuity. *See Grace Int'l Assembly of God v. Festa*, 797 F. App'x 603, 605 (2d Cir. 2019) (citing, *inter alia*, *First Capital*, 385 F.3d at 181); *see also Gross v. Waywell*, 628 F. Supp. 2d 475, 490 (S.D.N.Y. 2009). Nor does Nygård allege facts to suggest "that there [is] a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *First Capi-*

*tal*, 385 F.3d at 180.  The complaint purports to allege an attempt to procure an influenced statement in early 2018, FAC ¶ 670–73, but if that is the most recent act of wrongdoing, that suggests that any purported scheme has "wound to a close," *see First Capital*, 385 F.3d at 181 (no open-ended continuity where only seven months had elapsed between the latest predicate act and the filing of the complaint).  (The complaint alleges "harm" that "manifested itself in 2020" in the form of the *New York Times* article, third party Jane Does sexual assault lawsuits, and FBI raids, but no predicate act within that period.  *See* FAC ¶¶ 816-46.)  Nothing in the disparate claims of past conduct that Nygård alleges suggests the likelihood of future wrongdoing, so RICO's continuity element is not met.

* * *

For all of the foregoing reasons, Nygård has failed to plead a cause of action under RICO, and Count I must be dismissed.

## II.     The Complaint Does Not Plead a Cognizable Claim of RICO Conspiracy (Count II)

Nygård's failure to plead a substantive RICO claim is fatal to his RICO conspiracy claim as well.  *See Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir. 1996), *vacated on other grounds by* 525 U.S. 128 (1998).  His conclusory allegations of conspiracy are anyway insufficient: A bare, conclusory allegation of conspiracy does not suffice.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007)*; Nasik Breeding & Research Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 541 (S.D.N.Y. 2001).  Count II must therefore be dismissed.

## III.    The Complaint's Other Claims under Criminal Statutes Must be Dismissed (Counts IV, V and VI)

Nygård's claims under criminal statutory law for trafficking and harboring aliens, FAC ¶ 961, and filing a false report and aiding and abetting the same, *id.* ¶¶ 951, 956, must also be dismissed, because there are no such causes of action.  No claim lies if the relevant "federal criminal

statutes do not provide private causes of action." *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009). The statutes here, 8 U.S.C. § 1324 and 18 U.S.C. § 287, do not. *See Ryder v. Platon*, 2012 WL 2317772, at *8 (E.D.N.Y. 2012) (§ 1324); *Weldon v. Dyer*, 2013 WL 2244527, at *8 (E.D. Cal. 2013) (§ 287). Nor does Nygård identify a state criminal analog that allows such a civil claim. In any event, as discussed, the complaint does not sufficiently allege any of these violations, so Counts IV, V and VI must be dismissed for that reason as well.

## IV.     The Complaint Fails to Plead Tortious Interference with Prospective Economic Advantage (Count III)

Nygård alleges that Defendant tortiously interfered with his business relations by facilitating the publication of (unidentified) false statements on sistahsabused.com, FAC ¶¶ 814, 940, and in a February 2020 *New York Times* article, *id.* ¶ 941. These statements allegedly caused Dillard's to stop doing business with his company, *id.* ¶¶ 815, 940, 944, contributing to a credit default and pushing "five companies indirectly owned by" him "into receivership," *id.* ¶ 944.

To state his claim, however, Nygård must plead interference with a "business relationship between *himself* and a third party," *Connolly v. Wood-Smith*, 2014 WL 1257909, at *2 (S.D.N.Y. 2014) (emphasis added), so his claim fails at the threshold because he complains of interference with relationships held by "businesses associated with" him, *see Brown Media Corp. v. K & L Gates, LLP*, 586 B.R. 508, 524-25, 530 (E.D.N.Y. 2018) (shareholder lacked standing to sue for interference with the company's business relationships with third parties).

Beyond that, there is no allegation that Defendant targeted conduct at Dillard's or any other Nygård counterparty—so the claim fails additionally because the alleged conduct was targeted "at the plaintiff [him]self"—*i.e.*, Nygård—not "at the party with which the plaintiff has or seeks to have a relationship." *See Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 192 (2004); FAC ¶¶ 940-41

(alleging "stated goal of trying to bring down Peter Nygård"); *id.* ¶ 942 ("designed to injure Plaintiff"). On these allegations, harm to Nygård's business relationships was merely a nonactionable "incidental byproduct." *See Hadami, S.A. v. Xerox Corp.*, 272 F. Supp. 3d 587, 602 (S.D.N.Y. 2017); *see also G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762, 768 (2d Cir. 1995) (tortious interference claim failed where plaintiffs made "no allegations that [defendants] had any contact with the [plaintiffs'] customers"). The tortious interference claim therefore cannot stand.

## V.     The Complaint Fails to Plead Abuse of Process (Count VII)

Finally, Nygård fails to state a claim for abuse of process. "Abuse of process has three essential elements: (1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective." *Curiano v. Suozzi*, 63 N.Y.2d 113, 116 (1984). The process must involve "an unlawful interference with one's person or property"; the "institution of a civil action by summons and complaint is not legally considered process capable of being abused." *Id.* The "gist" of the claim is "the improper use of process after it is issued." *Id.* at 117.

Here, Nygård's claim fails at the first element because he has not even alleged the issuance of criminal process—the alleged investigations by the FBI and DHS, he claims, did not result in criminal charges (and anyway predate the one-year limitations period under CPLR 215(3)). *See* FAC ¶¶ 775-78, 812. And the initiation of civil actions, *see id.* ¶ 812, as noted, does not suffice because the Court of Appeals has held that a civil summons is not "capable of being abused," *Curiano*, 63 N.Y.2d at 116. The complaint also fails to allege the "perverted" use of any process to interfere with his person or property. *See id.* Beyond that, "loss of business, injury to reputation, or expense arising from litigation"—the types of damages asserted here—cannot "sustain an abuse of process claim," *O'Brien v. Alexander*, 898 F. Supp. 162, 168 (S.D.N.Y. 1995); and a bald claim of unquantified "damages" like Nygård's here, *see* FAC ¶ 970, does not meet the requirement that

an abuse of process complaint plead special damages, *i.e.*, "specific and measurable losses, which must be alleged with sufficient particularity to identify actual losses and be related causally to the alleged tortious acts."  *Morea v. Saywitz*, 2010 WL 475302, at *3 (E.D.N.Y. 2010) (internal alterations omitted).  The abuse of process claim must be dismissed for all of these reasons.

## CONCLUSION

For the foregoing reasons, the First Amended Complaint should be dismissed without leave to amend.

Dated:  September 10, 2020
      New York, New York

Respectfully submitted,


/s/ Christopher M. Egleson
Nancy Chung
Michael A. Levy
Christina Prusak Chianese
David S. Kanter
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Tel: (212) 839-5300
Fax: (212) 839-5599
nchung@sidley.com
mlevy@sidley.com
cchianese@sidley.com
dkanter@sidley.com

Christopher M. Egleson
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
Tel: (213) 896-6000
Fax: (213) 896-6600
cegleson@sidley.com

*Counsel for Defendant Louis M. Bacon*