## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PETER J. NYGÅRD,<br><br>Plaintiff,<br><br>v.<br><br>LOUIS M. BACON, JOHN DOES 1-20 AND DOE CORPS. 1-10,<br><br>Defendants. | **Civil Action No. 1:2019-cv-01559-LGS-KNF** |

### PLAINTIFF PETER J. NYGÅRD'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT LOUIS M. BACON'S MOTION TO DISMISS

Dated: November 9, 2020

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**

David M. Ross, Esq., *admitted pro hac vice*
1500 K Street, N.W., Suite 330
Washington, DC 20005
Tel: (202) 626-7660
Fax: (202) 626-3606
david.ross@wilsonelser.com

Cynthia S. Butera, Esq.
Rebecca R. Gelozin, Esq.
1133 Westchester Avenue
White Plains, NY 10604
Tel: (914) 872-7000
Fax: (914) 323-7001
cynthia.butera@wilsonelser.com
rebecca.gelozin@wilsonelser.com

***Counsel for Plaintiff Peter Nygård***

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

PROCEDURAL BACKGROUND.......................................................................... 3

ARGUMENT .......................................................................................................... 4

I.     The FAC Properly States a RICO Claim (Count I) ................................... 4

       A.    Nygård's Injuries are Cognizable Under RICO......................... 4

          1.    Damage to Nygård's Business and Business Reputation Confers RICO Standing ................................ 5

          2.    Bacon's Actions are the Proximate Cause of Nygård's Injury................................................................. 8

          3.    Nygård Suffered a Domestic Injury ................................. 9

       B.    Nygård Adequately Pled the Existence of a RICO Enterprise ................ 10

       C.    The FAC Adequately Pleads Predicate Acts that Proximately Harmed Nygård........................................................... 15

          1.    Nygård Adequately Pleads Bribery ............................. 16

          2.    The FAC Sufficiently Pleads Witness Tampering and Retaliation ................................................................. 18

          3.    The FAC Adequately Pleads Money Laundering......................... 18

          4.    The FAC Adequately Pleads Production and Transportation of Obscene Matters for Sale or Distribution ................................. 20

          5.    The FAC Adequately Pleads Fraud ............................. 20

          6.    The FAC Sufficiently Pleads a Travel Act Predicate Act............ 21

       D.    The FAC Adequately Pleads a Pattern of Racketeering Activity............ 22

II.    Like His RICO Claim, Nygård's RICO Conspiracy Claim is Sufficiently Pleaded........................................................... 24

III.   The FAC Adequately Alleges a Tortious Interference Claim ............................. 25

IV.     Counts IV, V and VI are Sufficiently Pleaded Common Law Causes of Action ................................................................................................. 27

V.      Count VII Adequately Pleads Abuse of Process .................................... 29

VI.    CONCLUSION ............................................................................................. 30

1131301v.1

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Alexander Grant & Co v. Tiffany Indus., Inc.*,
    770 F.2d 717 (8th Cir. 1985) ............................................................................. 7

*Allstate Ins. Co. v. Afanasyev*,
    2016 U.S. Dist. LEXIS 19084 (E.D.N.Y. Feb. 11, 2016) ...................................... 19

*Armada (Singapore) PTE Ltd. v. Amcol Int'l Corp.*,
    885 F.3d 1090 (7th Cir. 2018) ............................................................................. 10

*Aviles v. S&P Global, Inc.*,
    380 F. Supp. 3d 221 (S.D.N.Y. 2019) .................................................................. 22

*Bascunan v. Elsaca*,
    874 F.3d 806 (2d Cir. 2017) ................................................................................ 9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................ 4

*Boyle v. U.S.*,
    556 U.S. 938 (2009) ............................................................................................ 11

*Bridge v. Phoenix Bond & Indem. Co.*,
    553 U.S. 639, 654 (2008) ................................................................................ 8, 9

*Cement-Lock v. Gas Tech. Inst.*,
    2005 U.S. Dist. LEXIS 22058 (N.D. Ill. Sep. 30, 2005) ...................................... 7

*Clark v. Stipe Law Firm, L.L.P.*,
    320 F. Supp. 2d 1207 (W.D. Ok. 2004) .............................................................. 6

*Ctr. For Immigration Studies v. Cohen*,
    410 F. Supp. 3d 183 (D.D.C. 2019) .................................................................... 8

*Curiano v. Suozzi*,
    63 N.Y.2d 113 (1984) .......................................................................................... 29

*Dandong Old North-East Agric. & Animal Husbandry Co. v. Gary Ming Hu*,
    2017 U.S. Dist. LEXIS 122471, n. 6 (S.D.N.Y. Aug. 3, 2017) ....................... 5, 9, 10

*Day v. MTA N.Y. City Transit Auth.*,
    2019 U.S. Dist. LEXIS 55857 (S.D.N.Y. Mar. 31, 2019) ............................... 25, 28

*DeFalco v. Benas*,
   244 F.3d 286 (2d Cir. 2001) ......................................................................... 14

*Does No. 1-10 v. Nygard*,
   No. 20-1288 (S.D.N.Y.) ................................................................................ 24

*Egerique v. Chowaiki*,
   2020 LEXIS 73060 (S.D.N.Y. Apr. 24, 2020) ........................................ 22

*Elsevier Inv. v. Grossman*,
   2017 U.S. Dist. LEXIS 182859 (S.D.N.Y. Nov. 3, 2017) ....................... 10

*Equinox Gallery Ltd. v. Dorfman*,
   306 F. Supp. 3d 560 (S.D.N.Y. 2018) ............................................... 11, 15

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
   385 F.3d 159 (2d Cir. 2004) ....................................................................... 13

*Goldman v. Barrett*,
   2017 U.S. Dist. LEXIS 117339 (S.D.N.Y. July 25, 2017) ...................... 26

*H.J. Inc., et al. v. Northwestern Bell Tel. Co.*,
   492 U.S. 229 (1989) ........................................................................... 22, 23

*Hansen v. Town of Smithtown*,
   342 F. Supp. 3d 275 (E.D.N.Y. 2018) ................................................ 25, 28

*Jus Punjabi, LLC v. Get Punjabi Inc.*,
   2015 WL 2400182 (S.D.N.Y. May 20, 2015) ......................................... 19

*Khurana v. Innovative Health Care Sys.*,
   130 F.3d 143 (5th Cir. 1997) ....................................................................... 7

*Kimm v. Lee*,
   2005 U.S. Dist. LEXIS 727 (S.D.N.Y. Jan. 13, 2005) .............................. 8

*Koch v. Christie's Intern. PLC*,
   699 F. 3d 141 (2d Cir. 2012) ..................................................................... 16

*Lerman v. Joyce Intern., Inc.*,
   10 F.3d 106 (3d Cir. 1993) ........................................................................... 7

*Lewis v. Lhu*,
   696 F. Supp. 723 (D.D.C. 1988) ................................................................. 7

*Marini v. Adamo*,
   812 F. Supp. 2d 243 (E.D.N.Y. 2011) ...................................................... 23

iv

*Mendoza v. Zirkle Fruit Co.*,
  301 F. 3d 1163 n.4 (9th Cir. 2002) ......................................................... 7

*Morea v. Saywitz*,
  2010 WL 475302 (E.D.N.Y. 2010) ....................................................... 30

*Murphy v. New York State Exec. Dep't*,
  2000 U.S. Dist. LEXIS 5287 (N.D.N.Y. Mar. 27, 2000) ........................ 25

*O'Brien v. Alexander*,
  898 F. Supp. 162 (S.D.N.Y. 1995) ....................................................... 29

*Papasan v. Allain*,
  478 U.S. 265 (1986) ........................................................................ 4, 27

*Planned Parenthood v. Am. Coal. Of Life Activists*,
  945 F. Supp. 1355 (D. Or. 1996) ........................................................... 7

*Polo Fashions, Inc. v. Rabanne*,
  661 F. Supp. 89 (S.D. Fla. 1986) ........................................................... 8

*PPX Enters. v. Audiofidelity Enters.*,
  818 F.2d 266 (2d Cir. 1987) ................................................................ 26

*Rajaratnam v. Motley Rice, LLC*,
  2020 U.S. Dist. LEXIS 52835 (E.D.N.Y. Mar. 26, 2020) .................... 7, 8

*Reich v. Lopez*,
  858 F.3d 55 (2d Cir. 2017) .................................................................. 22

*Ryder v. Platon*,
  2012 WL 2317772 (E.D.N.Y. 2012) ..................................................... 28

*Sadighi v. Daghighfekr*,
  36 F. Supp. 2d 279 (D.S.C. 1999) .......................................................... 7

*Sales v. Barizone*,
  2004 U.S. Dist. LEXIS 24366 (S.D.N.Y. Nov. 29, 2004) ...................... 14

*Smith v. City of Montgomery*,
  2011 U.S. Dist. LEXIS 127136, n.3 (N.D. Ala. Nov. 2, 2011) .............. 28

*Spool v. World Child Int'l Adoption Agency*,
  520 F.3d 178 (2d Cir. 2008) ................................................................ 23

*State Farm Mut. Auto Ins. Co. v. Pointe Physical Therapy, LLC*,
  107 F. Supp. 3d 772 (E.D. Mich. 2015) ................................................ 21

v

*Taylor v. Sullivan,*
    980 F. Supp. 697 (S.D.N.Y. 1997) ....................................................... 28

*Topo v. Dhir,*
    210 F.R.D. 76 (S.D.N.Y. 2002) ............................................................ 28

*Tymoskenko v. Firtash,*
    2015 WL 5505841 (S.D.N.Y. Sept. 18, 2015) ...................................... 19

*United States v. Burden,*
    600 F.3d 204 (2d Cir. 2010) ................................................................ 11

*United States v. Burke,*
    504 U.S. 229 (1992) ............................................................................ 16

*United States v. Davis,*
    2017 U.S. Dist. LEXIS 122643 (S.D.N.Y. Aug. 3, 2017)...................... 21

*United States v. Guglielmi,*
    819 F.2d 451 (4th Cir. 1987) ............................................................... 20

*United States v. Piervinanzi,*
    23 F.3d 670 (2d Cir. 1994) .................................................................. 19

*Villager Pond, Inc. v. Town of Darien,*
    56 F.3d 375 (2d Cir. 1995) ............................................................... 4, 27

*Weldon v. Dyer,*
    2013 WL 2244527 (E.D. Cal. 2013)..................................................... 28

*Westchester Media Co. L.P. v. PRL USA Holdings, Inc.,*
    1998 U.S. Dist. LEXIS 11737 (S.D. Tex. July 2, 1998)......................... 8

*World Wrestling Entertainment v. Jakks Pacific,*
    530 F. Supp. 2d 486 (S.D.N.Y. 2007) ................................................. 23

**Statutes**

18 U.S.C § 1952(b) ...................................................................................... 21

18 U.S.C § 1961(1) ................................................................................ 22, 23

18 U.S.C. § 1512(a)(2) ................................................................................ 18

18 U.S.C. § 1513 ......................................................................................... 18

18 U.S.C. § 1956(a)(1) ................................................................................ 18

18 U.S.C. § 1956(a)(2) ................................................................................ 19

1131301v.1

18 U.S.C. § 1956(a)(2)(A) ................................................................................ 18, 19

18 U.S.C. § 1961(4) ................................................................................................ 10

18 U.S.C. § 1961(5) ......................................................................................... 22, 23

18 U.S.C. § 1962(c) ................................................................................................. 25

18 U.S.C. § 201(b)(3) ............................................................................................. 16

18. U.S.C. 1465 ....................................................................................................... 20

Cal. Penal Code § 137(a) ....................................................................................... 16

Colo. Rev. Stat. Ann. § 18-8-703(1) ..................................................................... 16

N.Y. Penal Law § 215.00 ....................................................................................... 16

RICO § 1964(c) ......................................................................................................... 7

Tex. Penal Code Ann. § 36.05(a) .......................................................................... 16

**Other Authorities**

https://www.law360.com/articles/1279730/fashion-mogul-to-face-more-accusers-in-sex-
    trafficking-case ................................................................................................... 24

**Rules**

FRCP 8 ..................................................................................................................... 19

FRCP 9 ..................................................................................................................... 21

FRCP 9(b) ................................................................................................................ 21

1131301v.1

## PRELIMINARY STATEMENT

Defendant Louis M. Bacon ("Bacon") executed a well-funded and comprehensive scheme with a group of co-conspirators who had a common purpose to ultimately rid the Bahamas of Plaintiff Peter J. Nygård ("Nygård") for their gain, and to damage and destroy Nygård, his fashion brand, his fashion empire, his business, and his property in the United States and around the world. The scheme is on the precipice of succeeding. Nygård brings this case alleging Racketeer Influenced and Corrupt Organizations Act ("RICO") and other causes of action to obtain redress for the pattern of purposeful wrongs that Bacon and others who together form an enterprise did to him. The harm to Nygård includes economic damage and harm to his business reputation that has specific financial consequences within the United States, such as the loss of his ability to earn a living, including the loss of major customers, financiers and business opportunities. Like many courts, this Court has considered this harm to business reputation cognizable under RICO.

Bacon gathered a sordid cast of characters including a private "witness protection program," as detailed in the First Amended Complaint ("FAC"), ECF No. 80. This program of paid-off witnesses includes interstate transportation, direct payments, provision of lodging, and assistance with illegal residence in the United States. In return for the "benefits" of this nefarious program, characters in Bacon's enterprise provided false and damaging statements to the media and to legal authorities about Nygård. Bacon, through an elaborate financial enterprise, using multiple non-profits he founded or funded, arranged for illicit payments to further the purpose of his destruction of Nygård and the ability for him to acquire Nygård's property without proper consideration. These statements, as they were intended, directly caused Nygård's and his business's meteoric fall from a successful fashion empire to their current status, teetering on

1

1131301v.1

financial ruin, shunned by customers, and with some of the entities in receivership. The financial resources upon which Nygård relied for sustenance have been destroyed.

Bacon's Motion to Dismiss the FAC ("Motion") is based on his selective recitation of the FAC's allegations and law at issue. His Motion also relies on this Court turning motion to dismiss standards on their head to view the FAC's factual allegations in *his* favor, and to improperly weigh these allegations at this stage. Under his recasting of the FAC's allegations, he argues that the RICO claim is deficiently pleaded and fails to satisfy the requisite elements to sustain a RICO cause of action. A plain reading of the FAC's allegations under the appropriate standards for a motion to dismiss prove otherwise. The organized, detailed factual allegations in the FAC plead a viable RICO claim, entirely unlike the "garden variety" fraud or defamation claims dressed as RICO claims that typically give courts pause.

Nygård pleads injuries that are cognizable under RICO, and the damage to his business and business reputation confers standing under RICO. The FAC sufficiently alleges that Bacon proximately caused Nygård's injuries, which include domestic injuries. Nygård adequately pleads a RICO enterprise and predicate acts that proximately harmed him, such as bribery, extortion, witness tampering and retaliation, money laundering, production and transportation of obscene matters for sale or distribution, fraud, and the Travel Act. Nygård also sufficiently pleads a pattern of racketeering activity. In sum, the FAC pleads a valid RICO claim.

Bacon's argument against the RICO conspiracy claim fails because the underlying RICO claim is actionable and the FAC sufficiently alleges a related conspiracy. Bacon's remaining argument against the RICO conspiracy claim and his contentions against the FAC's non-RICO causes of action (tortious interference with prospective economic advantage, aiding and abetting the filing of a false report, filing of a false report, trafficking and harboring certain aliens to

further a fraudulent act, and abuse of process) are almost entirely conclusory arguments that merely assert, without explanation, that these claims are insufficiently pleaded. Bacon's conclusory arguments should not be considered by this Court. Even if he had properly lodged challenges to these claims, each claim is adequately pled and supported by factual allegations. Bacon's other argument, to recast several of these common law causes of action as criminal statutory violation claims without a private right of action, is also unavailing. These claims are validly pled common law claims. Bacon's Motion should be denied so this case can properly proceed to discovery and adjudication on the merits.

## PROCEDURAL BACKGROUND

This case was originally filed with three plaintiffs, Peter Nygård, Nygård, Inc., and Nygård International Partnership. As a direct and proximate result of Bacon's misconduct, in March 2020, Nygård, Inc. and Nygård International Partnership were placed into receivership. Opting to focus on the receivership, the receiver dismissed the claims of these entities *without* prejudice. ECF No. 71.

This Court has already had the opportunity to assess the sufficiency of the allegations in the FAC. On July 24, 2020, over Bacon's opposition, this Court permitted Nygård to file the FAC. This Court found that the FAC was neither "indiscernible" nor "unintelligible." Memorandum and Order, ECF No. 79, at 7. This Court found that the FAC was not "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Id*. at 8. This Court added that it:

> finds that the allegations in the proposed amended complaint are not immaterial and irrelevant to the plaintiff's claims as the defendant contends so as to warrant denial of the motion. Despite its length, and in light of the heightened pleading standard governing civil RICO claims sounding in fraud, the Court finds that the amended complaint contains allegations that, although lengthy, are sufficiently relevant, clear and specific as to provide fair notice to the defendant about the claims against him.

*Id*. at 9.

**ARGUMENT**

In considering a motion to dismiss a complaint for failure to state a claim, a court must view the factual allegations in the complaint in the light most favorable to the plaintiff, and those allegations must be presumed to be true. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). On a motion to dismiss, a Court should not weigh the evidence before it. *See Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995).

**I.   The FAC Properly States a RICO Claim (Count I)**

**A.   Nygård's Injuries are Cognizable Under RICO**

The name "Nygård" has been associated with a successful fashion business empire for decades. Due to the racketeering activity of Bacon, that name has been irrevocably damaged. The name "Nygård," of course, was not created out of thin air; it is the surname of Plaintiff Peter Nygård. In reality, "Nygård" the person and "Nygård" the fashion brand are indistinguishable. FAC ¶ 838(j), quoting the media as stating "Nygård and his fashion brand are virtually one and the same…The two are indivisible." Therefore, damage to the reputation of the person "Nygård" is also damage to the business brand "Nygård." As illustrated by the facts alleged in the FAC, a smear campaign directed to the *personal* character of Peter Nygård tarnished Nygård's *business* reputation to such a degree that it felled the Nygård business empire. *E.g.,* FAC ¶¶ 509, 513, 546, 605, 606, 815, 869, 870, 905, 923-924, 927-928. As explained below, the damage to the business reputation of Nygård is actionable under RICO and, because of the equivalence of the value of the fashion brand with the reputation of the person, the damage to the fashion brand and its

4

resultant consequences are also actionable under RICO. Moreover, prior to the impact of Bacon's actions, Nygård personally benefitted from the use of his name, image and likeness, as well as his signature.[1] The destruction to the Nygård name has rendered any efforts to trade upon Nygård's name and image impossible. *E.g.,* FAC ¶¶ 924-930.

### 1.   Damage to Nygård's Business and Business Reputation Confers RICO Standing

This Court has explained that when a RICO defendant's conduct is "explicitly tie[d to] the reputational" harm experienced by a plaintiff, the reputational harm is "cognizable under RICO." *Dandong Old North-East Agric. & Animal Husbandry Co. v. Gary Ming Hu*, 2017 U.S. Dist. LEXIS 122471, *26 n.6 (S.D.N.Y. Aug. 3, 2017). The *Dandong* court distinguished that case from other cases where courts found that reputational harm was not cognizable under RICO by explaining that, in those cases, "the facts alleged made it difficult to discern whether the plaintiff's reputation was directly harmed as a result of any alleged RICO scheme rather than 'other factors.'" *Id.* In other words, these cases failed on the issue of proximate cause, not on the issue of RICO injury.

Here, the FAC alleges that Nygård's reputation, both personal and business, the fashion brand and business empire were harmed as the proximate result of Bacon's scheme. *E.g.,* FAC ¶¶ 509, 513, 546, 605, 606, 815, 869-870, 905, 923-924, 927-928. For example, the FAC alleges that Bacon paid and encouraged witnesses to provide false statements about Nygård that were

---

[1] "Peter Nygård" and "Nygård" and Nygård's signature are registered trademarks which underpinned brands that were sold. FAC ¶ Intro. (i), 1. Nygård's image emblazoned numerous ads and clothing. Accordingly, it is clear that Nygård's name, likeness, image and signature had significant value. *E.g.,* FAC ¶ 1, 511. As a result of Bacon's and the enterprise's acts, the value from past and future use of Nygård's publicity rights has been totally destroyed. Further evidence of this wrongdoing and its impact have come to light after the filing of the FAC. If this Court determines that additional or more refined allegations would be useful or necessary to support the claims in the FAC, Nygård stands ready to do so and accordingly seeks leave to further amend the FAC.

publicized and directly caused actual and prospective customers of Nygård to not purchase Nygård-branded fashion products. *E.g.,* FAC ¶¶ 825-827, 924. These publicized false statements caused Dillard's, a major department store, to cease carrying Nygård-branded products. *E.g.,* FAC ¶¶ 814, 825-826, 838. As these allegations make clear, Bacon's destruction of Nygård's name has rendered him unable to trade upon his name and reputation. There are no other intended victims of the false statements made about Nygård, and no other alleged factors that contributed to the customers, including Dillard's, ceasing their business with Nygård-branded products. Dillard's attributed its decision not to continue selling the Nygård brand directly to the Bacon-procured statements about Nygård personally: "In light of the serious allegations concerning Peter Nygård, which are in direct opposition to our core values, Dillard's has refused current deliveries, cancelled all existing orders, and suspended all future purchases from Nygård." FAC ¶ 826.

Similarly, the public attack orchestrated by Bacon, and Dillard's causally related termination of business, thrust the Nygård business empire into receivership when a secured lender called its loan. FAC ¶ 815. Media statements evidence that this too is attributable directly and solely to the false accusations that Bacon procured about Nygård: "The claims against the Lyford Cay resident, which he has vehemently denied, were cited by the Nygård Group's lenders as a key factor behind their decision to successfully petition the courts for the appointment of a receiver over business interests he has spent decades building." FAC ¶ 838(b).

This Court is not alone in its holding that reputational harm, particularly business reputational harm, is cognizable under RICO. Many district and circuit courts from around the country have similarly held. For example:

- *Clark v. Stipe Law Firm, L.L.P.*, 320 F. Supp. 2d 1207, 1213-14 (W.D. Ok. 2004) (finding RICO standing based on harm to plaintiff's professional reputation and differentiating

6

other cases that did not find RICO standing by explaining that the other cases were not about *professional* reputation, or were deficient on causation, not injury);

•   *Sadighi v. Daghighfekr*, 36 F. Supp. 2d 279, 290 (D.S.C. 1999) (RICO standing found based on injury to professional reputation);

•   *Alexander Grant & Co v. Tiffany Indus., Inc.*, 770 F.2d 717, 719 (8th Cir. 1985) (same);

•   *Lewis v. Lhu*, 696 F. Supp. 723, 727 (D.D.C. 1988) (same);

•   *Cement-Lock v. Gas Tech. Inst.*, 2005 U.S. Dist. LEXIS 22058, *43 (N.D. Ill. Sep. 30, 2005) ("Although an injury to one's *personal* reputation generally is not an injury to "business or property" under RICO § 1964(c), an injury to a plaintiff's *business* reputation, resulting in concrete economic, contractual, or business losses is compensable under RICO.") (emphasis in original);

•   *Lerman v. Joyce Intern., Inc*., 10 F.3d 106, 113 (3d Cir. 1993) (noting that the "court found that Lerman's scheme had imperilled LOPC's reputation and had exposed it to civil and perhaps even criminal liability");

•   *Khurana v. Innovative Health Care Sys*., 130 F.3d 143, 150 (5th Cir. 1997) (finding plaintiff "pleaded injury proximately resulting from the defendants' violations of § 1962(b) and § 1962(c) when he asserted the injury of business reputation harm").

Additionally, decreased business volume, as experienced by Nygård and his business empire due to Bacon's actions, FAC ¶¶ Introduction ("Intro.") (iii), 825-27, which relied upon his brand, is a concrete loss and is cognizable under RICO. *See, e.g., Planned Parenthood v. Am. Coal. Of Life Activists*, 945 F. Supp. 1355, 1381 (D. Or. 1996); *Mendoza v. Zirkle Fruit Co*., 301 F. 3d 1163, 1168 n.4 (9th Cir. 2002) (what is required for standing is the showing of interference with a "legal entitlement to business relations unhampered by schemes prohibited by the RICO predicate statutes"). Certainly, Nygård now is irreparably harmed by being unable to trade upon his once valuable name, image and likeness.

The cases Bacon cites for the proposition that reputational harm is not cognizable under RICO are all distinguishable from the facts here. In *Rajaratnam v. Motley Rice, LLC*, 2020 U.S. Dist. LEXIS 52835 (E.D.N.Y. Mar. 26, 2020), the claim failed because "reputational harm *alone*,

cannot support a" RICO claim and the court did not credit allegations regarding financial harm. *Id.* at \*49-50 (emphasis added). Here, the harm to Nygård's reputation is alleged alongside concrete allegations of financial harm.[2] *E.g.,* FAC ¶ 924, alleging millions of dollars in damages. Further, in *Kimm v. Lee*, 2005 U.S. Dist. LEXIS 727, \*11-12 (S.D.N.Y. Jan. 13, 2005) and *Ctr. For Immigration Studies v. Cohen*, 410 F. Supp. 3d 183, 191 (D.D.C. 2019), the courts found that plaintiffs had not adequately alleged any predicate acts and the defendant's alleged wrong was only defamation, which is not cognizable under RICO. Here, the FAC adequately pleads numerous RICO predicate acts that are the proximate and actual cause of Nygård's injuries. *E.g.,* FAC ¶¶ 854-905. Standing under RICO is therefore established in this case.[3]

### 2. Bacon's Actions are the Proximate Cause of Nygård's Injury

The Supreme Court has explained in the context of a RICO case that proximate cause "is a flexible concept that does not lend itself to a black-letter rule that will dictate the result in every case." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 654 (2008) (citations omitted). Further, "when a court evaluates a RICO claim for proximate causation, the central question it

---

[2] In the fashion business, like many other businesses, a name brand encompasses significant good will (consider, Ralph Lauren, Calvin Klein, and others). *See, e.g., Polo Fashions, Inc. v. Rabanne*, 661 F. Supp. 89, 95 (S.D. Fla. 1986) (finding that "Defendant's selection of identical trademarks to the POLO BY RALPH LAUREN and Polo Player Symbol is evidence of an intent to trade upon the reputation and good will of Polo"); *Westchester Media Co. L.P. v. PRL USA Holdings, Inc.*, 1998 U.S. Dist. LEXIS 11737, \*44 (S.D. Tex. July 2, 1998) (concluding that "Westchester hoped to align itself with Ralph Lauren's image with the resultant 'trade' on [Polo Ralph Lauren]'s good will"). Here, Nygård's name and image are his stock in trade, as well as his businesses. He will now forever be unable to trade upon his name.

[3] Standing is similarly conferred because of the fees that Nygård expended to defend himself against the various criminal investigations and civil litigation Bacon caused to be brought. Bacon's suggestion that Nygård has not experienced financial loss due to defending himself in these proceedings (Mot. at 11) defies reality. Certainly, the defenses mounted by Nygård have reached into the millions of dollars. Further, as explained herein, Nygård suffered domestic injury, directly caused by Bacon's actions, which include financing the lawsuits and instigating the criminal investigations.

must ask is whether the alleged violation led directly to the plaintiff's injuries." *Id*. Significantly, in *Bridge* there were "no independent factors that account[ed] for [the] injury." *Id*. at 658.

Here, the line drawn from Bacon's actions to Nygård's injuries is straight and direct. The damage to Nygård's reputation, his brand and business was always the intended result of the complained of conduct. Bacon failed to identify the existence of any "independent factors," much less any alleged in the FAC, which could, *absent Bacon's own actions*, account for Nygård's injuries. Bacon's actions are therefore the proximate cause of Nygård's injuries, as alleged in the FAC.

### 3.   Nygård Suffered a Domestic Injury

*Bascunan v. Elsaca*, 874 F.3d 806 (2d Cir. 2017), is the leading Second Circuit case addressing whether a RICO injury is experienced domestically. That court explained that a domestic injury exists when the damaged property is located within the United States, regardless of the place where plaintiff resides. *Id*. at 810. A case Bacon cites summarizes the *Bascunan* holding succinctly: "If the plaintiff has suffered an injury to his or her property, the court should ask where the plaintiff parted with the property or where the property was damaged." *Dandong*, 2017 U.S. Dist. LEXIS 122471, *29. Thus, since the FAC alleges damage to Nygård's property, Nygård's place of residence is not determinative.

In this case, Bacon's actions damaged Nygård's domestic and international business reputation. *E.g.,* FAC ¶ 924. That includes his business reputation in the United States. Nygård also suffered damage to his tangible property within the United States. *E.g.,* FAC ¶¶ 1, 924. For example, when Dillard's dropped the Nygård clothing account, as a direct effect of Bacon's actions, Nygård was injured in the United States. FAC ¶ 924(5). *See* also https://www.dillards.com/stores, listing over 100 locations within the United States (last visited

Oct. 6, 2020). Moreover, as the U.S. is a leader in consumer fashion, Nygård's brand has forever been foreclosed from a significant market, causing him enormous damage that will continue.

The cases Bacon cites are inapposite to the facts here. In *Dandong*, the injury was felt only in China, as the commodity at issue was shipped outside of the United States. *Id.*, 2017 U.S. Dist. LEXIS 122471, *33. The case of *Armada (Singapore) PTE Ltd. v. Amcol Int'l Corp.*, 885 F.3d 1090, 1095 (7th Cir. 2018), only involved an intangible injury to a bundle of litigation rights, and an intangible injury is only felt at the place of residence, as opposed to the tangible injury Nygård suffered here, which (as explained above) is not tied to a place of residence. Bacon misreads another case, *Elsevier Inv. v. Grossman*, 2017 U.S. Dist. LEXIS 182859, *11 (S.D.N.Y. Nov. 3, 2017), which found a domestic injury because plaintiff "suffered the effects of [defendant's] conduct in the States."

### B.  Nygård Adequately Pled the Existence of a RICO Enterprise

The FAC alleges that Bacon is the mastermind of a scheme that caused Nygård's damages. *E.g.,* FAC ¶¶ Intro. (ii), 852. Bacon has worked with a large network of individuals and organizations, associated in fact, to form an enterprise. Each of these associations share the common purpose of destroying Nygård, functions as a unit, and has engaged in actions that persisted for at least ten years. In other words, Bacon and his associations form an enterprise. Bacon isolates two paragraphs of the FAC to argue that Nygård has not properly alleged an enterprise. Mot. at 14-16, citing only FAC ¶¶ 908 and 909. Bacon's narrow argument, citing a tiny fraction of the FAC and ignoring the rest, is unavailing.

An "enterprise" for RICO purposes is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The Supreme Court has explained that

10

RICO associations-in-fact need exhibit only three structural features: (1) a shared purpose; (2) relationships among the associates; and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose. *Boyle v. U.S.*, 556 U.S. 938, 956 (2009).

Following *Boyle*, courts analyze each of these three factors in determining whether an association-in-fact is an enterprise for RICO purposes. In one case, *Equinox Gallery Ltd. v. Dorfman*, 306 F. Supp. 3d 560, 573 (S.D.N.Y. 2018), the court found the existence of an enterprise when (1) the players shared the common purpose of selling art for profit, (2) each player had a defined purpose with respect to the others, and (3) the enterprise lasted for over six years. In another, *United States v. Burden*, 600 F.3d 204, 215 (2d Cir. 2010), the court found that a group formed an enterprise when it (1) had multiple members joined in a shared purpose of selling drugs, (2) had a relationship among the associates, and (3) had longevity, despite the head's two-year stint in prison because he had conducted his business from prison.

Here, the alleged facts meet the same three factors: there is a (1) shared purpose, (2) relationship between the associates and (3) longevity. First, the shared purpose is to destroy Nygård and his business.[4] This purpose is shared by Bacon and the other associates in the enterprise, as illustrated by statements made by primary actors about destroying Nygård. *E.g.*, FAC ¶¶ 23 (alleging that Zack Bacon stated he would destroy Nygård); 64 (alleging that Fred Smith acted in "his own capacity" to contribute to the destruction of Nygård). The shared

---

[4] The enterprise started out by sharing a stated common purpose to rid the Bahamas of Nygård. *E.g.,* FAC ¶¶ Intro. (ii), 275, 553. While Bacon wanted to take over Nygård's property (*e.g.,* FAC ¶¶ 867, 870, 968), he and others involved in a charity he founded "Save The Bays," along with other co-conspirators identified in the FAC, wanted to remove Nygård from a certain neighborhood. This purpose was later expanded to the United States, where the common purpose was to "bring down Peter Nygård" the same way that the media took down Harvey Weinstein. FAC ¶ 484.

11

purpose of destroying Nygård is demonstrated by the FAC's allegations and the associations were not merely in pursuit of their own financial gain, as claimed by Bacon. Mot. at 16-17.

Second, there is a relationship alleged between the associates of the enterprise. For example, the charity known as Sanctuary and the non-profit organizations Waterkeepers, Save The Bays and Moore Charitable Foundation ("MCF"), all of which Bacon and/or his agents or co-conspirators are associated with, either as founder, primary contributor, or officer and/or director, are used to inappropriately funnel funds and support people who make false statements against Nygård, through the money-laundered payment of bribes and other support. *E.g.,* FAC ¶¶ 6, 135, 150. As another example, Fred Smith, both the lawyer for Bacon and various charities set up by or through Bacon, is alleged to have arranged for or paid monies to various players in the enterprise, through this scheme. FAC ¶¶ 71, 75. The FAC is replete with allegations demonstrating the pervasive association of the primary actors functioning as one unit to destroy Nygård. FAC ¶¶ 847-907. Some examples of this are:[5]

| | |
|---|---|
| Dating back to July 2014, Stephen Feralio entered into an agreement with Belvedere Property Management and Wilson Mesa, separate legal entities owned and operated by Bacon whereby Stephen Feralio gave confidential information about Nygård to Bacon and who began procuring false statements against Nygård from witnesses in furtherance of the common interest to destroy Nygård. | FAC ¶¶ 193-207, 609, 610-615 |
| Fred Smith (the managing partner) and Doneth Cartwright, attorneys at the Callenders & Co. law firm, used the firm to authorize, direct and arrange for the swearing of false witness statements, and the presentation of false statements to the United States authorities, including the Department of Homeland Security and the FBI. The same attorneys arranged for women to meet with a Florida attorney who eventually would become counsel of record in a 2020 lawsuit commenced by Jane Does against Nygård in the United States District Court for the Southern District of New York, and further arranged for women to have legal counsel, and their expenses paid, for meetings held with the authorities in New York whereat the women would repeat their false | FAC ¶¶ 292-318, 908, 914 |

---

[5] For ease of reference for this Court, annexed as Appendix 1 is a chart further illustrating how the FAC's factual allegations demonstrate that the FAC adequately pleads RICO enterprise and the related association-in-fact.

| | |
|---|---|
| statements about Nygård. These same people also arranged for stories to be publicized to the media for purposes of "bringing down" Nygård. Fred Smith was also legal counsel to the non-profit organization Save The Bays and affiliated with Waterkeeper Alliance and used his role in these organizations, along with Bacon, to illicitly funnel money through those organizations to fund the witness protection program and bribe witnesses. | |
| The investigative firm of Palladino & Sutherland, through Sara Ness and Jack Palladino and others, was part of Bacon's scheme to conduct a private witness protection program designed in part to coerce individuals to provide false sworn testimony about Nygård in an effort to destroy and damage Nygård, and in an effort to wrongly initiate legal proceedings against Nygård. Palladino & Sutherland attempted to coerce Bianca McKinney to provide false sworn statements against Nygård, by among other things, instituting a false litigation against Nygård. Palladino & Sutherland arranged for Stephen Feralio to join Bacon's witness protection program, knowing he would violate his duties to Nygård or businesses associated with Nygård so that Feralio would assist in procuring people to make false statements about Nygård. Palladino & Sutherland arranged for other witnesses identified in the FAC to travel to the United States and be compensated for, on a perpetual basis, their knowingly false statements. | FAC ¶¶ 319-354 |
| D&R Agency LLC used funds provided by Bacon or his agents through an intricate improper financial scheme to pay Wisler Davilma ("Bobo") and Livingston Bullard ("Toggi") significant sums of money, including cash, in an attempt to implicate Nygård in a murder for hire scheme and encourage the making of false statements against Nygård. Bank accounts in various countries were set up and used to facilitate payments to Bobo and Toggi. On or about February 5, 2015, expense money was furnished to Bobo and Toggi and in May 2015, Bobo and Toggi were paid through agents of Bacon at least $250,000 for their services in manufacturing "evidence" regarding Nygård. | FAC ¶¶ 369-381, 409, 621-641, 933 |
| O'Keefe Tatigian Investigative Agency, through Gary Marchetti and Mark Tobias, threatened and coerced individuals from 2018 to present to facilitate witnesses to join and provide false testimony against Nygård in the Jane Doe class action filed in 2020 and continuing, and to make false statements to the authorities. | FAC ¶¶ 417-436, 874 |
| Jeff Davis, acting through TekStratex, ran the witness protection program that was paid by Zack Bacon with funds provided by or through Bacon or his assets/holdings. | FAC ¶¶ 443-455 |

Indeed, the enterprise requires all of its various actors and other players to function and to carry out its purpose; the enterprise's members, by necessity, function as a "unit." *See* Mot. at 15, citing *First Capital Asset Mgmt., Inc. v. Satinwood, Inc*., 385 F.3d 159, 174 (2d Cir. 2004). Through the careful coordination between Bacon, Zack Bacon, Fred Smith and Robert F. Kennedy, Jr., and others, these actors and entities functioned as a 'unit' with a shared purpose. The relative role and each parties' operations within that enterprise is best left for discovery, not

dismissed at the pleading state. *Sales v. Barizone*, 2004 U.S. Dist. LEXIS 24366, *60-61 (S.D.N.Y. Nov. 29, 2004) ("the court need not address the merits of the [] allegations on this motion to dismiss. It is sufficient that [plaintiff] has asserted a colorable claim…At the very least, [plaintiff's] allegations warrant further discovery.")

Without, for example, the charities and other non-profit organizations, the enterprise would have no way of laundering money and funneling it to those who made false statements regarding Nygård. *E.g.,* FAC ¶¶ 6, 97, 99, 134, 150. Without intermediaries such as Fred Smith, Callenders Law Firm (and agents such as Richette Ross), D&R Agency, Palladino & Sutherland, and O'Keefe Tatigian and others, the enterprise would not have found people willing to make false statements for money and would not have been able to pay those people. *E.g.,* FAC ¶¶ 71-76, 301-302, 326, 370, 379, 425, 519. The various people involved in the enterprise are therefore not "unconnected individuals without [] any relationship among them." Mot. at 15.

Third, the FAC alleges that the enterprise's actions have persisted for ten years. *E.g.,* FAC ¶ Intro. (ii), page 100 ("The More Than Ten Year Conspiracy to Damage Plaintiff Continues"). Thus, the FAC adequately pleads all three requirements to show a RICO enterprise. At the very least, the FAC pleads sufficient facts regarding each requirement to warrant further discovery into the various roles and actions of all of the enterprise's players; this case should therefore not be dismissed at the pleading stage. *DeFalco v. Benas*, 244 F.3d 286, 309 (2d Cir. 2001) (the relative role and each parties' operations within that enterprise is best left for discovery, not dismissed at the pleading state).

Bacon mentions, but does not elaborate on or argue the point, that a RICO enterprise must exist "separate and apart from the pattern of activity in which it engages." Mot. at 14. Here, for example, the private witness protection program exists separate from the pattern of activity in

1131301v.1

which it engages. The program provides money and lodging, and, in some cases, shelter for illegal aliens in the United States. *E.g.,* FAC ¶¶ 107, 219, 224, 652, 656-657, 690, 719, 822. The program is supported by Bacon, has its funding provided by the many involved charities and non-profit organizations (*e.g.*, Sanctuary and Save The Bays), and has many beneficiaries. *Id.* This meets the Second Circuit requirement of an existence apart from the racketeering activity. *See also Equinox*, 306 F. Supp. 3d at 571 ("while the enterprise must exist separate and apart from the pattern of activity in which it engages, the proof used to establish these separate elements may in particular cases coalesce").

### C.  The FAC Adequately Pleads Predicate Acts that Proximately Harmed Nygård

Nygård has alleged numerous predicate acts of racketeering activity on the part of Bacon's enterprise, including bribery (FAC ¶¶ 71-76, 156-157, 159 167, 177-178, 183, 185, 212, 214, 219, 221 231, 233-234, 240, 242-243, 300-302, 324, 326, 345, 348, 370, 547-548, 566, 570-572, 738-742, 824, 832(c), 890, 902-903, 916-917); money laundering (FAC ¶¶ Intro. (ii), 5-6, 85, 87-88, 97-99, 133-135, 150, 822, 839-840, 891, 918); fraud in foreign labor contracting (FAC ¶¶ 645-47, 712-14, 858-862); witness tampering and retaliation (FAC ¶¶ 300, 425, 570-579, 638-639, 673, 742, 823-824, 834(d), 836, 880-882); transportation of obscene matters for sale or distribution (FAC ¶¶ Intro. (iii), 605-606, 760-761, 823, 875-876); fraud (FAC ¶¶ 529, 545-546, 645-647, 682, 712-714, 858-862, 896-897); a Travel Act (FAC ¶¶ 889-890); peonage (FAC ¶¶ 883-884, 887-888); forced labor (FAC ¶¶ 885, 887-888); harboring aliens (FAC ¶¶ 898-900, 912); and unlawful employment of aliens (FAC ¶ 901). Concerning five of these predicate acts, Bacon makes conclusory statements that, since these acts do not concern a false statement about Nygård, they cannot be relied on to support the RICO claim because they fail on the element of proximate cause. Mot. at 17.

But this case is not merely about Bacon's false statements about Nygård. Instead, this is an action regarding a pattern of illicit and illegal conduct designed to improperly influence witnesses to make false statements, file false reports, abuse process, tortiously interfere with business relations and aid and abet the dissemination of false statements in conjunction with destroying property rights in copyrighted works, trademarks and rights of publicity and promotion, all for the intended purpose of damaging Nygård, his goodwill, his business and property. *E.g.,* FAC Intro. (i). All the predicate acts pleaded were done to further these intended purposes and contributed to Nygård's damages.

Further, since Bacon does not make substantive arguments regarding five predicate acts (peonage, forced labor, harboring aliens, unlawful employment of aliens, and fraud in foreign labor contracting), this Court must conclude that Nygård has adequately pled these acts. *Koch v. Christie's Intern. PLC*, 699 F. 3d 141, 145 (2d Cir. 2012) (construing facts in favor of plaintiff at the motion to dismiss stage); *United States v. Burke*, 504 U.S. 229, 242 (1992) (Scalia, J., concurring) (courts will consider unargued points as waived). Bacon also does not make the same proximate cause argument regarding the remaining predicate acts, implicitly admitting that those predicate acts are the proximate cause of Nygård's injuries. Thus, Nygård does not need to address the conceded proximate cause aspect of the remaining predicate acts.

### 1. Nygård Adequately Pleads Bribery

The various federal and state bribery statutes cited in the FAC (*e.g.,* ¶ 854) require two basic elements: (1) the offer of a benefit to a witness and (2) the agreement or understanding that the witness's testimony will be influenced by such benefit. *See* N.Y. Penal Law § 215.00; Colo. Rev. Stat. Ann. § 18-8-703(1); Tex. Penal Code Ann. § 36.05(a); Cal. Penal Code § 137(a); 18 U.S.C. § 201(b)(3). Much of the scheme described in the FAC describes exactly these two

1131301v.1

elements: many players in the enterprise were offered the benefit of money and/or participation in the private witness protection program, in exchange for false testimony concerning Nygård.

Bacon mentions various other elements, purportedly to explain how Nygård's allegations do not meet the required standards. But, the allegations in the FAC meet all of these elements:

| Element Bacon Mentions (Mot. at 18) | Sample Allegation in FAC Meeting this Element |
|---|---|
| A person who is a witness or about to be called as a witness in an action or proceeding | FAC ¶ 824 (the various Jane Does are all possible witnesses who may be called to support the allegations made in the putative class action) |
| The action or proceeding must be federal | FAC ¶ 300 (the putative class action is pending in federal court) |
| The alleged bribe must be linked to an intent to influence testimony | FAC ¶ 824 (alleging that Bacon influenced the filing of and allegations in putative class action) |
| Facts that suggest an agreement or understanding that the witness's testimony will be influenced | FAC ¶ 76 (alleging that Litira Fox and Richette Ross accepted money and arranged for women to lie about Nygård) |
| Explanation of what testimony was obtained, what item of value was exchanged, or what promises were made | FAC ¶¶ 570, 571 (alleging that part of the enterprise was to pay women to make up stories about Nygård) |

Moreover, the FAC adequately alleges claims of bribery, such as Jestan Sands, Bianca McKinney, Livingston Bullard, Wisler Davilma, Richette Ross, Philincia Cleare, Tazhmoye Cummings and Samantha Storr, and others, being paid or otherwise compensated to influence them to, among other things, fabricate evidence and participate in numerous lawsuits. Examples include: payments made by Fred Smith to Richette Ross to work on a potential lawsuit against Nygård regarding alleged workplace abuses and to find alleged victims to lie about sexual encounters with Nygård (FAC ¶¶ 72-76, 738), payments to Jestan Sands on behalf of Bacon to carry out his scheme to destroy Nygård, including assisting in the extortion of Nygård (FAC ¶¶ 212, 214), payments and threats to Bobo and Toggi who were coerced to provide false statements for use in Bacon's scheme designed to destroy and damage Nygård (FAC ¶¶ 233, 242) and payments made on behalf of Bacon to Samantha Storr, Philincia Cleare, and Tazhmoye

17

Cummings for false statements which were used against Nygård (FAC ¶¶ 156, 178, 183).[6]

### 2. The FAC Sufficiently Pleads Witness Tampering and Retaliation

Nygård has pled that Bacon violated 18 U.S.C. § 1512(a)(2) and 18 U.S.C. § 1513 through tampering with and retaliating against a witness, victim, or an informant. FAC ¶¶ 300, 570-579, 638-639, 823-824, 836. Bacon argues that these predicate acts require bodily injury or property damage and asserts that Nygård has not alleged that element. Mot. at 20. However, the FAC does make this allegation, for example when it alleges that Bacon threatened potential witnesses that the enterprise would cut off sustenance, coercion of witnesses by Bacon's investigators, and reporting of Philincia Cleare to the police by witness protection guards to ensure she remained adherent to the witness protection program's goals. FAC ¶¶ 673, 742, 881. This conduct permeates the witness protection program and applies to the putative class action filed in federal court. Further, the pending putative class action litigation is federal, cutting off Bacon's other argument. Mot. at 20.

### 3. The FAC Adequately Pleads Money Laundering

Nygård asserts allegations sufficient to meet the requirements of both domestic and international money laundering under 18 U.S.C. § 1956(a)(1) and 18 U.S.C. § 1956(a)(2)(A), as specifically outlined in the FAC. *E.g.*, FAC ¶¶ Intro. (ii), 6, 85, 87, 97-99, 133-135, 822, 839-840, 891, 918. With respect to domestic money laundering, Nygård's case is distinguishable from the cases Bacon cites because those cases alleged only conclusory facts as identification for the "specified unlawful activity that generated proceeds," *see Tymoskenko v. Firtash*, 2015 WL

---

[6] For ease of reference for this Court, attached as Appendix 2 is a chart further illustrating how the FAC's factual allegations demonstrate that the FAC adequately alleges the predicate acts supporting Nygård's RICO claims. Once discovery proceeds, Nygård anticipates eliciting evidence of additional people who were offered consideration in exchange for false statements.

5505841, *6 (S.D.N.Y. Sept. 18, 2015); *Jus Punjabi, LLC v. Get Punjabi Inc.*, 2015 WL 2400182, *8 (S.D.N.Y. May 20, 2015). Nygård alleges in numerous places that Bacon engaged in many acts of money laundering, specifically through his charities, including MCF and Sanctuary, and affiliated non-profit entities, including Waterkeepers and Save The Bays, to generate funds to damage and destroy Nygård and his business and property. *E.g.*, FAC ¶¶ 6, 135, 150. Moreover, money laundering allegations do not fall within the ambit of Rule 9 of the Federal Rules of Civil Procedure, and thus, the pleading standard for money laundering is low. *Allstate Ins. Co. v. Afanasyev*, 2016 U.S. Dist. LEXIS 19084, *29 (E.D.N.Y. Feb. 11, 2016). While further details of the money laundering will be identified during discovery, including exact amounts and transactions, the facts alleged by Nygård meet the requirements of FRCP 8, and warrant denial of the Motion.

The FAC also adequately pleads international money laundering. The statute requires a foreign transaction intended to "promote the carrying on of specified unlawful activity." 18 U.S.C. § 1956(a)(2)(A). By contrast with the domestic money laundering statute, § 1956(a)(2) contains no requirement that "proceeds" first be generated by unlawful activity, followed by a financial transaction with those proceeds, for liability to attach. Instead, it penalizes an overseas transfer (i.e., one in which the money either originates in or is transferred to the United States from or to a foreign state) "with the intent to promote the carrying on of specified unlawful activity." §1956(a)(2)(A); *United States v. Piervinanzi*, 23 F.3d 670, 680 (2d Cir. 1994). Here, the FAC discusses the Bahamian entities Waterkeepers and Save The Bays and alleges that funds funneled through these entities were used to pay some of the players in the enterprise. *E.g.*, FAC ¶¶ 5, 134-135. By necessity, because many of the players involved in the conspiracy reside within the United States, including many of the Jane Does in the putative class action lawsuit,

and TekStratex, at least some of the international transfers of money originated in the Bahamas (or traveled from the U.S. and through the Bahamas) and were transferred to the United States, as required by the statute.[7] As with domestic money laundering, further details will be adduced during discovery. Nygård's allegations of money laundering in the FAC, including those in FAC ¶¶ Intro. (ii), 6, 85, 87, 97-99, 133-135, 822, 839-840, 891, and 918, are sufficient.

### 4. The FAC Adequately Pleads Production and Transportation of Obscene Matters for Sale or Distribution

The FAC states a pornography predicate act under 18. U.S.C. § 1465. *E.g.,* FAC ¶¶ 875-876. Contrary to Bacon's assertions, Mot. at 23, Nygård does allege harm to his business or property arising from this predicate act, specifically outlined in FAC ¶¶ Intro. (iii), 605-606, 760-761, 823. Moreover, that Bacon did not distribute actual pornography is inapposite as the statute does not require "pornographic" material and only requires material that would appeal to the prurient interest of an average person. *See United States v. Guglielmi*, 819 F.2d 451, 454 (4th Cir. 1987). Nygård's allegations contained in the FAC therefore implicate obscenity under the statute. Further, this predicate act injured Nygård by setting off the putative class action lawsuit, which toppled Nygård's business. FAC ¶¶ 824, 838(g)-(h), 846.

### 5. The FAC Adequately Pleads Fraud

The FAC's factual allegations demonstrate that Nygård has met his burden in pleading the predicate act of fraud, which renders his RICO claims sufficient to survive dismissal. *E.g.,* FAC ¶¶ 545-546. Moreover, Nygård's other claims sounding in fraud, including foreign labor contracting (FAC ¶¶ 645-647, 712-714, 858-862) and interstate transportation of stolen goods or

---

[7] The FAC specifically alleges that Bahamian lawyer Doneth Cartwright, Fred Smith's associate, arranged for a transfer of funds for the women in the witness protection program. FAC ¶ 316. In addition, the use of Sanctuary, a Bahamian charity, to fund the women making false statements and women bringing the putative class action, also meets this standard. FAC ¶¶ 6, 829, 834.

goods taken by fraud (FAC ¶¶ 896-897) are sufficient to provide Bacon with notice of the claims brought against him, which is the purpose of the heightened pleading standard of FRCP 9. *See State Farm Mut. Auto Ins. Co. v. Pointe Physical Therapy, LLC*, 107 F. Supp. 3d 772, 788 (E.D. Mich. 2015) (in denying dismissal of RICO claim, explaining that Rule 9(b) only requires pleading sufficient detail to allow the defendant to prepare a responsive pleading).

With respect to Nygård's mail and wire fraud claims: "The essential elements of both [mail and wire fraud] offenses are (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme." *United States v. Davis,* 2017 U.S. Dist. LEXIS 122643, *23 (S.D.N.Y. Aug. 3, 2017) (citations omitted). Bacon asserts that the FAC does not allege fraud because it does not allege a scheme for "obtaining property." Mot. at 24. Again, Bacon has "overlooked" statements in the FAC that evidence Bacon's "obtaining property" from Nygård. For example, the FAC alleges that Bacon, via fraud, obtained Nygård's property from Stephen Feralio. FAC ¶ 897 (alleging, with specificity, exactly which property of Nygård's was taken via fraud by Bacon and his enterprise); *see also* FAC ¶¶ 529 (one of the goals to coerce Nygård to get out of Nygård Cay was to allow Bacon to take over the property), 682 (Tazhmoye Cummings extorted Nygård for $5,000 at the behest of Bacon).

**6.  The FAC Sufficiently Pleads a Travel Act Predicate Act**

Based on his misreading of the FAC, Bacon argues that the underlying "unlawful activity" of bribery, money laundering, and extortion are not properly pled, and therefore the Travel Act, which depends on the "unlawful activity," is also not properly pled. Mot. at 24. But as explained above, the FAC adequately pleads the predicate acts of bribery, money laundering and extortion, and therefore also adequately pleads a violation of the Travel Act, 18 U.S.C § 1952(b). *See* FAC ¶¶ 889-890.

**D.      The FAC Adequately Pleads a Pattern of Racketeering Activity**

Under RICO, an actionable "pattern of racketeering activity" must at a minimum be made up of two or more predicate racketeering acts committed within a ten-year span. *Aviles v. S&P Global, Inc.,* 380 F. Supp. 3d 221, 266 (S.D.N.Y. 2019); *see also* 18 U.S.C § 1961(1), (5). Here, Nygård has adequately pled well more than two predicate racketeering acts in support of his RICO action that have spanned at least a decade. Additionally, in order to constitute a "pattern" of racketeering activity, the predicate acts must be (i) related and (ii) constitute a threat of continued racketeering activity. *H.J. Inc., et al. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 238-44 (1989). The activity described in the FAC meets both of these requirements.

First, with respect to relatedness, predicate crimes must be related both to each other ("horizontal relatedness") and to the enterprise as a whole ("vertical relatedness"). *Egerique v. Chowaiki,* 2020 LEXIS 73060, *24 (S.D.N.Y. Apr. 24, 2020); *Reich v. Lopez*, 858 F.3d 55, 60 (2d Cir. 2017). Here, each of the predicate acts relate to each other and also to the enterprise as a whole. For example, the money laundering effected by Bacon's charities and non-profit organizations are part of the enterprise's scheme to funnel money to players to give false testimony about Nygård; indeed the money laundering is indispensable to the scheme as a whole. FAC ¶¶ Intro. (ii), 6, 85, 87, 97-99, 133-135, 822, 840, 891, 918. In turn, the Jane Does bribed to provide false testimony, both in the past to initiate the putative class action lawsuit and in the future to ultimately "prove" the allegations in the lawsuit, are also indispensable to the scheme as a whole. FAC ¶¶ 824, 839. The money laundering and the bribery go hand-in-hand: the purpose of the money laundering is the bribery and interference with witnesses.

Bacon's arguments about relatedness miss the point. He argues that the various lawsuits (the Bahamian litigation, the California case and putative class action pending in this Court) are

not related. Mot. at 25. However, those lawsuits are not the sole actions of Bacon in this case. The actions of Bacon comprise all of the predicate acts discussed in Section I(C). These actions are all related and part of a scheme to take down Nygård. *See also* Section I(B) above, discussing how the various actors operate as a "unit."

Second, with respect to continuity, a "pattern of racketeering activity" requires at least two related predicate acts, 18 U.S.C. §§ 1961(1) & 1961(5), which either (i) extended over a "substantial period of time" but need not be ongoing, i.e. "close-ended continuity," or (ii) poses a "threat of continuing criminal activity beyond the period during which the predicate acts were performed," i.e. "open-ended continuity." *Spool v. World Child Int'l Adoption Agency,* 520 F.3d 178, 183 (2d Cir. 2008). The temporal factor is most important for a close-ended continuity inquiry. *H.J. Inc.*, 492 U.S. at 242. Open-ended continuity requires that the criminal activity "by its nature project[] into the future with a threat of repetition." *Id.* at 241. For continuity, "at the pleading stage, the hurdle is relatively low." *World Wrestling Entertainment v. Jakks Pacific*, 530 F. Supp. 2d 486, 497 (S.D.N.Y. 2007). Contrary to Bacon's argument, courts in this district have permitted cases directed at a single RICO victim to survive. *Id*. at 509 (collecting cases).

Nygård has demonstrated both close-ended continuity and open-ended continuity. With respect to close-ended continuity, Nygård has alleged conduct that has persisted for at least a decade. FAC page 100 ("The More than Ten Year Conspiracy Continues"). *See Marini v. Adamo*, 812 F. Supp. 2d 243, 262-63 (E.D.N.Y. 2011) (finding closed-ended continuity in a scheme that spanned six years, "even when only a single victim…was involved"). Examples of such persistent continuous activity from the FAC are:

| | |
|---|---|
| Beginning in or around 2000, Bacon and others such as Zack Bacon and Robert F. Kennedy, Jr., began a scheme to eliminate Nygård from Lyford Cay and systematically destroy Nygård's reputation. The scheme and enterprise continued up through and including 2010 with the hiring of an investigator to obtain false | FAC ¶¶ 262-275, 527-547, |

| statements from Bianca McKinney, fraudulently bringing a lawsuit against Nygård by McKinney without her consent, and also the acts of Bradley Pratt and Princess Pratt, working with U.S.-based investigator Jerry Forester, hired by Bacon, coercing and threatening women to make false statements against Nygård in an effort to harm him which were induced through payments made by Bacon. | 566-578 |
|---|---|
| From approximately 2014 to date, through the use of private investigating firms, Bacon, with the assistance of his lawyer Fred Smith and Callender's Law Firm, and attorney Doneth Cartwright, paid witnesses to make false statements to be brought to The New York Times for an article to be published about Nygård that would "bring Nygård down" and expose him "like Cosby and Weinstein." These same persons and investigators, funded by Bacon, brought witnesses bearing false statements against Nygård to attorneys who have filed a class action lawsuit in 2020 alleging deviate sexual misconduct against Nygård, and delivering false statements to the media, demonstrating that the scheme and racketeering pattern persists and is ongoing. | FAC ¶¶ 781-970 |

With respect to open-ended continuity, the allegations support that the complained-of behavior is ongoing. This Court need look no further than the filing of the Jane Does putative class action lawsuit against Nygård in this Court on February 13, 2020. FAC ¶ 824, citing *Does No. 1-10 v. Nygard*, No. 20-1288 (S.D.N.Y.). In the months that have transpired since that filing, an additional 47 Jane Does were added as named plaintiffs to the putative class action lawsuit, evidencing that Bacon's behavior is ongoing. *See, e.g.,* "Fashion Mogul to Face More Accusers in Sex-Trafficking Case," https://www.law360.com/articles/1279730/fashion-mogul-to-face-more-accusers-in-sex-trafficking-case (discussing addition of plaintiffs in *Does No. 1-10 v. Nygard*).

## II.  Like His RICO Claim, Nygård's RICO Conspiracy Claim is Sufficiently Pleaded

Bacon's argument that the RICO conspiracy claim (Count II) is deficient because the substantive RICO claim is deficient, Mot. at 27, is wrong given the adequacy of Nygård's RICO claim (Count I), as shown above. Bacon's only other argument against Count II is his argument that the RICO conspiracy claim is comprised of "conclusory allegations." *Id.* But Bacon's argument itself is conclusory and is therefore insufficient to support dismissal of these claims and should be rejected by this Court. *See Day v. MTA N.Y. City Transit Auth.*, 2019 U.S. Dist.

LEXIS 55857, *18 (S.D.N.Y. Mar. 31, 2019) (denying motion to dismiss because "Defendants assert a vague and conclusory argument that 'Plaintiff's assertion is insufficient to state a claim of discrimination'"); *Hansen v. Town of Smithtown*, 342 F. Supp. 3d 275, 293 (E.D.N.Y. 2018) (finding that a party's "conclusory argument is simply too vague to be considered"); *Murphy v. New York State Exec. Dep't*, 2000 U.S. Dist. LEXIS 5287, *10 (N.D.N.Y. Mar. 27, 2000) (denying dismissal of hostile work environment cause of action on summary judgment because defendant's "conclusory argument is simply insufficient in light of Plaintiff's complaint and motion papers").

Even if Bacon had properly challenged these allegations, a plain reading of Count II of the FAC shows that the pleading is sufficient. Nygård incorporates his factual allegations throughout the FAC, which detail the conspiracy at issue. *E.g.,* FAC ¶ 932. In Count II, Nygård specifically alleges that Bacon "entered into an agreement with other participants in the RICO enterprise, including John DiPaolo, D&R Investigation, James Lawson/JDL, Wisler Davilma, Livingston Bullard, Fred Smith, Philincia Cleare, Tazhmoye Cummings, Samantha Storr, Richette Ross and others mentioned herein to violate § 1962(c) by obtaining, through unlawful means, false and influenced statements and affidavits to be used against Plaintiff to injure him in his business and property." FAC ¶ 933. Nygård includes in the FAC allegations detailing Bacon's conspiracies and an entire section of allegations starting on page 100 entitled "The More Than Ten Year Conspiracy to Damage Plaintiff Continues." FAC ¶¶ 159, 177, 487, 538, 559, 804-815.

## III. The FAC Adequately Alleges a Tortious Interference Claim

Bacon argues that Count III is deficient because Nygård solely alleges "interference with relationships held by 'businesses associated with' him" instead of interference with "a business

relationship between himself and a third party." Mot. at 29. Bacon's argument relies on a cherry-picked reading of the FAC that ignores allegations of interference that include both Nygård personally and businesses associated with Nygård. *E.g.,* FAC ¶¶ 939 ("interfered with Plaintiff's business relationships and the business relationships involving businesses associated with Plaintiff"), 938-944 (same). Further, as discussed above in Section I(A), harm to businesses that share Nygård's name caused Nygård personal harm, given his likeness and image were associated with these businesses and are the basis for the consideration he was provided while those businesses thrived.

Nygård not only alleges direct personal economic damages, but also alleges economic damage through disparaging content about him and harm to his reputation and good will. *E.g.,* FAC ¶¶ 513, 815, 940. This can serve as the basis for a tortious interference claim. For example, in *Goldman v. Barrett*, the court noted that "economic damages asserted by Plaintiffs as part of a tortious interference claim" can "flow from the effect of the defamatory comments on Plaintiffs' reputation," but cannot be maintained if a defamation cause of action is also brought. *Id.*, 2017 U.S. Dist. LEXIS 117339, *17-18 (S.D.N.Y. July 25, 2017). The FAC does not contain a defamation cause of action. Moreover, to "prevail on a claim of tortious interference with prospective economic advantage, a plaintiff is required to show the defendant's interference with business relations existing between the plaintiff and a third party, *either* with the sole purpose of harming the plaintiff *or* by means that are dishonest, unfair or in any other way improper." *PPX Enters. v. Audiofidelity Enters.*, 818 F.2d 266, 269 (2d Cir. 1987) (citation and quotations omitted). Under a straightforward reading of the FAC's factual allegations, particularly while applying the pro-plaintiff standards in addressing a motion to dismiss, the FAC satisfies both the "harm to plaintiff" and the "means that are improper" prongs.

Bacon's final argument is to contort the FAC to one that merely alleges that Bacon directed his conduct at Nygård himself instead of at third parties, and therefore harm to Nygård was just an "incidental byproduct." Mot. at 28-29. The FAC plainly reads otherwise. The FAC repeatedly alleges conduct directed to third parties to interfere with Nygård's business relationships, and does not allege that false statements or disparaging content was provided to Nygård himself. For example, the FAC alleges that falsified accusations against Nygård included "encouraging actual or prospective consumers to not purchase Plaintiff's fashion products or the fashion products of the businesses associated with Plaintiff, and dissuading a department store customer from continuing its business relationship with them by ceasing to carry their fashion products." FAC ¶ 940. Another example includes the allegations that Dillard's had received "serious allegations concerning Peter Nygård," and refused "future purchases." FAC ¶ 826. Moreover, Bacon tasks this Court with making an "incidental byproduct" finding for the FAC's allegations, which run afoul of the pro-plaintiff interpretation standards on a motion to dismiss. *Papasan*, 478 U.S. at 283. Bacon's position also runs contrary to the fact that a court is not to weigh the evidence on a motion to dismiss. *Villager Pond,* 56 F.3d at 378.

## IV. Counts IV, V and VI are Sufficiently Pleaded Common Law Causes of Action

The FAC includes causes of action for filing a false report (Count IV), aiding and abetting the filing of a false report (Count V), and trafficking and harboring certain aliens to further a fraudulent act (Count VI). FAC ¶¶ 948-964. Bacon moves to dismiss these claims based on his recasting of these causes of action as "criminal statutory law" counts as these "criminal statutes do not provide private causes of action." Mot. at 27-28. Bacon's argument fails because, as plainly styled, these claims are not directed to statutory causes of action. Instead, these claims are common law causes of action, and the actions underlying the claims may also, incidentally,

violate the enumerated statutes. FAC ¶¶ 951, 956, 961.

The cases that Bacon cites involved a cause of action styled as a violation of these criminal statutes, unlike the FAC here, which brings common law causes of action. Mot. at 28, citing *Ryder v. Platon*, 2012 WL 2317772, *8 (E.D.N.Y. 2012); *Weldon v. Dyer*, 2013 WL 2244527, *8 (E.D. Cal. 2013). Bacon does not cite any authority precluding these causes of action from being brought as common law claims. In addition, parties have brought such styled causes of action in various cases. *See, e.g., Taylor v. Sullivan*, 980 F. Supp. 697, 704 (S.D.N.Y. 1997) (noting cause of action for filing a false report in case involving retaliation against inmate); *Smith v. City of Montgomery*, 2011 U.S. Dist. LEXIS 127136, *2, n.3 (N.D. Ala. Nov. 2, 2011) (noting a false report cause of action included in complaint in lawsuit at summary judgment stage); *Topo v. Dhir*, 210 F.R.D. 76, 77 (S.D.N.Y. 2002) (noting trafficking and involuntary servitude cause of action).

Bacon's only other argument is his conclusory argument that the FAC "does not sufficiently allege any of these violations." Mot. at 28. Like his argument against Count II, Bacon's conclusory argument is insufficient to dismiss these claims and should not be considered by this Court. Bacon does not offer any explanation regarding how and to what extent Nygård has failed to "sufficiently allege any of these violations," rendering it impossible to respond to this argument, and making this argument one that should be rejected by this Court. *See Day*, 2019 U.S. Dist. LEXIS 55857, *18; *Hansen*, 342 F. Supp. 3d at 293; *Murphy*, 2000 U.S. Dist. LEXIS 5287, *10.

Even if Bacon had properly presented this argument, he simply ignores the FAC's detailed allegations, set forth and incorporated into these causes of action. The FAC is permeated with allegations concerning the procuring of false reports and statements against Nygård, and the

trafficking and harboring of aliens as part of Bacon's witness protection program, to facilitate and further Bacon's procuring of these false reports and statements. *E.g.,* FAC ¶¶ 65, 159, 167, 107, 177, 185, 297, 301, 316, 424, 536-537, 627, 629, 656, 664, 700, 706, 723, 779, 807.

## V.  Count VII Adequately Pleads Abuse of Process

Ignoring the ample allegations in the FAC, Bacon argues that the abuse of process claim (Count VII) fails because Nygård does not allege criminal charges were filed against him. Mot. at 29. Yet Nygård never raised such an allegation. Bacon next contends that the claim fails because the "initiation of civil actions" does not constitute abuse of process. *Id*. at 29. Again, Nygård never alleged that the mere initiation of the civil lawsuits against him equated to abuse of process, as the FAC's allegations make clear. *E.g*., FAC ¶¶ 965-970. As a case Bacon cites makes clear, the "gist of the action for abuse of process" is "the improper use of process after it is issued." *Curiano v. Suozzi*, 63 N.Y.2d 113, 117 (1984). That is precisely what the FAC alleges. *E.g.,* FAC ¶¶ 968-969 (detailing improper use of process after issuance).

Bacon contends that the FAC also fails to allege the "perverted" use of any process to interfere with Nygård's person or property. Mot. at 29. His assertion is contradicted by the FAC's allegations. *E.g.,* FAC ¶¶ 968-969 (alleging how Bacon "misused legal process" to interfere with Nygård's person or property, and the "purpose of this process"). Bacon argues that the FAC alleges "loss of business, injury to reputation, or expense arising from litigation," which is insufficient for abuse of process. Mot. at 29. Bacon cites *O'Brien v. Alexander*, 898 F. Supp. 162, 168 (S.D.N.Y. 1995), a case that involved allegations that having to spend several days in a deposition resulted in lost compensation and general damages. Here, the FAC alleges damages that go far beyond those that arise from litigation, and are precisely the types of damages abuse of process is meant to redress. *E.g.,* FAC ¶¶ 968-970*; see also* FAC ¶¶ 820 (alleging that Bacon

29

orchestrated actions that led to FBI raids on Nygård's property).

Bacon's final argument is that the FAC fails to adequately plead special damages. Mot. at 29-30. Bacon cites *Morea v. Saywitz*, 2010 WL 475302, *3 (E.D.N.Y. 2010), but that case simply involved the repeated service of default notices and institution of litigation and is irrelevant here for several reasons. First, Nygård may "allege and prove actual or special damages." *Id.* Next, Bacon solely cites to FAC ¶ 970 as though that paragraph is the lone damages allegation related to the abuse of process claim. Mot. at 30. To the contrary, in addition to the FAC's paragraphs incorporated into this claim, the FAC's damages allegations are set forth in paragraphs beyond FAC ¶ 970 with sufficient particularity, and these allegations further show a causal relatedness to the alleged tortious acts. *E.g.,* FAC ¶¶ 968-969. The abuse of process claim is sufficiently pleaded, particularly under the standards applicable to addressing a motion to dismiss.

## VI. CONCLUSION

A man's life has been ruined because of actions taken by Bacon and his co-conspirators. He has suffered real damage and because of these actions, will be forever damaged as a result. Nygård has sufficiently plead allegations giving rise to the claims asserted.  He should be able to pursue them. For the reasons set forth above, Nygård respectfully requests that this Court deny Bacon's Motion to Dismiss, and for such other, further and different relief this Court deems just and proper.

Respectfully Submitted,

Dated: November 9, 2020

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**

 /s/ David M. Ross
David M. Ross, Esq., *admitted pro hac vice*

30

1500 K Street, N.W., Suite 330
Washington, DC 20005
Tel: (202) 626-7660
Fax: (202) 626-3606
david.ross@wilsonelser.com

Cynthia S. Butera, Esq.
Rebecca R. Gelozin, Esq.
1133 Westchester Avenue
White Plains, NY 10604
Tel: (914) 872-7000
Fax: (914) 323-7001
cynthia.butera@wilsonelser.com
rebecca.gelozin@wilsonelser.com

***Counsel for Plaintiff Peter Nygård***

31

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 9, 2020, I served a copy of the foregoing Memorandum of Law in Opposition to Bacon's Motion to Dismiss to counsel for Bacon through this Court's CM/ECF system.

/s/ *David M. Ross, Esq.*
David M. Ross, Esq.

32

1131301v.1