**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| PETER J. NYGÅRD,<br><br>Plaintiff,<br><br>v.<br><br>LOUIS M. BACON, JOHN DOES 1-20 AND DOE CORPS. 1-10,<br><br>Defendants. | **Civil Action No. 1:2019-cv-01559-LGS-KNF** |
|---|---|

**PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Dated: May 4, 2021

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**

David M. Ross, Esq., *admitted pro hac vice*
1500 K Street, N.W., Suite 330
Washington, DC 20005
Tel: (202) 626-7660
Fax: (202) 626-3606
david.ross@wilsonelser.com

Cynthia S. Butera, Esq.
Rebecca R. Gelozin, Esq.
1133 Westchester Avenue
White Plains, NY 10604
Tel: (914) 872-7000
Fax: (914) 323-7001
cynthia.butera@wilsonelser.com
rebecca.gelozin@wilsonelser.com

***Counsel for Plaintiff Peter Nygård***

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION .....1

II. STANDARD OF REVIEW .....1

III. ARGUMENT .....1

A. There are five requirements to plead a RICO claim, all of which Nygård pled .....1

B. Nygård suffered numerous injuries to his business and property .....2

1. Property and business damage to "businesses associated" with Nygård is damage to him .....2

2. The damage to Nygård's intellectual property is damage to his property .....5

3. Damage to Nygård's name and reputation is damage to business and property .....6

a. Damage to Nygård's personal reputation is damage to his business .....6

b. Damage to the Nygård name and image is damage to Nygård's property .....8

4. Damages through incurring legal fees is damage to Nygård's property .....9

C. The FAC sufficiently alleges a complete, cognizable RICO claim .....9

IV. CONCLUSION .....10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Ali v. Playgirl, Inc.*,
447 F. Supp. 723 (S.D.N.Y. 1978) ........ 7

*Bouveng v. NYG Capital LLC*,
175 F. Supp. 3d 280 (S.D.N.Y. 2016) ........ 6

*Cement-Lock v. Gas Tech. Inst.*,
2005 U.S. Dist. LEXIS 22058 (N.D. Ill. Sep. 30, 2005) ........ 8

*Chevron Corp. v. Donzinger*,
833 F.3d 74, 135 (2d Cir. 2016) ........ 5, 9

*Clark v. Stipe Law Firm, L.L.P.*,
320 F. Supp. 2d 1207 (W.D. Ok. 2004) ........ 7

*Dandong Old N.-E. Agric. & Animal Husbandry Co. v. Hu*,
2017 U.S. Dist. LEXIS 122471 (S.D.N.Y. Aug. 3, 2012) ........ 7

*Deere & Co. v. MTD Prods., Inc.*,
41 F.3d 39 (2d Cir. 1994) ........ 5

*Diaz v. Gates*,
420 F.3d 897 (9th Cir. 2005) ........ 2

*Felice Fedder Oriental Art., Inc. v. Scanlon*,
708 F. Supp. 551 (S.D.N.Y. 1989) ........ 6

*Fitzpatrick v. Milky Way Prods., Inc.*,
537 F. Supp. 165 (E.D.PA. 1982) ........ 8

*Frydman v. Verschleiser*,
172 F. Supp. 3d 653 (S.D.N.Y) ........ 9, 10

*Greene v. McElroy*,
360 U.S. 474 (1959) ........ 8

*Hernandez v. United States Dep't of Agric. Food & Consumer Serv.*,
961 F. Supp. 483 (W.D.N.Y. 1997) ........ 7

*ITC Limited v. Puchgini, Inc.*,
9 N.Y. 3d 467 (2007) ........ 8

*Kimm v. Lee*,
2005 U.S. Dist. LEXIS 727 (S.D.N.Y Jan. 13, 2005) .......... 10

*Liberman v. Gelstein*,
80 NY 2d 429 (1992) .......... 7

*Merhej v. I.C.S. Int'l Custody Sys.*,
2014 U.S. Dist. LEXIS 5504 (S.D. Jan. 9, 2014) .......... 8

*Mid Atlantic Telecom Inc. v. Long Distance Servs., Inc.*,
18 F.3d 260 (4th Cir. 1994) .......... 5

*Reich v. Lopez*,
38 F. Supp. 3d 436 (S.D.N.Y. 2014) .......... 1, 4, 9

*Rick v. Bucharnsky*,
609 F. Supp. 1522 (S.D.N.Y. 1985) .......... 5

*Sadighi v. Daghighfekr*,
36 F. Supp. 2d 279 (D.S.C. 1999) .......... 8

*Sedima S.P.R.L. v. Imrex Co.*,
473 U.S. 479 (1985) .......... 1

*Terminate Control Corp. v. Horowitz*,
28 F.3d 1335 (2d Cir. 1994) .......... 6

*United States v. Stewart*,
305 F. Supp. 2d 368 (S.D.N.Y 2004) .......... 6

**Statutes**

28 USC § 626(b)(1)(C) .......... 1

NY Gen. Bus. Law § 360-L .......... 5

**Rules**

Federal Rule of Civil Procedure 12(b)(6) .......... 1

Federal Rule of Civil Procedure 72(b)(2) .......... 1

Federal Rule of Civil Procedure 72(b)(3) .......... 1

## I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 72(b)(2), Plaintiff Peter J. Nygård ("Nygård") submits his Objections to the Report and Recommendation of Magistrate Judge Kevin Nathaniel Fox, dated March 31, 2021 ("Report"), which recommends granting Defendant Louis Bacon's ("Bacon" or "Defendant") Fed. R. Civ. P. 12(b)(6) Motion to Dismiss ("MTD") the First Amended Complaint ("FAC"). On a Rule 12(b)(6) motion, all facts alleged in the complaint are assumed true and all reasonable inferences are drawn in the plaintiff's favor. The Report does not apply this standard and improperly finds that Nygård "failed to allege a cognizable injury under RICO" and therefore "lacks standing." The Report recommends granting the MTD on this single issue. However, a fair reading of the FAC shows that Nygård sufficiently pled RICO injury.

## II. STANDARD OF REVIEW

When a litigant objects to a Magistrate Judge's report and recommendation concerning a dispositive issue, "the district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P 72(b)(3); 28 USC § 626(b)(1)(C).

## III. ARGUMENT

### A. There are five requirements to plead a RICO claim, all of which Nygård pled.

"RICO is to be liberally construed to effectuate its remedial purposes." *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 498 (1985). To adequately plead a RICO claim, a plaintiff "must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) that has caused injury to plaintiff's business or property." *Reich v. Lopez*, 38 F. Supp. 3d 436, 448 (S.D.N.Y. 2014). The FAC meets these elements and therefore the Court should deny the MTD.

The Report focuses on reputational harm pled by Nygård. This injury is cognizable under RICO. However, the Court need not rely only on this injury to find standing - the Court may rely on this or on any of the other concrete injuries suffered by Nygård to find that he has adequately pleaded injury and standing.

The FAC alleges that Defendant has undertaken a plan to destroy Nygård, his fashion business and his property. The scheme continues unabated due to the lack of any accountability. Bacon and his co-conspirators used the media to disseminate false allegations about Nygård's sexual misconduct and business activities; laundered money to support the other racketeering activities; induced, bribed, coerced and threatened witnesses to provide false testimony about Nygård; and engaged in other acts designed to destroy Nygård, his reputation, property and business, and to induce others to cease all business dealings with Nygård.

The pled injuries to business and property, all cognizable under RICO, include:

- Lost business contracts and loans by "businesses associated with Plaintiff";
- Devaluation of intellectual property rights;
- Damage to the personal property of Nygård, including damage to the property right of goodwill associated with his famous name, damage via Plaintiff's property right in lost business opportunities, damage to Plaintiff's professional reputation, and damage to Plaintiff's property right to pursue his chosen profession; and
- Damage via the incurrence of legal and other fees in the United States and elsewhere. FAC ¶ 924.

### B. Nygård suffered numerous injuries to his business and property.

Federal and New York law are instructive to determine the interests that constitute business or property. *See, e.g., Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005).

#### 1. Property and business damage to "businesses associated" with Nygård is damage to him.

The FAC alleges damage and injury to "businesses associated with Plaintiff." *E.g.*, FAC ¶¶ 826, 838, 924. This association is not a loose association nor merely the relationship between a corporation and its shareholders. On the contrary, these businesses constitute Plaintiff's life

work. Nygård built these companies from the ground up, the companies bear his name, and he is the sole beneficial owner of NIP and its parent companies. Nygård International Partnership ("NIP") is a partnership owned by two Canadian numbered companies, which, through a chain of ownership, are ultimately owned solely by Nygård. Damage to NIP is therefore damage to Nygård's business. Nygård, Inc. is formed under the laws of the United States, and, while under separate ownership, worked closely with NIP, and shared customers, services and executives. NIP relied upon Nygård Inc. for logistics, and Nygård, Inc. relied on NIP for design, manufacturing, and other services. As such, injury to Nygård, Inc. caused injury to NIP, and to Nygård individually.

NIP has been called the "alter ego" of Nygård – ***by Defendant Louis Bacon*** – in an effort to show that a New York state court should have personal jurisdiction over Nygård and NIP. *Bacon v. Nygård*, No. 150400/2015, Sup. Ct. NY, Third Amended Complaint (D.E. 481) at ¶ 5. In other words, Defendant has relied on the association between NIP and the person Nygård as evidence that NIP and Nygård have sufficient ties to New York such that a court can exert jurisdiction over them. The damage to NIP and Nygård is therefore domestic.

Defendant equates the various Nygård entities, discussing the "Times Square headquarters of [Nygård's] billion dollar fashion company" and the "Nygård Companies' facilities and resources, including New York based … office space…bank accounts…" *Id*. The U.S. Government and the Canadian Receiver have also tried to assert a connection between Nygard and the companies in the various on-going proceedings.

Media outlets have asserted that the two are "virtually one and the same." FAC ¶ 838(j). While Nygård notes that there are distinct differences between the companies, including ownership, control and operation, the damage to any one company results in damage to Nygård.

While Nygård refutes claims of alter ego, the close "association" between Nygård's name and image and his businesses (as well as the non-owned businesses) demonstrates how damage to the individual's reputation results in harm to the companies, which in turn further damages the individual's property interests. This connection was manifested in the reaction of businesses after Bacon's plan was implemented. As examples:

- Dillard's stated that it was dropping its account with a Nygård *business entity* because of the claims against Nygård *the person* (FAC ¶ 826);
- The Nygård *companies'* lenders cited the claims against Nygård the person as a "key factor" for their decision "to petition the courts for appointment of a receiver over business interests he has spent decades building" (FAC ¶ 838(b));
- White Oak Commercial Finance and Second Avenue Partners alleged in court papers that the *businesses* breached loan conditions by not disclosing the claims against Nygård the person (FAC ¶ 838(c)).

Nygård is not simply a shareholder in his businesses, and was not merely a consultant to the non-owned and non-controlled businesses; his relationship and finances are much more intricate and intertwined with their success. Thus, the general proposition that injury to a corporation is not cognizable as injury to the shareholders does not apply. Domestic injury to Nygård's businesses, including to NIP, and damage to Nygård, Inc. (resulting in damage to NIP), is directly and proximately caused by Defendant's activities and is cognizable under RICO.

Nygård's relationship with his companies can be compared to the relationship between the plaintiffs in *Reich,* Mr. Reich and "his consulting company, Otto Reich Associates, LLC.," *Reich*, 38 F. Supp. 3d 443, in that the individual plaintiff shares his name with a business entity. In *Reich*, the court did not differentiate between damage to the business entity and damage to the individual. *See id.* at 451, discussing a monetary loss to "Plaintiffs" when that loss was actually incurred by the business entity plaintiff and not by the individual. Here, the Court should also not

differentiate between the damage to the business entity and the individual.[1]

The damage to the "businesses associated" with Nygård include at least (1) the lost Dillard's account (FAC ¶¶ 826, 924), and (2) the financial demise of NIP and several other business entities, including the appointment of a receiver and the institution of bankruptcy proceedings (FAC Introduction (iii), ¶¶ 838, 924). Both of these are cognizable under RICO. The loss of a contract is a "distinct and independent injury." *Mid Atlantic Telecom Inc. v. Long Distance Servs., Inc.*, 18 F.3d 260, 264 (4th Cir. 1994). Similarly, the appointment of a receiver and institution of bankruptcy proceedings is an "incursion into the owner's property rights." *Chevron Corp. v. Donzinger*, 833 F.3d 74, 135 (2d Cir. 2016).

**2. The damage to Nygård's intellectual property is damage to his property.**

The names "Nygård" and "Peter Nygård" have been forever damaged as a direct result of Defendant's activities. FAC ¶ 924. These names are trademarked in the U.S. both formally (e.g., Registration Nos. 4827620, 5256512), and under common law, and therefore damage to them are domestic, concrete injuries cognizable under RICO. *See, e.g., Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 43 (2d Cir. 1994) (portrayal of a trademark in an unwholesome context is dilution by tarnishment under NY Gen. Bus. Law § 360-L). That the trademarks are owned by NIP and not by Nygård directly is of no moment: "A trade name or mark that has become identified with the skill or reputation of a particular individual cannot be separated from that individual's personality." *Rick v. Bucharnsky*, 609 F. Supp. 1522, 1534 (S.D.N.Y. 1985). Thus, since (1) the trademarks encompass the name Nygård, and since (2) Nygård is the beneficial owner of NIP, this damage is cognizable under RICO as injury to Mr. Nygård.

[1] The business entities withdrew from being named plaintiffs here because, as a result of the conspiracy that was alleged, Nygård lost control over them through a receivership action.

**3. Damage to Nygård's name and reputation is damage to business and property.**

**a. Damage to Nygård's personal reputation is damage to his business.**

In a defamation case, *Bouveng v. NYG Capital LLC*, 175 F. Supp. 3d 280, 342 (S.D.N.Y. 2016), the court explained that dissemination of false accusations of sexual misconduct against a person damages that person's business reputation and opportunities:

> Plaintiff [] suffered damage to her [] professional reputation as a result of Defendants' egregiously defamatory statements. [] Defendants accused Plaintiff [of] sexual misconduct []. Defendants carefully and maliciously chose falsehoods and lies that would do maximum damage to Plaintiff's [] professional career, and then employed a media that would disseminate those falsehoods and lies as broadly as possible [i.e., the internet] and in such a manner that they would likely be seen by anyone who was contemplating hiring [plaintiff]…Accordingly it is idle to suggest that plaintiff's professional reputation has not been damaged by Defendants' defamatory statements. It has been grievously damaged. *Id.*

In exactly this same way, the damage to the Nygård name and image is an injury to Nygård's business interests and opportunities, illustrated, for example, by his need to step down as chairman, the banishment from his businesses (his largest asset), and the loss of contracts, both active and potential. FAC ¶¶ 924, 929. This damage is recognized by RICO. *See, e.g., Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1343 (2d Cir. 1994) (a loss of contracts that would have been awarded to the plaintiff absent the fraud is recognized by RICO).

Moreover, the prior goodwill belonging to the Nygård companies relied upon the skill and reputation of Nygård and is therefore inseparable from his goodwill and reputation. *See Felice Fedder Oriental Art., Inc. v. Scanlon*, 708 F. Supp. 551, 560 (S.D.N.Y. 1989) ("Fedder's business…rose or fell according to her reputation…any goodwill…was a product of her own skill…As it was personal to her, such goodwill is inseparable from Fedder and follows her wherever she goes."). Further, for prominent people such as Nygård, the value of a company is dependent on the reputation of the famous person, and damage to that person's reputation is the same as damage to the company. *See, e.g., United States v. Stewart*, 305 F. Supp. 2d 368, 372

(S.D.N.Y 2004) (crediting the Martha Stewart company prospectus that states "the diminution or loss of the services of Martha Stewart, and any negative market or industry perception arising from that diminution or loss, would have a material adverse effect on our business.")

Reference to other laws establishes that when inflammatory false statements about a person, including statements alleging sexual misconduct, are disseminated, damage to that person's business naturally flow. *See Hernandez v. United States Dep't of Agric. Food & Consumer Serv*., 961 F. Supp. 483, 485 (W.D.N.Y. 1997) (one criterion for approval for the business interest in having a license to accept food stamps is the "reputation of the applicant"); *Liberman v. Gelstein*, 80 NY 2d 429, 435 (1992) (when a slanderous statement charges someone with a serious crime, damages are presumed by the law). Here, that Nygård has been damaged in his name and image is not disputed; this damage, as established, is also a damage to his business and property.

The Report improperly distinguishes between personal and professional reputation; there is no such distinction, as explained. The cases cited by Nygård compel the conclusion that damage to business reputation is cognizable under RICO.[2] In *Dandong Old N.-E. Agric. & Animal Husbandry Co. v. Hu*, 2017 U.S. Dist. LEXIS 122471 (S.D.N.Y. Aug. 3, 2012), the court found RICO standing when "Plaintiffs explicitly tie the reputational harm to Defendants' conduct." *Id.* at *26, n. 6. Here, Nygård has also tied the reputational harm to Defendant's conduct. *See, e.g.*, FAC ¶¶ 826, 838. As another example, *Clark v. Stipe Law Firm, L.L.P.*, 320 F. Supp. 2d 1207 (W.D. Ok. 2004), collects cases finding RICO standing due to reputational harm in the very passage that was quoted in the Report. *See* Report at 30. The *Clark* court

---

[2] Magistrate Fox distinguished these cases on grounds that they primarily discuss professional reputation. As discussed, in this case, damage to professional reputation and personal reputation are indistinguishable.

explained that it looked to state law for a definition of what is considered a property or business. Here, New York State law holds that reputation is a species of property right. *See, e.g., Ali v. Playgirl, Inc.*, 447 F. Supp. 723, 728 (S.D.N.Y. 1978). Further, in *Cement-Lock v. Gas Tech. Inst*., 2005 U.S. Dist. LEXIS 22058, at *43 (N.D. Ill. Sep. 30, 2005), the court explained that reputational injury that results in *concrete harm* is cognizable under RICO. Here, Nygård suffered concrete harm by, for example, having to step down as chairman of his businesses, and seeing all of his business deals and opportunities evaporate.[3]

**b. Damage to the Nygård name and image is damage to Nygård's property.**

The damage to the name and image of Nygård is an injury to Nygård's property, as name and image are species of property rights. *See, e.g., Fitzpatrick v. Milky Way Prods., Inc*., 537 F. Supp. 165, 171 (E.D.PA. 1982) ("The interest in reputation has been described as [] a property interest – a good reputation is a valuable asset in one's business or profession.").

Further, Nygård has a domestic property interest in the goodwill associated with his name, even when that name is also well known in a foreign country, so long as the name is also known in New York. *See, e.g., ITC Limited v. Puchgini, Inc*., 9 N.Y. 3d 467, 478-79 (2007). The name Nygård was emblazoned on a store and building in Times Square, the "Crossroads of the World." Due to the damage to his name (an ultimate purpose of the racketeering enterprise along with the inevitable resultant demise of his businesses), Nygård was forced to step down as chairman and he lost control of his companies. FAC ¶ 929. Thus, Nygård also suffered damage to his right to follow a chosen profession, a recognized property right in the United States. *See Greene v. McElroy*, 360 U.S. 474, 492 (1959).

[3] The Report also declines to rely on *Sadighi v. Daghighfekr*, 36 F. Supp. 2d 279, 290 (D.S.C. 1999), for the proposition that injury to professional reputation is cognizable under RICO, since, as a Fourth Circuit decision, it is not binding in the Second Circuit. However, courts in the Second Circuit have approvingly cited *Sadighi*. *See Merhej v. I.C.S. Int'l Custody Sys.*, 2014 U.S. Dist. LEXIS 5504, *7 (S.D. Jan. 9, 2014).

**4. Damages through incurring legal fees is damage to Nygård's property.**

Nygård has expended significant legal and other fees as a direct result of Defendant's activities. FAC ¶ 924. These "fees may constitute RICO damage when they are proximately caused by a RICO violation." *Donziger,* 833 F.3d at 135. Here, Nygård invested significant fees in lawsuits in New York and Florida to combat the harm caused by the racketeering, including egregious reports supported by Defendant, and to expose the witness tampering and bribery.

**C. The FAC sufficiently alleges a complete, cognizable RICO claim.**

The FAC pleads all of the required elements of a RICO claim for many predicate acts. The following comparison to *Frydman v. Verschleiser*, 172 F. Supp. 3d 653 (S.D.N.Y) illustrates, point-by-point, how the FAC pleads a complete and legally sufficient RICO claim based on the predicate act of mail and wire fraud. [4] To prove mail and wire fraud a plaintiff must show (1) a scheme to defraud, including proof of intent; (2) money or property as the object of the scheme; and (3) use of mails or wires to further the scheme. *Id.* at 667.

Here and in *Frydman*, the plaintiff alleged mail and wire fraud including "disseminat[ing] fake reports, blogs, and social media posts that allegedly defame[]" the plaintiff. *Id*. at 660;[5] FAC at Introduction iii; ¶¶ 818, 817, 924. Similarly, in both cases, the plaintiff alleged that the defendant sent alerts to government officials (in *Frydman*, to the SEC, and here to the FBI and DHS), to defame the plaintiff "in order to hurt their ability to attract new business partners." *Frydman*, 172 F. Supp. 3d at 661; FAC ¶¶ 65, 297, 316, 774. In both cases the plaintiff alleged

[4] The FAC also alleges complete claims of (1) witness tampering (FAC ¶¶ 673, 742, 881); (2) bribery (FAC ¶¶ 76, 300, 824); money laundering (FAC ¶¶ 6, 85, 87, 97-99, 133-35, 822, 839-40, 891, 918); production and transportation of obscene matters for sale or distribution (FAC ¶¶ 875-76); fraud (FAC ¶¶ 545-46); and a travel act (FAC ¶¶ 889-90). Nygard was caused to expend significant fees to address these activities as the actions resulted in the civil and criminal action being taken against Nygard.

[5] *See also Reich v. Lopez*, finding standing when "the alleged purpose of the scheme underlying the proliferation of [] false information was to harm the business of [Reich] and injure Reich's ongoing professional relationship with the recipients." *Reich*, 38 F. Supp. 3d. at 449.

that the defendant recruited others to join the racketeering scheme. *Frydman*, 172 F. Supp. 3d at 661; FAC ¶¶ 518, 519, 566, 617. In both cases there was evidence of intent and reliance, where the plaintiff's "business associates did rely on the allegedly false representations and that, as a result, [the plaintiff] was deprived of money and property." *Frydman*, 172 F. Supp. 3d at 661;[6] FAC ¶ 825. *Frydman* explains that "lost contracts, loans, and leases would be something that constitutes property in the hands of the victim." *Frydman* 172 F. Supp. 3d at 669. As to proximate cause, the *Frydman* complaint described "several instances where broker dealers stopped using [plaintiff] as a result of the defendants' allegedly defamatory electronic communications." *Id*. "The statements played a material and substantial part in inducing others not to deal with plaintiffs." *Id*. The same is true here. FAC at ¶¶ 826, 838.

In *Frydman*, the court, having found a complete RICO action was alleged, denied the defendants' motion to dismiss the RICO claim. Here, too, the Court should similarly deny Defendant's Motion to Dismiss.

## IV. CONCLUSION

For the reasons set forth above, Nygård respectfully requests that the Court not adopt the Magistrate Judge's Report, and instead deny Defendant's Motion to Dismiss, and grant such other, further and different relief the Court deems just and proper.

Respectfully Submitted,

Dated: May 4, 2021

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**

/s/ Cynthia S. Butera
Cynthia S. Butera, Esq.
Rebecca R. Gelozin, Esq.

[6] The court in *Frydman* distinguished *Kimm v. Lee*, 2005 U.S. Dist. LEXIS 727 (S.D.N.Y Jan. 13, 2005), a case relied on by Bacon in his Motion to Dismiss. (D.E. 86 at 9.) In *Kimm*, the court found that the dissemination of false information was a defamation claim that did not state a claim for mail and wire fraud because there was no requisite intent to defraud. *Frydman*, 172 F. Supp. 3d at 661.

1133 Westchester Avenue
White Plains, NY 10604
Tel: (914) 872-7000
Fax: (914) 323-7001
cynthia.butera@wilsonelser.com
rebecca.gelozin@wilsonelser.com

David M. Ross, Esq., *admitted pro hac vice*
1500 K Street, N.W., Suite 330
Washington, DC 20005
Tel: (202) 626-7660
Fax: (202) 626-3606
david.ross@wilsonelser.com

***Counsel for Plaintiff Peter Nygård***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 4, 2021, I served a copy of the foregoing Objections to the Magistrate Judge's Report and Recommendation to counsel for Defendant Louis Bacon through the Court's CM/ECF system.

/s/ *Cynthia S. Butera, Esq.*
Cynthia S. Butera, Esq.